1

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)

2

Lesley F. Portnoy (#304851)

3

Robert V. Prongay (#270796)
Charles Linehan (#307439)

4

Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100

5

Los Angeles, CA 90067
Telephone: (310) 201-9150

6

Facsimile: (310) 201-9160

7

Email: info@glancylaw.com

8

*Attorneys for Plaintiff Avi Yaron*

9

10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

11

12

AVI YARON, Individually and On Behalf
of All Others Similarly Situated,

Case No. 3:19-cv-02647

13

Plaintiff,

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS**

14

v.

15

INTERSECT ENT, INC., LISA D.
EARNHARDT, and JERYL L.
HILLEMAN,

**JURY TRIAL DEMANDED**

16

17

Defendants.

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Avi Yaron ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Intersect ENT, Inc. ("Intersect" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Intersect; and (c) review of other publicly available information concerning Intersect.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Intersect securities between August 1, 2018 and May 6, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Intersect is a commercial drug delivery company that purports to develop products for patients with ear, nose, and throat conditions. The Company's PROPEL family of products are used in conjunction with sinus surgery, and the Company's SINUVA sinus implant is used to treat patients who have had surgery yet suffer from recurrent sinus obstruction due to polyps.

3.      On August 1, 2018, before the market opened, the Company disclosed that it faced certain challenges with the launch of SINUVA, which had negatively impacted the Company's second quarter 2018 financial results.

4.      On this news, the Company's share price fell $6.30, nearly 20%, to close at $26.05 per share on August 1, 2018, on unusually heavy trading volume.

5.      On May 6, 2019, the Company disclosed a first quarter 2019 loss of $10.8 million and lowered guidance for the remainder of 2019. The Company also reported that Earnhardt, the Company's CEO of 11 years, resigned.

6.      On this news, the Company's share price fell $8.05, or more than 25%, to close at $25.10 per share on May 7, 2019, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate reimbursement representatives to ensure physicians had access to SINUVA; (2) that, as a result, the Company's sales force would focus on ensuring reimbursement; (3) that, as a result, the Company's sales representatives were less focused on driving sales; (4) that physicians were less likely to adopt the Company's SINUVA due to transaction costs associated with seeking reimbursement; (5) that the Company would increase staffing to address these issues; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this district.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.     Plaintiff Avi Yaron, as set forth in the accompanying certification, incorporated by reference herein, purchased Intersect securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Intersect is incorporated under the laws of Delaware with its principal executive offices located in Menlo Park, California.  Intersect's common stock trades on the NASDAQ exchange under the symbol "XENT."

15.     Defendant Lisa D. Earnhardt ("Earnhardt") was the Chief Executive Officer of the Company at all relevant times.

16.     Defendant Jeryl L. Hilleman ("Hilleman") was the Chief Financial Officer of the Company at all relevant times.

17.     Defendants Earnhardt and Hilleman (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Intersect is a commercial drug delivery company that purports to develop products for patients with ear, nose, and throat conditions. The Company's PROPEL family of products are used in conjunction with sinus surgery, and the Company's SINUVA sinus implant is used to treat patients who have had surgery yet suffer from recurrent sinus obstruction due to polyps.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on August 1, 2018. On that day, before the market opened, the Company disclosed that it faced certain challenges with the launch of SINUVA, which had negatively impacted the Company's second quarter 2018 financial results, stating in relevant part:

> On April 1, 2018, the company announced commencement of the commercial launch of the SINUVA® (mometasone furoate) Sinus Implant, an in-office treatment for nasal polyp disease in adult patients who have had previous sinus surgery.

> "We are gratified by the initial response of patients and physicians to SINUVA, with over 325 patients treated through the second quarter. We are also pleased with the rate of payor coverage and believe that these factors, combined with our strong clinical evidence, reinforce the significant potential of SINUVA," said Lisa Earnhardt, president and CEO of Intersect ENT. "***We are meeting the challenges of the launch by taking action including expanding and leveraging the reimbursement hub and growing our sales and reimbursement teams.*** We remain convinced that SINUVA has a bright future and that, with these measures in place, we will be in a position to expand our launch and continue to grow PROPEL."

