COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
SHANNON M. EAGAN (212830) (seagan@cooley.com)
JEFFREY D. LOMBARD (285371) (jlombard@cooley.com)
SAMANTHA A. KIRBY (307917) (skirby@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:   (650) 849-7400

Attorneys for Defendants
INTERSECT ENT, INC., LISA D. EARNHARDT,
JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.,<br><br>Defendants. | Case No.  4:19-cv-02647-JSW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      May 29, 2020<br>Time:      9:00 a.m.<br>Judge:     Hon. Jeffrey S. White<br>Courtroom: 5 |

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................................ VI

I.       INTRODUCTION ............................................................................. 1

II.      ARGUMENT ..................................................................................... 2

         A.       Plaintiff Has Not Pled Channel Stuffing.......................................... 2

                  1.       Plaintiff's allegations do not satisfy the applicable standard............... 2

                  2.       Plaintiff's channel stuffing cases are plainly distinguishable. ............. 4

         B.       Plaintiff Has Not Pled A Strong Inference of Scienter ................................... 6

         C.       Plaintiff Has Not Pled Falsity .......................................................... 12

                  1.       No omission pled. ............................................................ 12

                  2.       Any alleged omission was not material. ........................................... 13

         D.       Plaintiff Has Not Pled Loss Causation For The August 1, 2018 "Disclosure" .................................................................................. 14

         E.       Plaintiff Has Not Pled A Control Person Claim As To Binney .................... 15

III.     CONCLUSION.................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S
CONS. AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Accuray, Inc. S'holder Derivative Litig.*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) ...................................................................................10

*Axonic Capital LLC v. Gateway One Lending & Fin.*,
2019 WL 4138024 (C.D. Cal. May 22, 2019) .........................................................................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................................14

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................................10

*In re BofI Holding, Inc. Sec. Litig.*,
302 F. Supp. 3d 1128 (S.D. Cal. 2018) ..................................................................................14

*Brennan v. Zafgen, Inc.*,
853 F.3d 606 (1st Cir. 2017) ..................................................................................................10

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .................................................................................................12

*Broudo v. Dura Pharm., Inc.*,
339 F.3d 933 (9th Cir. 2003) ...................................................................................................3

*In re Campbell Soup Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ..........................................................................................5

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
321 F. Supp. 2d 1342 (N.D. Ga. 2004) ....................................................................................2

*City of Dearborn Heights Act 345 Police and Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...............................................................................................9, 10

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .........................................................3, 6, 7, 10

*In re Commtouch Software Ltd. Sec. Litig.*,
2002 WL 31417998 (N.D. Cal. July 24, 2002) .......................................................................11

*In re Connetics Corp. Sec. Litig.*,
2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) .........................................................................3

*Cunha v. Hansen Nat. Corp.*,
2011 WL 8993148 (C.D. Cal. May 12, 2011) ........................................................................5, 6

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

*Curry v. Hansen Med., Inc.*,
   2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) ...............................................................11

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .......................................................................................3

*In re Dura Pharms., Inc. Sec. Litig.*,
   452 F. Supp. 2d 1005 (S.D. Cal. 2006).........................................................................5

*In re Energy Recovery Inc. Sec. Litig.*,
   2016 WL 324150 (C.D. Cal. Jan. 27, 2016) .................................................................15

*Hefler v. Wells Fargo & Co.*,
   2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...............................................................15

*IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of
   Scotland Grp. PLC*,
   783 F.3d 383 (2d Cir. 2015).........................................................................................13

*In re ICN Pharms., Inc. Sec. Litig.*,
   299 F. Supp. 2d 1055 (C.D. Cal. 2004) ........................................................................6

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009).......................................................................................5, 8

*In re Interlink Elecs., Inc. Sec. Litig.*,
   2008 WL 4531967 (C.D. Cal. Oct. 6, 2008).................................................................3, 5

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ...............................................................15

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
   2020 WL 1244936 (N.D. Cal. Mar. 16, 2020)...............................................................8

*U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
   456 F. Supp. 2d 46 (D.D.C. 2006).................................................................................12

*Makor Issues & Rights, Ltd. v. Tellabs Corp.*,
   513 F.3d 702 (7th Cir. 2008) ......................................................................................3, 5

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................15

*Murphy v. Precision Castparts Corp.*,
   2017 WL 3084274 (D. Or. June 27, 2017) ....................................................................6

*In re Novatel Sec. Litig.*,
   830 F. Supp. 2d 996 (S.D. Cal. 2011)...........................................................................13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ...............................................................................................9, 10

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)................................................................................................7

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ........................................................................................................15

*Paciga v. Invuity Inc.*,
   2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ..............................................................................12

*In re PerkinElmer, Inc. Sec. Litig.*,
   286 F. Supp. 2d 46 (D. Mass. 2003) .............................................................................................14

*In re Redback Networks Inc. Sec. Litig.*,
   2007 WL 4259464 (N.D. Cal. Dec. 4, 2007)...................................................................................6

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ...........................................................................................................8

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) .......................................................................................................14

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .........................................................................................................10

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .........................................................................................................11

*S. Ferry LP #2 v. Killinger*,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009)........................................................................................8

*S. Ferry LP, #2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ......................................................................................................4, 11

*In re Salix Pharms., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)...................................................................................5

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   239 F. Supp. 2d 1351 (N.D. Ga. 2002).............................................................................................3

*SEC v. Fuhlendorf*,
   2011 WL 999221 (W.D. Wash. Mar. 17, 2011) ............................................................................14

*SEC v. Leslie*,
   2012 WL 116562 (N.D. Cal. Jan. 13, 2012)..................................................................................14