> **Second Quarter Financial Results**

> Total revenue grew to $26.3 million for the second quarter 2018 compared to $24.0 million for the same period of 2017, an increase of 10%. This increase was attributable to growth in the adoption of the PROPEL® family of steroid releasing implants as well as to the commercialization of SINUVA, which contributed 2% of revenue in the second quarter of 2018.

> Gross profit for the second quarter 2018 was $20.7 million and gross margin was 79%. These results compare with gross profit of $20.3 million and gross margin of 85% in the second quarter 2017. The decrease in gross margin was attributable to increased overhead and inefficiencies largely associated with the introduction of SINUVA and to a benefit in the second quarter 2017 from the sale of PROPEL® Contour product that was produced prior to FDA approval and therefore expensed in the fourth quarter 2016.

> Operating expenses for the second quarter 2018 were $25.4 million compared to $22.9 million in the same period of 2017, an increase of 11%. R&D expenses were relatively flat at $4.4 million versus $4.2 million in the second quarter 2017.

SG&A expenses increased to $21.0 million from $18.7 million, primarily driven by an increase in headcount and related expenses.

The balance of cash, cash equivalents and short-term investments were $104.9 million compared to $102.3 million at the start of the year.

**Outlook**

The company expects to achieve third quarter revenue in the range of $23.8 to $24.3 million, and updated full year revenue guidance to $106 to $109 million, including an estimated 2% to 4% contribution from SINUVA product sales. The company expects third quarter and full year gross margin of approximately 80% and full year operating expenses, as previously guided, in the range of $113 to $115 million.

20.     During the August 1, 2018 conference call discussing Intersect's quarterly results, Defendant Earnhardt made the following statement:

[W]e are adapting and strengthening our reimbursement team. We have added to our reimbursement leadership to give focus to payer outreach and field support. We are also expanding the field reimbursement team to further help physician offices navigate the buy-and-bill process.

21.     On this news, the Company's share price fell $6.30, nearly 20%, to close at $26.05 per share on August 1, 2018, on unusually heavy trading volume.

22.     On August 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously reported financial results. Moreover, the report disclosed certain risks impacting revenue, stating in relevant part:

***Our revenue is generated from our PROPEL® family of products and, to a lesser extent, SINUVA®. Our revenue is completely dependent on the success of these products, and if these products fail to grow or to continue experiencing expanded adoption, our business will suffer.***

We started selling PROPEL® in August 2011, PROPEL® Mini in November 2012 and PROPEL® Contour in February 2017, collectively referred to as our PROPEL family of products. We expect that sales of these products, together with SINUVA, which we started selling in March 2018, will account for all of our revenue for the foreseeable future. In addition, our ability to become profitable will depend upon the commercial success of these products. We market our products primarily to ear, nose and throat, or ENT, physicians who may be slow or fail to adopt our products or who may use our products in only a small percentage of their eligible patients for a variety of reasons, including, among others:

▪ lack of experience with our products;

▪ lack of adequate reimbursement or cost to the patient;

▪ lack of conviction regarding evidence supporting cost benefits or cost effectiveness of our products over existing alternatives;

- lack of clinical data supporting longer-term patient benefits or, in the case of SINUVA, repeated use; and

- liability risks generally associated with the use of new products and procedures.

If we are unable to effectively demonstrate to ENT physicians and patients the benefits of our products or our products fail to achieve growing market acceptance, our future revenue will be adversely impacted.

Because of the numerous risks and uncertainties associated with our commercialization efforts, we are unable to predict the extent to which we will continue to generate revenue from our products or the timing for when or the extent to which we will become profitable. Even if we do achieve profitability, we may not be able to sustain or increase profitability on an ongoing basis.