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ...........................................................................................................7

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

*In re St. Jude Med., Inc. Sec. Litig.*,
    836 F. Supp. 2d 878 (D. Minn. 2011) .............................................................................................5

*Stanley v. Safeskin Corp.*,
    2000 WL 33115908 (S.D. Cal. Sept. 15, 2000) .........................................................................5

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015) .......................................................................................14

*Tadros v. Celladon Corp.*,
    2016 WL 5870002 (S.D. Cal. Oct. 7, 2016) .............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................................................4

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) .......................................................................................7

*Vitalone v. Logitech Int'l SA*,
    2012 WL 13041992 (N.D. Cal. July 13, 2012) ..........................................................2, 3, 4, 12

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018) .....................................................................................3

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..............................................................................................10, 15

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ...................................................................................12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..................................................................................................6, 9

**Other Authorities**

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999) .............................................13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

## SUMMARY OF ARGUMENT[1]

The Opposition makes clear that Plaintiff has not adequately alleged a Section 10(b) or 20(a) claim against any Defendant.  The Complaint should be dismissed.

**First,** Plaintiff does not dispute the standard for pleading channel stuffing in the Ninth Circuit.  However, the Opposition does not identify any allegation satisfying that standard.  And, unlike in the vast majority of cases cited by Plaintiff, there are no allegations that Intersect engaged in improper accounting, used coercive tactics or threats, offered liberal return policies, or paid for warehouse space to store returned products or excess purchases on behalf of customers.

**Second,** the Complaint does not allege a strong inference of scienter.  The Opposition does not cite a single factual allegation suggesting that any Defendant had *contemporaneous* knowledge of information that any challenged statement was false or misleading *when made*.  Neither the interim-CEO's later comments nor the fact that Defendants commented on PROPEL in some challenged statements suggest otherwise.  The Opposition's efforts to marshal inapposite references to "inventory" and "monitoring" similarly fail, as do its arguments about executive resignations and core operations.

**Third,** Plaintiff has not pled a material omission.  The alleged "channel stuffing" is presumptively immaterial as it amounted to less than 5% of revenue, and nothing in the Opposition suggests otherwise.  The Opposition's other argument assumes that Defendants were masking some "undisclosed factor" affecting PROPEL sales *beyond* the distraction arising from the SINUVA launch, but the Complaint alleges no facts to support that assumption.

**Fourth,** Plaintiff fails to plead loss causation as to the August 1, 2018 "disclosure"  because Intersect's downward revision to its fiscal year 2018 guidance on that day had nothing to do with sales of PROPEL (the subject of the alleged fraud).

**Fifth,** because the Complaint does not plead a predicate violation of Section 10(b), the Section 20(a) claim necessarily fails.  The Opposition also concedes that Binney did not exercise any classic indicia of control, and offers only conclusory assertions that Binney exercised control by other means.

---

[1] Capitalized terms are defined in Defendants' Motion to Dismiss (Dkt. 27).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vi.

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

## I.    INTRODUCTION

This case illustrates why securities fraud complaints involving allegations of channel stuffing are routinely dismissed as fraud by hindsight.  Plaintiff's theory is based entirely on a statement by Intersect's interim CEO, Kieran Gallahue, nearly three months *after* the last challenged statement, that "discounted high-volume orders" of PROPEL led to certain customers having surplus inventory amounting to 2-3% of Intersect's annual revenues over a six-quarter period.  That statement—which Plaintiff has apparently latched onto because one analyst referred to it as "channel stuffing"—is insufficient to plead that Defendants violated Section 10(b) and Rule 10b-5(b).

First, the Opposition does not dispute the standard for pleading channel stuffing, which requires allegations of specific transactions, specific shipments, specific customers, specific times, or specific dollar amounts.  Plaintiff, however, does not point to a single allegation satisfying *any one* of those indicia.  That is reason alone to dismiss the Complaint.

Second, the Opposition does not identify a single particularized fact suggesting that Defendants had visibility into the inventory held by any customer.  Plaintiff also does not seriously contest that there is nothing improper about offering discounts to purchase earlier or in larger volumes.  Nor does Plaintiff allege that Intersect employed practices that courts have traditionally associated with channel stuffing, such as liberal return policies (allowing for product returns after revenue is recognized) or improper accounting.  In short, Plaintiff does not allege that Defendants used improper practices to *artificially* inflate sales.

Third, *even if* the Court accepts that Gallahue's statement is suggestive of channel stuffing, the Complaint does not support a strong inference that any Defendant knew or deliberately ignored that information *at the time* of any challenged statement.  Indeed, the Opposition concedes that the four confidential witnesses never interacted with any Defendant in any capacity.  And it does not identify any particularized facts suggesting Defendants had contemporaneous knowledge that the challenged statements were false or misleading *when made*.  Thus, the Opposition (like the Complaint) merely *speculates* about what Defendants must have known. But speculation is insufficient under the PSLRA.

Fourth, Plaintiff still does not identify *any* motive for Defendants to mislead investors.  Nor does the Opposition contest that the SINUVA launch presented novel business challenges, which

1.

Defendants repeatedly disclosed. The far more compelling inference is that Intersect was working diligently to manage the complex launch of a new product, and encountered difficulties along the way. The Ninth Circuit has recognized that such problems are inherent in business, not suggestive of fraud.

The Complaint should be dismissed for these and other reasons.

## II.   ARGUMENT

### A.   Plaintiff Has Not Pled Channel Stuffing

Plaintiff's falsity and scienter arguments are based entirely on the false premise that the Complaint adequately alleges facts of channel stuffing. It does not.