23.     On November 5, 2018, the Company announced its third quarter 2018 financial results, stating in relevant part:

Total revenue grew to $24.7 million for the third quarter 2018 compared to $22.3 million for the same period of 2017, an increase of 11%. This increase was attributable to growth in the adoption of the PROPEL® family of steroid releasing implants as well as to commercialization of the SINUVA® (mometasone furoate) Sinus Implant, which contributed over 3% of revenue, or $0.8 million, in the third quarter of 2018.

\* \* \*

**Outlook**

Intersect ENT continues to forecast 2018 revenue in the range of $106 to $109 million and gross margin of approximately 80%. The outlook for operating expenses is lowered to $110 to $111 million, from $113 to $115 million, reflecting timing of hiring and other expenses. The fourth quarter revenue outlook is in the range of $30.3 to $33.3 million, of which approximately 4% is expected from sales of the SINUVA (mometasone furoate) Sinus Implant.

24.     The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, affirming the previously reported financial results.

25.     During the November 5, 2018 conference call discussing Intersect's quarterly results, Defendant Earnhardt made the following statement:

We have improved product access for SINUVA, including streamlining the prior authorization process coupled with making huge strides on the national payer front. We are brick-by-brick establishing the foundation for buy-and-bill.

And finally, we have significantly expanded our sales and reimbursement teams, which will help support our growth in 2019.

The team has been executing at a high level, fueled by our collective belief in the potential for localized drug delivery to become the standard-of-care for sinus sufferers.

CLASS ACTION COMPLAINT

6

26.     On January 7, 2019, the Company reported its preliminary fourth quarter 2018 financial results and provided guidance for fiscal year 2019, stating in relevant part:

> Preliminary unaudited revenue for the full year 2018 is expected to be in the range of $108.3 to $108.5 million, an increase of 12-13% compared to $96.3 million for 2017. Preliminary unaudited revenue for the fourth quarter of 2018 is expected to be in the range of $32.6 to $32.8 million, an increase of 11% compared to $29.5 million for the fourth quarter of 2017. These revenue ranges include preliminary SINUVA® revenue of approximately $2.8 million for the full year 2018 and $1.2 million for the fourth quarter of 2018. The remaining revenue was comprised of sales of the PROPEL® family of products.

* * *

> **2019 Revenue Outlook**
>
> The company forecasts full year 2019 revenue in the range of $123 to $127 million and first quarter revenue in the range of $26.0 to $26.5 million.

27.     On February 25, 2019, the Company announced its fourth quarter and full year 2018 financial results, stating in relevant part:

> **Full Year 2018 Financial Results**
>
> Total 2018 revenue grew to $108.5 million compared to $96.3 million in 2017, an increase of 13%. This increase was attributable to growth in the adoption of the PROPEL family of steroid releasing implants as well as to commercialization of SINUVA, which contributed 3% of revenue, or $2.8 million, in 2018.
>
> Gross profit for 2018 was $85.9 million and gross margin was 79%, compared to gross profit of $80.8 million and gross margin of 84% for 2017. The decrease in gross margin was attributable primarily to increased overhead and inefficiencies associated with the introduction of SINUVA.
>
> 2018 operating expenses were $110.9 million compared to $98.4 million in 2017, an increase of 13%. R&D expenses increased to $19.3 million from $18.4 million due to an increase in headcount expense and clinical trial activities. SG&A expenses increased to $91.6 million from $80.0 million, primarily due to an increase in headcount expense.
>
> The balance of cash, cash equivalents and short-term investments was $100.8 million compared to $102.3 million at the start of the year.
>
> **Outlook**
>
> Intersect ENT continues to forecast 2019 revenue in the range of $123 to $127 million and first quarter revenue in the range of $26.0 to $26.5 million. The Company's 2019 outlook for gross margin is in the range of 80-81% and for expenses in the range of $135 to $137 million.

28.     During the February 25, 2019 conference call discussing Intersect's quarterly results, Defendant Earnhardt made the following statement:

With regard to reimbursement, we are seeing several positive trends, including higher-than-anticipated levels of payer coverage and significantly shortened time frames for prior authorizations.