#### 1.   Plaintiff's allegations do not satisfy the applicable standard.

Though Plaintiff relies on a variety of out-of-circuit cases (discussed *infra,* Section II.A.2), he does not dispute the standard for pleading channel stuffing in *this* circuit. Mot. at 9; Opp. at 6. Nothing in the Opposition suggests that the Complaint has satisfied this standard.

First, the Complaint does not identify sufficient corroborating details. The only "detail" Plaintiff alleges is that 2-3% of Intersect's total revenue over a period of six quarters was derived from high-volume discounted sales of PROPEL. Opp. at 6; ¶ 102. This comes nowhere close to pleading "specific transactions, specific shipments, specific customers, specifics times, or specific dollar amounts." *Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *4 (N.D. Cal. July 13, 2012).[2] For example, in *Carpenters Health & Welfare Fund v. Coca-Cola Co*., which Plaintiff cites (Opp. at 7, n.9), the court dismissed allegations of channel stuffing and required the plaintiffs to file an amended complaint containing "allegations of *at least one* specific channel stuffing transaction, including the name of the bottler, the amount of revenue improperly recognized, and when the transaction occurred." 321 F. Supp. 2d 1342, 1349 (N.D. Ga. 2004). The amended complaint survived the defendants' motion to dismiss, but only because the plaintiffs added details including the identity of the customer, when the transaction took place, how many units in excess of the customer's typical order were purchased, and the amount of incentive offered by a company executive. *Id.* at 1349-50. The Complaint here

---

[2] Unless otherwise noted, all emphasis is added and all citations are omitted.

Cooley LLP
Attorneys At Law
Palo Alto

2.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

contains no similar factual allegations.[3]  Rather, it closely resembles complaints dismissed by courts for failure to plead sufficient corroborating details.  *See, e.g.*, *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1147-48 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020); *Vitalone*, 2012 WL 13041992, at *5 (dismissing complaint where the plaintiffs "d[id] not supply the transaction-specific detail necessary to establish a channel stuffing claim").

Second, the Complaint does not suggest that Intersect engaged in improper sales practices. *Vitalone*, 2012 WL 13041992, at *4-5.  The Opposition argues that the Complaint adequately alleges that "bulk discount deals were used to *artificially* hit short-term revenue targets."  Opp. at 7.  But Plaintiff does not dispute that there is nothing inherently improper about offering discounts to customers.[4]  Mot. at 9; *see also*, *Broudo v. Dura Pharm., Inc.*, 339 F.3d 933, 940 (9th Cir. 2003), *rev'd and remanded on other grounds*, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) (explaining that channel stuffing *may* be used to artificially inflate income, but "there may also be other legitimate reasons for attempting to achieve sales earlier"); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *11 n.7 (N.D. Cal. Dec. 17, 2019) ("Securities laws' purpose is not to police customer discounts.").  The facts of this case are vastly different from those in which courts have found artificial inflation.  *See infra* Section II.A.2; *cf. In re Sci.-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1355, 1359 (N.D. Ga. 2002) (channel stuffing claim sustained where the plaintiff alleged, among other things, that the defendant engaged in improper accounting; offered liberal return policies; agreed to ship products to customers without payment; and gave credits to customers who agreed to receive and store excess product in warehouses).

---

[3] *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) is similarly inapposite.  In that case, the defendants did not dispute that the financial statements at issue were misstated so the court did not engage in the falsity analysis.  *Id.* at *10.  Moreover, as to scienter, the complaint included allegations establishing that the defendants "knew specific facts at the time that rendered their accounting determinations fraudulent."  *Id.*  The other case Plaintiff cites (*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005)) does not even address channel stuffing.  Opp. at 7.
[4] Indeed, according to Plaintiff's own authorities, channel stuffing "is not fraudulent when it is done to encourage one's distributors to sell more," and is only fraudulent when "used to book revenues on the basis of goods shipped but not really sold because the buyer can return them."  *In re Interlink Elecs., Inc. Sec. Litig.*, 2008 WL 4531967, at *3 (C.D. Cal. Oct. 6, 2008); *see also Makor Issues & Rights, Ltd. v. Tellabs Corp.*, 513 F.3d 702, 709 (7th Cir. 2008).  The Complaint does not allege that any specific customer had the ability to return previously purchased PROPEL.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Plaintiff also fails to identify particularized facts suggesting that any specific customer that purchased PROPEL during the Class Period did not have actual demand or an anticipated usage for a specific purchase. The only "fact" the Opposition references is Gallahue's statement nearly three months *after* the last challenged statement that while "the discounted high-volume orders have not been a major factor in our business, they have been growing and moving us away from the flow of natural market demand." (¶ 100; Opp. at 7.) This is quintessential pleading fraud by hindsight. Gallahue's statement says nothing about the facts on the ground at the time of any challenged statement, much less what any Defendant knew or deliberately ignored at the time. *Vitalone*, 2012 WL 13041992, at *5 (Plaintiff "cannot rely on defendants' alleged admissions of overstocked channels [in August 2019] in order to establish the existence of unhealthy inventory months earlier.").