\*\*\*

We are also making progress with physicians engaging in buy-and-bill with 140 doctors having bought SINUVA under buy-and-bill as of year-end. Payment to the physician has also continued to be positive with allowable product reimbursement typically coming through as ASP plus an appropriate margin. We believe that buy-and-bill will continue to be an important element of broad usage of the product and observe that, excluding hospital clinic purchases, 1 in 3 units in the fourth quarter were purchased directly by the physician.

29.     On February 28, 2019, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018, affirming the previously reported financial results.

30.     The above statements identified in ¶¶19-20, 22-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate reimbursement representatives to ensure physicians had access to SINUVA; (2) that, as a result, the Company's sales force would focus on ensuring reimbursement; (3) that, as a result, the Company's sales representatives were less focused on driving sales; (4) that physicians were less likely to adopt the Company's SINUVA due to transaction costs associated with seeking reimbursement; (5) that the Company would increase staffing to address these issues; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

31.     On May 6, 2019, the Company disclosed a first quarter 2019 loss of $10.8 million and lowered guidance for the remainder of 2019. The Company also reported that Earnhardt, the Company's CEO of 11 years, resigned. In a press release, the Company stated, in relevant part:

Total revenue was $26.7 million for the first quarter of 2019 compared to $24.7 million for the same period of 2018, an increase of 8%. This increase resulted primarily from growth in adoption of the PROPEL® family of products and from adoption of SINUVA®, which contributed $0.9 million, or 4% of first quarter 2019 revenue.

\* \* \*

CLASS ACTION COMPLAINT
8

Operating expenses for the first quarter of 2019 were $33.5 million, compared to $25.8 million in the same period of 2018, an increase of 30%. R&D expenses increased to $6.3 million from $4.3 million, primarily due to an increase in headcount and related expenses, and expenses related to our investigational ASCEND drug-coated sinus balloon. SG&A expenses increased to $27.2 million from $21.5 million, primarily due to the expansion of SINUVA commercial and market access activities including headcount, marketing and consulting expenses.

The balance of cash, cash equivalents and short-term investments was $97.6 million, compared to $100.8 million at the start of the year.

**Outlook**

Intersect ENT is updating its outlook for revenue for the full year 2019 revenue to $113 to $117 million compared to prior guidance of $123 to $127 million, and for modest growth in the second quarter. The company's outlook for 2019 gross margin remains in the range of 80% to 81%. In consideration of the change in revenue outlook, the company is reducing its outlook for operating expenses excluding stock-based expense, which are expected to be offset by incremental stock-based expense associated with the leadership transition announced May 6, 2019. Thus the company is maintaining its outlook for 2019 operating expenses in the range of $135 to $137 million.

32.     On this news, the Company's share price fell $8.05, or more than 25%, to close at $25.10 per share on May 7, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Intersect securities between August 1, 2018 and May 6, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intersect's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of shares of Intersect common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other

members of the Class may be identified from records maintained by Intersect or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Intersect; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

39.     The market for Intersect's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, Intersect's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Intersect's securities relying upon the integrity of the market price of the Company's securities and market information relating to Intersect and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Intersect's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Intersect's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Intersect's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Intersect's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

1   causing investors' losses.

2   **<u>SCIENTER ALLEGATIONS</u>**

3   44.    As alleged herein, Defendants acted with scienter because Defendants knew the

4   public documents and statements issued or disseminated in the name of the Company were

5   materially false and/or misleading; knew such statements or documents would be issued or

6   disseminated to the investing public; and knowingly and substantially participated or acquiesced

7   in the issuance or dissemination of such statements or documents as primary violations of the

8   federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by

9   virtue of their receipt of information reflecting the true facts regarding Intersect, their control over,

10  and/or receipt and/or modification of Intersect's allegedly materially misleading misstatements

11  and/or their associations with the Company which made them privy to confidential proprietary

12  information concerning Intersect, participated in the fraudulent scheme alleged herein.