### 2. Plaintiff's channel stuffing cases are plainly distinguishable.

The Opposition relies heavily on non-binding authorities for the unremarkable proposition that "courts in this circuit and elsewhere have sustained securities fraud claims based on channel stuffing." Opp. at 6 & n.7. This misses the point. Defendants are not arguing that channel-stuffing allegations can never suffice to state a claim; only that, in the absence of sufficient factual allegations regarding the specific indicia of channel stuffing, such claims are "disfavored and routinely dismissed" as "speculation made in hindsight." Mot. at 8-9. Plaintiff's authorities show only that while a smattering of securities fraud actions involving allegations of channel stuffing have been sustained, the facts of those cases bear no resemblance to the Complaint.[5] Opp. at 6 & n.7. In nearly all, the plaintiffs alleged facts regarding one or more improper sales practices that are not alleged here. These include (1) liberal return policies leading to high rates of product returns in the quarter after revenue was recognized; (2) improper accounting practices in violation of GAAP; and (3) payments for warehouse space to accommodate excess purchases or returns:

---

[5] Plaintiff's interpretation of *Tellabs*—suggesting that it broadly "requires complaints to be reviewed holistically"—cannot be squared with the plain language of the Supreme Court's decision. *Compare* Opp. at 6 n.6, *with Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (explaining that courts must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of *scienter*"). Similarly, *South Ferry* recognized that, "*Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb *for each type of scienter allegation*." *S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *cf.* Opp. at 6 n.6.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

- *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006) (post-quarter returns of up to 75% of products sold, but 100% of sales reported as revenue);

- *Stanley v. Safeskin Corp.*, 2000 WL 33115908, at *2 (S.D. Cal. Sept. 15, 2000) (pressure imposed on customers to induce purchases of excess products);

- *In re Interlink Elecs., Inc. Sec. Litig.*, 2008 WL 4531967 (C.D. Cal. Oct. 6, 2008) (post-quarter returns of almost the same quantities sold but 100% of sales reported as revenue);

- *Makor Issues & Rights, Ltd. v. Tellabs Corp.*, 513 F.3d 702 (7th Cir. 2008) (such high rates of product returns that the defendants leased storage space to accommodate returned stock);

- *In re Campbell Soup Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. 2001) (improper accounting; high rates of product returns; leased warehouses to help customers store excess product);

- *In re Salix Pharms., Ltd.*, 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) (quid pro quo agreements to pay for marketing services in exchange for higher product orders); and

- *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878 (D. Minn. 2011) (improper accounting; high rates of product returns).[6]

Plaintiff relies heavily on *Cunha v. Hansen Natural Corp.*, which is similarly distinguishable. 2011 WL 8993148 (C.D. Cal. May 12, 2011).   There, the plaintiff alleged that the defendants persuaded *distributors* to accept large "fill-in" orders ("up to a year's worth of inventory" in some cases) based on unfounded assurances *by the defendants* "to those distributors that demand would meet supply, which was far from the case," and that distributors acquiesced in part out of fear that the defendants would retaliate by dropping them as distributors. *Id.* at *1-2.  In contrast, here, Intersect sold PROPEL to end-customers, not distributors.   There are also no allegations that Defendants provided any false assurances or applied pressure under threat of reprisal to induce excess purchases of PROPEL.[7]  Further, in *Cunha* (unlike here), a defendant affirmatively represented to analysts that "[d]istributors don't keep inventory" and "what we sell is going through, it's going through to the

---

[6] Plaintiff's other authority on this issue is similarly inapposite as it does not even mention channel stuffing.  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 245 (3d Cir. 2009) (alleging affirmative denials of price competition and impaired profits despite conflicting knowledge).
[7] In fact, the Complaint alleges that some customers "*refused* to purchase in bulk," reflecting that it was the *customer's choice* whether to do so (¶ 83), and does not suggest any customer faced negative repercussions from the Company if it refused to do so.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

retail stores and going through to consumers." *Id.* at *1. *Cunha* found scienter adequately pled as to that defendant based on a litany of allegations, including that he was a "key individual" responsible for negotiating the distribution agreements at issue and knew at various points that sales were suffering even as he publicly insisted otherwise. *Id.* at *3. Nothing similar is alleged here. Finally, *Cunha* noted that while *that* case presented facts most closely resembling "illegitimate" channel stuffing, the Supreme Court has recognized "'legitimate' kinds of channel-stuffing"—such as "offering customers discounts as an incentive to buy"—which is, at most, what Plaintiff has alleged here.[8] *Id.* at *3 (citing *In re ICN Pharms., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1062 (C.D. Cal. 2004) (rejecting channel-stuffing claims where the plaintiff failed to allege the specific indicia required)).

### B.    Plaintiff Has Not Pled A Strong Inference of Scienter

The "multiple factors" Plaintiff identifies in the Opposition (Opp. at 11-13) do not establish a strong inference of scienter, whether considered individually or holistically.

**No knowledge of falsity.** First, and most importantly, Plaintiff has still offered nothing to suggest that any Defendant had contemporaneous knowledge of information that any challenged statement was false or misleading when made. Mot. at 12-13. Everything that Plaintiff alleges in the Complaint and argues in the Opposition is mere speculation (based on purported accounts of unreliable CWs) about what Defendants must have known or what information they could have accessed. Opp. at 11. But the CWs cannot be credited for the reasons set forth in the Motion, which the Opposition largely ignores. Mot. at 6-8.[9] Critically, Plaintiff concedes that none of the four CWs interacted with any Individual Defendant, at any time, in any capacity. Opp. at 12; Mot. at 12-13; ¶¶ 30-33, 64-89. *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) ("generalized

---

[8] Plaintiff does not allege that Intersect misstated any of its financial results. Opp. at 7. As such, the Company's "concededly accurate financial reporting . . . is a tough hurdle for Plaintiff to overcome." *Oracle Corp.*, 2019 WL 6877195, at *12; *see also In re Redback Networks Inc. Sec. Litig.*, 2007 WL 4259464, at *3 (N.D. Cal. Dec. 4, 2007) (holding that the plaintiffs did not state a claim based on an omission theory where the defendant "sold real products for real money" and accurately reported its revenues).