13  **<u>APPLICABILITY OF PRESUMPTION OF RELIANCE</u>**
    **<u>(FRAUD-ON-THE-MARKET DOCTRINE)</u>**

14  

15  45.    The market for Intersect's securities was open, well-developed and efficient at all

16  relevant times.  As a result of the materially false and/or misleading statements and/or failures to

17  disclose, Intersect's securities traded at artificially inflated prices during the Class Period. On

18  February 27, 2019, the Company's share price closed at a Class Period high of $35.35 per share.

19  Plaintiff and other members of the Class purchased or otherwise acquired the Company's

20  securities relying upon the integrity of the market price of Intersect's securities and market

21  information relating to Intersect and have been damaged thereby.

22  46.    During the Class Period, the artificial inflation of Intersect's shares was caused by

23  the material misrepresentations and/or omissions particularized in this Complaint causing the

24  damages sustained by Plaintiff and other members of the Class.  As described herein, during the

25  Class Period, Defendants made or caused to be made a series of materially false and/or misleading

26  statements about Intersect's business, prospects, and operations. These material misstatements

27  and/or omissions created an unrealistically positive assessment of Intersect and its business,

28  operations, and prospects, thus causing the price of the Company's securities to be artificially

inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Intersect's securities was an efficient market for the following reasons, among others:

(a)     Intersect shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Intersect filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Intersect regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Intersect was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Intersect's securities promptly digested current information regarding Intersect from all publicly available sources and reflected such information in Intersect's share price. Under these circumstances, all purchasers of Intersect's securities during the Class Period suffered similar injury through their purchase of Intersect's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, based on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information

that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Intersect who knew that the statement was false when made.

## FIRST CLAIM
**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Intersect's securities at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Intersect's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Intersect's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Intersect's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Intersect and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or

reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Intersect's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Intersect's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Intersect's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and

the other members of the Class and the marketplace known the truth regarding the problems that Intersect was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Intersect securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Intersect within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the

1  same.

2  65.      As set forth above, Intersect and the Individual Defendants each violated Section

3  10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their

4  position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

5  the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

6  other members of the Class suffered damages in connection with their purchases of the

7  Company's securities during the Class Period.

8  **PRAYER FOR RELIEF**

9      WHEREFORE, Plaintiff prays for relief and judgment, as follows:

10     (a)      Determining that this action is a proper class action under Rule 23 of the Federal

11  Rules of Civil Procedure;

12     (b)      Awarding compensatory damages in favor of Plaintiff and the other Class members

13  against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

14  wrongdoing, in an amount to be proven at trial, including interest thereon;

15     (c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

16  this action, including counsel fees and expert fees; and

17     (d)      Such other and further relief as the Court may deem just and proper.

18  **JURY TRIAL DEMANDED**

19     Plaintiff hereby demands a trial by jury.

20
21  Dated: May 15, 2019                              **GLANCY PRONGAY & MURRAY LLP**

22                                                   By:   _s/Lesley F. Portnoy_  _____
                                                     Lionel Z. Glancy
23                                                   Robert V. Prongay
                                                     Lesley F. Portnoy
24                                                   Charles H. Linehan
                                                     Pavithra Rajesh
25                                                   1925 Century Park East, Suite 2100
                                                     Los Angeles, CA 90067
26                                                   Telephone: (310) 201-9150
                                                     Facsimile: (310) 201-9160
27                                                   Email: info@glancylaw.com

                                                     **-and-**
28

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1200 Ashwood Parkway, Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff Avi Yaron*

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| XENT | 03/22/2019 | 81 | $31.6348 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| XENT | 08/22/2018 | 50 | $26.7028 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___14___ day of ___May___, 2019 in ___Tel Aviv___, ___Israel___.
                                                      City                State

(Signature) X_____

(Print Name)_____Avi Yaron_____