[9] Plaintiff's reliance on *Murphy v. Precision Castparts Corp.* is misplaced. 2017 WL 3084274 (D. Or. June 27, 2017); Opp. at 13. There, the court credited the statements of CWs where the complaint included "particularized allegations regarding the [CWs] reliability and personal knowledge." *Murphy*, 2017 WL 3084274, at *14. Moreover, in *Murphy*, the CWs revealed that one defendant not only "directed" the sales practice at issue, but pressured employees into using that practice through "a culture of fear." *Id.* at *2, 16.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

claims about corporate knowledge" such as what the defendants "had to have known" or what "project managers knew" insufficient to raise strong inference of scienter because "they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019).

Regardless of whether the CW allegations are given any weight, they do not establish anything substantively relevant to the scienter analysis. At best, they support an inference that: (1) the sales team offered some end-of-quarter discounts on orders of PROPEL (which is neither improper nor "channel stuffing"); (2) Binney (who is not alleged to have violated Section 10(b)) approved those deals,[10] and (3) mid-management conveyed "congratulatory messages" to "Territory Managers" about "end of quarter deals" on behalf of Earnhardt (although there is no allegation that Earnhardt drafted or even knew about these messages (¶ 82)). Opp. at 12. None of this establishes what the Defendants knew at any specific time. Nor does it reflect that Earnhardt or Hilleman had contemporaneous knowledge that any challenged statement was false or misleading *when made*, or that they were deliberately reckless to the truth of those statements (which requires "some degree of intentional or conscious misconduct"). *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999); *cf. Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019) (scienter pled where the plaintiffs "pointed to specific numbers in CEO Call slide decks throughout the Class Period and alleged that Defendants reviewed them").

**Defendants' Challenged Statements.** Lacking particularized facts demonstrating that Earnhardt and Hilleman knew that any challenged statement was false or misleading when made, Plaintiff argues that the statements *themselves* demonstrate scienter. Opp. at 11. Specifically, Plaintiff argues that Earnhardt and Hilleman's responses to questions from analysts about PROPEL's "growth

---

[10] Even if true, the allegation that Binney approved "bulk deals" (¶ 82) is insufficient to raise a strong inference of scienter. First, that allegation is not sufficiently particularized. *See Oracle Corp.*, 2019 WL 6877195, at *19 (even where CWs had personal knowledge that speaking defendants approved certain deals, allegations insufficient to support scienter where they did not establish *when* the defendants approved the deals, how they would have known, based on the approvals, that certain sales practices generated a *material* portion of revenue, or *how or at what level of detail* they reviewed deals). Second, Binney's supposed knowledge of "bulk deals" is irrelevant, given that the Complaint does not allege that he made any of the challenged statements or that he shared information about those deals with the speaking defendants (Earnhardt and Hilleman).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

trends" reflected "detailed knowledge of the subject matter." *Id.* As an initial matter, it is unremarkable that the then-CEO and then-CFO demonstrated knowledge about PROPEL. Moreover, the "subject matter" of the alleged omissions is not "growth trends," but high-volume discounted sales of PROPEL. Plaintiff fails to identify any analyst question or challenged statement about the Company's discounting practices with respect to PROPEL. Accordingly, the facts of this case are nothing like those where courts have inferred scienter based in part on statements by defendants. *Cf. Institutional Inv'rs Grp.*, 564 F.3d at 269 (speaker "did not simply make statements inconsistent with the existence of widespread and unusual discounting," but "explicitly denied the existence of such discounting in response to repeated questions about pricing"); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259 (W.D. Wash. 2009) (speaker "repeatedly reassured investors—in the face of *direct questioning* about the status of WaMu's technological woes"). The Opposition's attempt to raise suspicion by listing instances where Defendants addressed analyst questions about PROPEL is unavailing, as it is absurd to suggest that any statement about the PROPEL line of products demonstrates knowledge of high-volume discounted sales. Opp. at 11 & n.17; *cf.* ¶¶ 127, 169 (discussing the continued rollout of Contour and the number of new accounts added); *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (speaker "specifically addressed" precise corrosion-rate data in question, which contradicted an inference that she did not have access to that data); *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 2020 WL 1244936, at *11 (N.D. Cal. Mar. 16, 2020) (explaining that statements did not show scienter under core operations "[w]ithout particularized allegations indicating [the defendants'] detailed involvement with this level of secondary data, as opposed to higher-level information").

Relatedly, in an effort to show that Defendants "held themselves out as monitoring sales and inventory data," Plaintiff cherry-picks references to "inventory" and "monitoring performance." Opp. at 11 & n.18. First, except for the statement referring to inventory of SINUVA,[11] the examples in the

---

[11] Hilleman stated that, "We do ship to the specialty pharmacies and distributors on a weekly basis. We track inventory very close to usage so we're not building up inventory." (*See* Ex. P at 13; Mot. at 13.) Her statement clearly referred to SINUVA (which, as a physician-administered drug, was purchased through specialty pharmacies and distributors), not PROPEL (which, as a medical device, was sold directly to customers). Mot. at 2-3. Hilleman's reference to SINUVA inventory sheds no light on whether any Defendant was "monitoring" PROPEL inventory.

Opposition are not pled as indicative of scienter, and two do not even appear in the Complaint.  Opp. at 11 & n.18.  Second, and more importantly, when reviewed in context, none of these snippets refers to tracking *customers'* inventory levels (such that Defendants represented that they could detect, or knew the state of, product accumulation) or fluctuations in the volume of individual customer's orders in light of their current PROPEL inventory.  For example, one refers to monitoring performance at the SINUVA reimbursement hub, which is not the subject of any challenged statement.  (Ex. M at 5 ("[W]e have increased staff at our hub to account for increased enrollments where we have expanded the staffing and are closely monitoring performance to ensure effectiveness and reliable throughput.").)  Another refers to an analyst question about why the fiscal 2018 guidance assumed a slowdown in the PROPEL business, to which Hilleman responded in part, "It's a really good question and one that we're going to be watching and monitoring closely ourselves."  (Ex. C at 12; *see also* ¶¶ 90, 127 (statements about the number of new accounts and what existing accounts were stocking Contour).)  In short, Plaintiff has not established that Defendants held themselves out as monitoring the data that is actually at issue.

**Executive Resignations.**  The Opposition argues that Earnhardt and Hilleman's departures support a strong inference of scienter because they stepped down "after a reduction of guidance and multiple previous quarters of blaming declining PROPEL growth on the SINUVA launch."  Opp. at 12 n.20.  This does not suffice to "differentiate between a suspicious change in personnel and a benign one."  *Zucco*, 552 F.3d at 1002.  First, Plaintiff simply ignores the legitimate "personal [and] business reasons" for the resignations, *id.* (Earnhardt accepted a position at a different company, and Hilleman's departure was a "planned transition" to allow her to "focus on board responsibilities," Mot. at 5 n.6).  Second, the fact that Hilleman continued working at Intersect "for an additional six months after the [reduction in guidance] was made further diminishes any inference of scienter based on [her] resignation."  *City of Dearborn Heights Act 345 Police and Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (declining to find scienter based on executive departures in part because "two of the three individuals remained at NVIDIA in some type of advisory role").

Apparently recognizing these deficiencies, the Opposition argues that new management's

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

"discovery" of the discounted volume sales indicates that those practices were "obvious and known by the Individual Defendants." Opp. at 11-12. As a threshold matter, whether Earnhardt and Hilleman knew about "bulk sales" of PROPEL is, by itself, irrelevant to the scienter analysis. Rather, Plaintiff must plead facts supporting a strong inference that Earnhardt and Hilleman knew or must have known that the failure to disclose the "bulk sales" of PROPEL "*risked misleading investors*." *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 614 (1st Cir. 2017); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883-84 (9th Cir. 2012).[12] The Complaint alleges nothing about either speaking defendant's mental state at the time of any challenged statement. In addition, the fact that Hilleman remained in her position through the end of 2019 negates any inference that new management discovered a fraudulent scheme in which she was involved. *See Align Tech.*, 856 F.3d at 622. And as to Earnhardt, courts regularly hold that departures just prior to or following an event purporting to disclose a fraud are not necessarily indicative of scienter, and there is no reason to think that her departure is any different. *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (reshuffling of management insufficient to show scienter where the plaintiff pled that COO was replaced "just before," and CFO resigned five months after, restatement was issued); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 932 (N.D. Cal. 2010) ("[T]here is nothing suspicious about the timing of his resignation, even though it occurred weeks after Accuray's August, 2008 backlog revision.").

**Core operations.** The Opposition's main argument for raising the core operations inference—that PROPEL was the Company's most important product—has been squarely rejected. *In re NVIDIA*, 768 F.3d at 1064 (denying application of core operations inference even though "the problem concerned [NVIDIA's] flagship product and was cause for concern to [its] two largest customers"). Moreover, Plaintiff tries to conflate the magnitude of revenue generated by PROPEL (Opp. at 13) with the revenue allegedly generated from the high-volume discounted sales of PROPEL, which amounted to only 2-3% of revenues over a six-quarter period.[13] *Cf. Berson v. Applied Signal Tech., Inc.*, 527

---

[12] *See also Oracle Corp.*, 2019 WL 6877195, at *22 (explaining that to establish that the defendants "intentionally misled investors" about revenue growth, "it is not enough to allege that [the defendants] were aware that the Sales Practices were taking place. Plaintiff must also allege with particularity that *each* [defendant] knew that a material portion of . . . revenue was tied to those practices.").

[13] Intersect's size does not make this inference any stronger, given the volume of transactions and accounts, and the small aggregate value of high-volume sales (2-3% total over six quarters). Opp. at

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

F.3d 982, 988 & n.5 (9th Cir. 2008) (subject of fraud was four stop-work orders that halted "tens of millions of dollars" of work, including largest contract with prominent customer; resulted in massive reallocation of personnel and demotion of project manager; and followed series of unsuccessful client meetings with management, among other things); *S. Ferry*, 542 F.3d at 784–85 ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter . . . absent some additional allegation of *specific information* conveyed to management and related to the fraud."). The relevant question is whether the alleged high-volume discounted sales were so significant that Defendants must have known about them, something Plaintiff does not and cannot allege here.

**More compelling inference is no scienter.**[14] The Opposition's scienter arguments each fail, and stringing them together does not create a more compelling inference than the one identified in Defendants' opening brief. Mot. at 14-15 (describing struggles with "complex, novel, and time-intensive launch of SINUVA"). Plaintiff argues that Defendants' articulation of the more compelling inference "does not square with the facts," (Opp. at 14), but *his* account ignores the novel challenge facing Defendants with the launch of SINUVA, which he does not dispute and was well known to the market. As Gallahue explained, it was this challenge and the resources Intersect diverted from PROPEL as a result that led to "offering selective discounts on high-volume orders." (¶ 100.) The Ninth Circuit has recognized that such challenges are inherent in business: "Problems and difficulties are the daily work of business people. That they exist does not make a lie out of any of the alleged false statements." *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).

---

13 n.22; *see, e.g.*, Ex. H at 3 (approximately 2,900 accounts have stocked PROPEL); Ex. AA at 10 (Intersect does PROPEL business with 2,500 surgeons); *cf. Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) (company size relevant where quarterly sales derived from 3-14 units of a single product and senior management discussed each sale); *In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, at *9 (N.D. Cal. July 24, 2002) (transactions in excess of $500,000 would likely be scrutinized by top management in a company of "modest size").

[14] Plaintiff argues that Intersect's scienter is based on imputation. Opp. at 14 n.23. However, a corporation is "deemed to have the requisite scienter for fraud only if the individual corporate officer *making the statement* has the requisite level of scienter." *Axonic Capital LLC v. Gateway One Lending & Fin.*, 2019 WL 4138024, at *8 (C.D. Cal. May 22, 2019). Binney is not alleged to have made any challenged statement, so even if Plaintiff adequately alleged his scienter (Plaintiff does not), it cannot be imputed to Intersect. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

### C.    Plaintiff Has Not Pled Falsity

To plead falsity with particularity Plaintiff must: (1) "alleg[e] the time, place and nature of the alleged fraudulent activities," (2) "plead *evidentiary facts* sufficient to establish any allegedly false statement was untrue or misleading when made," and (3) "specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading." *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1034 (N.D. Cal. 2012); *cf.* Opp. at 5.  Courts in this district regularly dismiss complaints for failure to plead falsity with the requisite particularity.  *See, e.g.*, *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *4-5 (N.D. Cal. Aug. 12, 2019).

### 1.    No omission pled.[15]

First, as discussed *supra* Section II.A.1, because Plaintiff has not adequately alleged channel stuffing (*e.g.*, there are no allegations of "specific transactions, specific shipments, specific customers, specifics times, or specific dollar amounts" or that Defendants "engaged in channel stuffing *in order to* artificially inflate sales," *Vitalone*, 2012 WL 13041992, at *4), he necessarily fails to allege that Defendants omitted such facts.

Second, even if Plaintiff had adequately alleged specific indicia of channel stuffing, any failure to disclose that information is not an actionable omission.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); Mot. at 10-11.  Plaintiff argues that certain of Defendants' statements about "causes and drivers of PROPEL's growth" (*e.g.*, ¶¶ 123, 149, 176) were misleading because of Defendants' "specific denials of undisclosed factors beyond the SINUVA launch when Defendants knew that channel stuffing was employed to hit revenue targets."  Opp. at 8.  The Opposition does not expressly identify the "undisclosed factors," though it suggests discounts were offered to mask "ebbing demand" and that, because one analyst asked about "market saturation"

---

[15] Plaintiff suggests the Appendix contains argument not included in the Motion. Opp. at 10 n.16. Not so.  The Appendix simply provides the full text of each challenged statement and lists the reasoning set forth in the Motion. *See, e.g.*, Mot. at 11 n.14.  There is nothing improper about the Court's consideration of the Appendix. *See, e.g.*, *Tadros v. Celladon Corp.*, 2016 WL 5870002, at *8 (S.D. Cal. Oct. 7, 2016) (taking judicial notice of a chart that presented the allegations in an "organized, easy to use format"), *aff'd*, 738 F. App'x 448 (9th Cir. 2018); *U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53 (D.D.C. 2006) (chart presented "the same argument . . . in a different manner," and accomplished "organizational work that the Court would otherwise have to take upon itself").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

(¶ 169), the allegedly high-volume discounted sales of PROPEL should have been disclosed. Opp. at 8. But Plaintiff has not pled factual allegations establishing that Intersect was experiencing ebbing demand or market saturation at the time of any challenged statement.[16] Opp. at 8-9. Put another way, Plaintiff's argument is premised on the assumption that Defendants were masking some "undisclosed factor" affecting PROPEL sales *beyond* the distraction arising from the SINUVA launch, but the Complaint alleges no facts to support that assumption.[17]

### 2. Any alleged omission was not material.

Plaintiff's argument that any alleged omissions were material is unavailing. Opp. at 9-10. The sales practices generated approximately 2-3% of the Company's annual revenues (¶ 102)—a fact Plaintiff does not dispute. Accordingly, the alleged omissions are presumptively immaterial. *See IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Grp. PLC*, 783 F.3d 383, 390 (2d Cir. 2015) (a misstatement relating to under 5% of revenue "carries the preliminary assumption of immateriality") (citing SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151 (1999)); *In re Novatel Sec. Litig.*, 830 F. Supp. 2d 996, 1015 (S.D. Cal. 2011) (omissions immaterial because alleged channel stuffing raised revenue less than 5%). The qualitative analytical factors that Plaintiff argues outweigh this quantitative evidence (Opp. at 9) do not "favor treating the presumptively immaterial statements as material." *IBEW*, 783 F.3d at 391.

Specifically, Plaintiff does not adequately plead that the Company's "discounted bulk deals were used to mask growth trends in PROPEL" or "meet otherwise unobtainable projections." Opp. at 9-10. The Complaint reflects that far from masking trends or setting unobtainable goals, before and after the launch of SINUVA, Defendants were transparent about the impact of the launch on sales of PROPEL, repeatedly warning that complexities of selling the new drug could "come a bit at the expense of PROPEL['s] . . . growth rate" (¶ 52) because Intersect was unable to "sufficiently engage

---

[16] Plaintiff may be implicitly relying on Gallahue's statement in August 2019 that discounted volume orders had moved Intersect away from "the flow of the natural market demand" (¶ 100), or West's statement in November 2019 (months after the end of the Class Period) that Intersect would focus on "a more naturally flowing procedure driven order pipeline" (¶ 108). If so, that is fraud by hindsight. And, in any event, neither statement establishes that demand for PROPEL was "ebbing" or that the market was "saturated."

[17] Plaintiff does not attempt to argue that the Complaint meets the burden of pleading falsity for the challenged statements of opinion. Mot. at 10 n.12 & 11 n.14; *see, e.g.*, ¶ 129.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

in the more hands-on side of [PROPEL's] growth" (¶ 90).[18]  Moreover, Plaintiff cannot rely on the drop in stock price as qualitative evidence that the alleged omissions were material.  Opp. at 10; *see Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) (rejecting argument that stock drop indicates materiality because "[e]vidence of stock price movements provides no rational basis for determining whether a product's risks were adequately conveyed to the public").  Plaintiff therefore fails to show a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

### D.   Plaintiff Has Not Pled Loss Causation For The August 1, 2018 "Disclosure"

In the Motion, Defendants argued that Plaintiff fails to plead loss causation for the August 1, 2018 "disclosure."  Mot. at 15.  As pled, the Complaint alleges that a partial corrective disclosure occurred that day when the Company lowered fiscal 2018 guidance.  (¶ 213.)  But the revision to guidance was based on "a change in outlook for *SINUVA* revenue for the year," and "the PROPEL guidance [was] roughly unchanged."  (Ex. M at 6, 13; ¶ 135; Opp. at 14-15.)  As such, the guidance revision (caused by a change in expectation for SINUVA) does not "relate back to the [alleged] misrepresentation" (regarding sales of PROPEL).  *In re BofI Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1135 (S.D. Cal. 2018).  The Opposition does not dispute this point.  Opp. at 14-15.

Instead, Plaintiff argues that different information disclosed on August 1—the Company's announcement that Q2 results for PROPEL were "disappointing" and Earnhardt's explanation that the

---

[18] The cases Plaintiff cites to support materiality based on qualitative factors alone are clearly distinguishable.  *See SEC v. Fuhlendorf*, 2011 WL 999221, at *8 (W.D. Wash. Mar. 17, 2011) (certain transactions under 5% of revenue individually "likely material" when aggregated, and other transactions under 5% exceeded dollar threshold of materiality in the defendant's own statement to auditor); *In re PerkinElmer, Inc. Sec. Litig.*, 286 F. Supp. 2d 46, 54 (D. Mass. 2003) (though sales of particular product accounted for little revenue, statements to investors indicated those sales generated significantly more income than they really did); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015) (though service generated little revenue, related "misrepresentations that go to the heart of the firm's integrity and reputation" deemed significant in light of the defendants' "past scandals [and] efforts to restore its reputation"); *SEC v. Leslie*, 2012 WL 116562, at *7 (N.D. Cal. Jan. 13, 2012) (materiality a "close call" where alleged accounting manipulations were quantitatively minimal but involved the company's "deferred revenue trend, mix of license and service revenue," and "earnings per share," which investors viewed "as significant indicators of the company's health").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

sales team was not able to "sufficiently engage in the more hands-on side of growth," because they were "focused on introducing SINUVA and navigating inefficiencies in product access"—is the alleged partial corrective disclosure. (*Id.*; *compare* ¶ 135, *with* ¶ 213.)  *This* partial corrective disclosure theory, however, is not pled with particularity. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (holding that loss causation is subject to Rule 9(b)).  As such, Plaintiff has not alleged loss causation with particularity as to the August 1 disclosure.

**E.      Plaintiff Has Not Pled A Control Person Claim As To Binney[19]**

The Ninth Circuit has not yet ruled on what pleading standard applies to the control element of a Section 20(a) claim. *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *14 (N.D. Cal. Feb. 27, 2018).  Under any standard, Plaintiff fails to plead a control person claim against Binney.  The Opposition does not cite any authority to support the argument that Binney exercised control by virtue of being "involved in the preparation" of financial statements or knowing that sales information he provided would be incorporated into public statements.  Opp. at 15.  And Plaintiff does not argue that Binney exerted the classic "indicia of control," such as speaking during earnings calls, signing SEC filings, or exercising control over those who allegedly made the challenged statements (here, the CEO and CFO).  Mot. at 15; *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *26 (C.D. Cal. Jan. 27, 2016); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) (EVP of Global Sales and Marketing not controlling person absent allegations that he "had *authority over* the preparation of the financial statements or press releases or conference calls containing the misleading statements"); *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (VP not controlling person where complaint failed to allege how he exercised control over other defendants, who were his peers or supervisors, or the company itself).

**III.    CONCLUSION**

For the foregoing reasons and those set forth in the Motion to Dismiss, the Complaint should be dismissed with prejudice.

---

[19] Plaintiff's Section 20(a) claim fails as to all Defendants because he does not plead a primary violation of Section 10(b). *Webb*, 884 F.3d at 858.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Dated:        April 24, 2020              COOLEY LLP


                                         /s/ *Patrick E. Gibbs*
                                         Patrick E. Gibbs (183174)

                                         Attorneys for Defendants
                                         INTERSECT ENT, INC., LISA D.
                                         EARNHARDT, JERYL L. HILLEMAN and
                                         ROBERT H. BINNEY, JR.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW