COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
SHANNON M. EAGAN (212830) (seagan@cooley.com)
JEFFREY D. LOMBARD (285371) (jlombard@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendants
INTERSECT ENT, INC., LISA D. EARNHARDT,
JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.,<br><br>Defendants. | Case No.  4:19-cv-02647-JSW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:         January 8, 2021<br>Time:        9:00 a.m.<br>Judge:       Hon. Jeffrey S. White<br>Courtroom:  5 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ............................................................................................... V

NOTICE OF MOTION AND MOTION TO DISMISS ................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.  INTRODUCTION ........................................................................................... 1

II.  RELEVANT BACKGROUND ...................................................................... 2

    A.  Statement of Allegations and Facts Subject to Judicial Notice ....................... 2

    B.  Procedural History ............................................................................... 4

III.  ARGUMENT ................................................................................................... 6

    A.  Materiality and "Precision Stuffing" Allegations Are Not Pled With Particularity. ................................................................................................... 6

    B.  Plaintiff Fails to Plead Scienter ........................................................................ 8

        1.  The Confidential Witnesses Allegations Are Not Reliable. ............... 8

        2.  Confidential Witness Allegations Do Not Plead Scienter. ............... 10

        3.  "Precision Stuffing" Allegations Do Not Support Scienter. .............. 12

        4.  Core Operations Allegations Do Not Support Scienter. ..................... 13

    C.  The SAC Fails to Plead Falsity. ....................................................................... 13

        1.  Financial Results and Statements Attributing Weakening PROPEL Growth to SINUVA Distraction Were Not Misleading. ................................................................................................... 13

        2.  Representations of PROPEL Growth Were Not Misleading. ............. 15

IV.  CONCLUSION ............................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................6

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ..................................................................................9

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..................................................................................................v

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .......................................................................10

*Costabile v. Natus Med. Inc.*,
2018 WL 7134363 (N.D. Cal. Dec. 18, 2018) .................................................................v, 8

*Daniel v. Five Stars Loyalty, Inc.*,
2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) .......................................................................6

*DeMarco v. DepoTech Corp.*,
149 F. Supp. 2d 1212 (S.D. Cal. 2001) ..................................................................................12

*In re Foundry Networks, Inc. Sec. Litig.*,
2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) .....................................................................12

*Hong v. Extreme Networks, Inc.*,
2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .......................................................................9

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
Scotland Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) ...................................................................................................7

*In re ICN Pharms., Inc., Sec. Litig.*,
299 F. Supp. 2d 1055 (C.D. Cal. 2004) ..................................................................................14

*In re Metawave Commc'ns Corp. Sec. Litig.*,
629 F. Supp. 2d 1207 (W.D. Wash. 2009) .........................................................................9, 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ................................................................................................v

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................................8, 11

*In re Novatel Wireless Sec. Litig.*,
830 F. Supp. 2d 996 (S.D. Cal. 2011) ....................................................................................7

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S CONS. SECOND AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

**TABLE OF AUTHORITIES**

**Page(s)**

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ...............................................................................................13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012)...........................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ........................................................................................v, 11

*S. Ferry LP, # 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) .........................................................................................10, 13

*Scheller v. Nutanix, Inc.*,
  2020 WL 3409394 (N.D. Cal. Mar. 9, 2020).............................................................................8

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .........................................................................v, 7, 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...................................................................................................6

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ..........................................................................................v, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................................5, 9

*Vitalone v. Logitech Int'l SA*,
  2012 WL 13041992 (N.D. Cal. July 13, 2012).................................................................v, 6, 12

*Waterford Twp. Police and Fire Ret. Sys. v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018) ...............................................................................15

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) ..........................................................................................v, 15

*Wietschner v. Monterey Pasta Co.*,
  294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...............................................................................12

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ....................................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(b).........................................................................................................................1

**Rules**

Federal Rule of Civil Procedure 8 ..................................................................................................1

Federal Rule of Civil Procedure 9(b)..............................................................................................1

**TABLE OF AUTHORITIES**

**Page(s)**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................................1

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**SUMMARY OF ARGUMENT**

This Court dismissed Plaintiff's first attempt to plead federal securities claims based on a purported channel-stuffing scheme. (ECF No. 33 ("Order").) Plaintiff's Consolidated Second Amended Class Action Complaint ("SAC") cures none of the deficiencies the Court previously identified. Plaintiff's allegations remain "speculation made in hindsight." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). The SAC fails to adequately plead scienter and falsity.

**Scienter:** Plaintiff continues to rely heavily on allegations attributed to six confidential witnesses without establishing their reliability, knowledge of the facts alleged, or connection to any of the Defendants. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-98 (9th Cir. 2009); *Costabile v. Natus Med. Inc.*, 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018). As such, these allegations fail to demonstrate that Defendants were aware of the purported scheme, or its alleged impact on the Company's revenues during the Class Period, when the challenged statements were made. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014). Plaintiff's speculative new allegations regarding "precision stuffing"—which is just another name for channel stuffing—similarly fail to establish a strong inference of scienter. *Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *2, *5, *7 (N.D. Cal. July 13, 2012); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1064-65, 1081 (N.D. Cal. 2001).

**Falsity:** Plaintiff also fails to allege any material misrepresentation or omission. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff's new materiality and "precision stuffing" allegations cure none of the infirmities that plagued the first complaint. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). The SAC still fails to plead that purported channel stuffing covered up hidden declining demand in PROPEL that was not attributable to other factors about which Defendants repeatedly warned.

**Section 20(a):** Plaintiff fails to state a control person claim because the SAC does not plead a predicate Section 10(b) violation. *Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S CONS. SECOND AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2021 or as soon thereafter as this Motion may be heard, defendants Intersect ENT, Inc. ("Intersect" or the "Company") and Lisa D. Earnhardt, Jeryl L. Hilleman, and Robert H. Binney, Jr. (collectively with Intersect, "Defendants") will and hereby do move to dismiss with prejudice all claims asserted in the SAC, pursuant to Federal Rule of Civil Procedure 8, 9(b), and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), Section 21D(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78u-4(b).  This Motion is based on the pleadings, Defendants' Memorandum of Points and Authorities, Request for Judicial Notice and Consideration of Documents Incorporated by Reference, the Declaration of Jeffrey D. Lombard and exhibits thereto, and other matters as may be presented to this Court at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff's prior complaint (the "CAC"), which alleged that Defendants used an "illicit channel-stuffing scheme" to boost sales at the end of each quarter during the Class Period, was dismissed in June 2020.  Despite adding two confidential witnesses ("CWs"), a convoluted (and speculative) theory of materiality, and what Plaintiff calls "precision stuffing," the SAC does not cure the infirmities plaguing the CAC.  Plaintiff again fails to plead that Defendants knowingly misled investors.

The SAC challenges the same disclosures regarding Intersect's guidance and revenues that were challenged in the CAC, and relies on the same deficient theory—that Defendants allegedly failed to disclose their channel-stuffing scheme and instead falsely attributed missed guidance and modest growth to the complexities of launching their new product, SINUVA.  The Court previously rejected this theory because Plaintiff (1) alleged only the "legitimate kind" of channel stuffing, and (2) failed to plead that the disappointing revenues resulted from anything other than sales force distraction caused by the SINUVA launch—a risk Defendants repeatedly warned investors about before and during the Class Period.  The Court also held that Plaintiff failed to plead scienter because the CAC lacked any contemporaneous factual allegations—any document, meeting, or other interaction—that would support a strong inference that Defendants knew about the purported channel stuffing or its

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S CONS. SECOND AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

impact on revenues at the time any challenged statement was made.

The SAC suffers from the same defects as the CAC. Plaintiff's materiality and "precision stuffing" allegations—which effectively amount to a charge that but for the bulk sales, the Company would have reported *declining* PROPEL revenue (instead of modest growth) in the last three quarters of the Class Period—do not cure the CAC's deficiencies with respect to falsity or scienter. Plaintiff still does not plead any facts demonstrating that Intersect's attribution of disappointing revenue to the SINUVA launch was false or misleading. Moreover, the new allegations are based on guesswork math and disclosures/analyst reports from *after* the Class Period regarding a purported "dissipation" rate for accumulated inventory, and therefore suggest nothing about what any Defendant *knew or should have known* at any earlier time. Similarly, while the new CWs and the additional allegations attributed to them (and four old ones) may help "show that bulk pricing took place," they fail to demonstrate "that the individual defendants knew about the practice or about its effect on inventory." Order at 15. For these reasons, discussed more fully below, the SAC should be dismissed with prejudice.

## II.   RELEVANT BACKGROUND

### A.   Statement of Allegations and Facts Subject to Judicial Notice

**PROPEL and SINUVA:** Intersect develops two lines of products for patients with ear, nose and throat ("ENT") conditions: PROPEL and SINUVA. (¶¶ 39, 41.)[1] While both are steroid-releasing implants (¶¶ 42-48), they differ substantially in how they are regulated. PROPEL is a *medical device*, meaning Intersect is permitted to sell it directly to customers—*i.e.*, hospitals and surgery centers. (*See, e.g.*, Ex. A at 5.) By contrast, the FDA approved SINUVA in December 2017 as a *physician-administered drug*, meaning Intersect is legally required to sell it to specialty pharmacies and specialty distributors. (*Id.* at 5, 20-21, 24; Ex. B at 6-7, 9; Ex. C at 6, 15.) To purchase SINUVA, customers must either send their prescriptions to a specialty pharmacy, which then negotiates reimbursement on their behalf, or engage in "buy-and-bill" by purchasing the product from the specialty distributor and

---

[1] All "¶" cites are to the SAC (ECF No. 38). All "Ex." cites are to exhibits to the Declaration of Jeffrey D. Lombard filed herewith. Unless noted, all emphasis is added and all citations are omitted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

**DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW**

negotiating for reimbursement directly with their insurers.[2]  (Ex. A at 24; Ex. B at 7; Ex. C at 6.) Before and after Intersect launched SINUVA, the Company warned in great detail about the challenges it faced in marketing and selling SINUVA given that it was Intersect's first product regulated as a physician-administered drug and the first product marketed to ENTs to be regulated as such.[3]

**Class Period Warnings:** Intersect repeatedly warned that challenges it faced due to SINUVA would impact sales of PROPEL. (*See, e.g.*, ¶¶ 56-57, 61, 163, 171, 179, 183, 187, 201, 203, 217, 224, 228.)  For instance, Hilleman cautioned on the first day of the Class Period that "focus on SINUVA" could come "at the expense of PROPEL and PROPEL Mini's growth rate, as the salesforce focuses a bit on the targeted launch that we'll have for the next couple of quarters." (¶ 57; Ex. C at 9.)  Shortly after introducing SINUVA in March 2018, Intersect again disclosed that because of the "complexity" of "adding commercialization of a drug to our underlying device business," the Company "may encounter difficulties in managing this expansion, which could disrupt our business." (Ex. A at 24.) Relatedly, Intersect repeatedly disclosed that the failure of specialty pharmacies and distributors to adequately distribute SINUVA would adversely affect SINUVA sales. (*Id.* at 20; Ex. F at 22; Ex. H at 23-24.)  Intersect also repeatedly warned that demand fluctuations due to allergy and cold/flu seasonality, insurance coverage and reimbursement challenges, discounts, and pricing could impact revenues. (*See, e.g.*, Ex. A at 17, 20-21; Ex. H at 19-21, 24-25.)

**Relevant Financial Performance:** In February 2018, Intersect announced 2018 revenue guidance, which incorporated an 8% contribution from SINUVA. (¶¶ 55-56.)  However, the SINUVA revenue failed to materialize, and after Q2 2018, Intersect disclosed that it missed its revenue target and would lower guidance for the rest of the year.  (¶¶ 59 n.2, 183; Ex. M at 4-7, 13.)  Earnhardt explained that PROPEL sales suffered because "a disproportionate amount of time" was spent "troubleshooting product access," and that Intersect was expanding its field reimbursement team to address these challenges. (¶¶ 137-38; Ex. M at 5-6, 15.)  After Q3, Intersect reported that the SINUVA

---

[2] The processes by which these products are distributed to customers are often referred to in Defendants' public comments as "product access" or "market access." (*See, e.g.*, ¶¶ 137, 169.)

[3] *See, e.g.*, ¶¶ 163, 171, 179, 183, 187, 203, 217, 221, 224, 228; Ex. A at 17, 24; Ex. B at 7, 9-10; Ex. C at 4, 6, 9; Ex. D at 6-7; Ex. E at 19-20, 26; Ex. F at 22, 26; Ex. G at 9; Ex. H at 20-21, 29; Ex. J at 18, 20-21, 24; Ex. M at 4-7, 15; Ex. N at 15-16; Ex. Q at 5-6, 9-10, 12; Ex. R at 5, 7-10; Ex. U at 11, 14.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

launch remained a "distraction" and cautioned the trend would continue.  (¶ 197; Ex. N at 16.) Intersect announced 2019 guidance in January 2019 (¶ 64), but, on the Q1 2019 earnings call, Earnhardt reported that because SINUVA challenges were continuing to "divert[] attention away from selling PROPEL," Intersect would again lower guidance (Ex. Q at 5-6).  She disclosed that to address this problem, Intersect would double the field reimbursement team and develop a new role of SINUVA "specialists" to work with the sales team.[4]  (*Id.*; ¶ 224.)

On August 1, 2019, Intersect announced Q2 earnings below expectations and again revised guidance.  (¶ 151; Ex. K at 4.)  Gallahue disclosed that the sales team's focus on SINUVA had resulted in increased "discounted high-volume orders" of PROPEL; that certain customers would need to work through increased inventory of PROPEL over the next one to three quarters; and that this could, in turn, reduce short-term revenue.  (¶¶ 147, 149; Ex. K at 5, 10.)  However, Gallahue explained that the "totality" of these "discounted high-volume orders" had not had a "substantial impact on any given period."  (¶¶ 67, 149; Ex. K at 5, 10.)  He estimated that the value of excess PROPEL units in customers' inventory amounted to only 2-3% of the Company's annual revenue (¶ 149; Ex. K at 10), or what one analyst calculated as $2.2 million to $3.2 million (¶¶ 151).  On the Company's Q3 2019 earnings call, Hilleman estimated that Intersect had "cleared in the range of $1.5 to $2 million of the customer inventory accumulation sold in prior quarters," which lowered Q3 results commensurately. (¶¶ 154, 234.)

## B.    Procedural History

On June 19, 2020, the Court dismissed the CAC for failure to state a claim, finding Plaintiff failed to adequately plead, among other things, falsity and scienter.  Order at 17.

**Falsity:** According to the Order, channel stuffing, or "bulk discounting . . . to shift sales earlier in the cycle," may be "the illegitimate kind (*e.g.*, writing orders for products customers had not requested) or the legitimate kind (*e.g.*, offering customers discounts as an incentive to buy)."  *Id.* at 9

---

[4] On that same call, Earnhardt announced she would step down as CEO effective June 5, 2019.  (¶ 257.)  Kieran Gallahue, Intersect's Executive Chairman, served as Interim CEO until July 22, 2019, when Thomas West was appointed CEO.  (¶ 25.)  On June 27, 2019, the Company announced that Hilleman would step down as CFO "as part of a planned transition at the beginning of 2020 so that she can focus on board responsibilities."  (¶ 259.)  Binney left Intersect on June 26, 2020.  (¶ 260.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007)).  The Court held that Gallahue's August 1, 2019 disclosure was an admission of the "legitimate kind" of channel stuffing. *Id.* at 9-11.  The Court further held there were no material misrepresentations or omissions because the CAC failed to adequately allege that channel stuffing (1) "negatively impacted PROPEL sales or growth prospects during the Class Period, so as to make defendants' statements about those sales and prospects misleading," or (2) "covered up hidden declining demand—as opposed to known declining demand related to the SINUVA launch, of which investors were extensively warned." *Id.* at 14.

**Scienter:** The Court also concluded that "an innocent inference is far more plausible in this case than the inference of scienter." *Id.*  First, Defendants' statements about tracking sales and monitoring performance did not suggest they knew channel stuffing was used to hide declining demand because "bulk pricing is a common and legitimate sales technique" and Defendants could have known such sales were occurring "without suspecting that the practice had any negative impact." *Id.*  Second, new management discovered built-up inventory only after a two-month inquiry, and "Earnhardt's and Hilleman's departures, made for apparently unrelated reasons," were not suggestive of scienter. *Id.* at 14-15.  Third, the CWs were not reliable because none knew or interacted with Defendants. *Id.* at 15.  Therefore, "[a]t most, the confidential witness allegations show that bulk pricing took place—not that the individual defendants knew about the practice or about its effect on inventory." *Id.*  Fourth, Plaintiff could not rely on a core operations inference because Plaintiff did not allege either admissions or witness accounts of Defendants' "detailed involvement" in Intersect's sales practices, and "it is plausible and not 'absurd' that Intersect's executives would not have been aware of built-up inventory . . . that had no 'substantial impact on any given period.'" *Id.*  In sum, the Court held that because "Plaintiff's alleged fraud rests on defendants artificially inflating revenues to increase stock price," it "strains credulity that defendants would be persistently gloomy about their prospects while the company was focused on the SINUVA launch." *Id.* at 15-16.

Plaintiff filed the SAC on July 29, 2020.  None of the SAC's new allegations cure the deficiencies previously identified by the Court.  (*See* Appendix 2 (redline comparing CAC to SAC).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

## III.   ARGUMENT

### A.   Materiality and "Precision Stuffing" Allegations Are Not Pled With Particularity.

This Court previously found Plaintiff's channel stuffing allegations were insufficient to plead either falsity or scienter.  Order at 14, 16.  In response, the SAC concocts a convoluted theory premised on speculative math, to "infer" that "somewhere between 59% to 98%" of the "reported growth in PROPEL revenues for the nine month period consisting of Q3 2018, Q4 2018, and Q1 2019 . . . was attributable to Defendants' channel stuffing practices."  (¶ 243.)

Because a speculative series of events cannot take the place of particularized factual allegations, Plaintiff's materiality and "precision stuffing" arguments should be disregarded.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("unreasonable inferences" are to be disregarded); *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *2 (N.D. Cal. Nov. 24, 2015) ("It is within the court's wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development.").

First, Plaintiff assumes, without support, that Gallahue's August 1, 2019 statement that Intersect began to "scale back on the higher volume orders . . . immediately at the end of Q2 [2019] and felt its adverse impact on short-term revenues in the quarter" must mean that excess inventory "had accumulated in the channel" by the end of Q1 2019 and begun to dissipate by the end of Q2 2019. (¶ 239; Ex. K at 4-5.)  Plaintiff, however, does not allege any particularized facts suggesting that inventory from bulk sales had, in fact, accumulated by the end of Q1 2019.  *Zucco*, 552 F.3d at 990-91.  Nor does Plaintiff allege any facts suggesting that Intersect's "decline in short-term revenues" resulted from customers' need to work through built-up inventory rather than from any number of other potential factors, including continued SINUVA distraction.  *See Vitalone*, 2012 WL 13041992, at *5 (allegations that "admissions of overstocked channels at the end of FY11" demonstrate "unhealthy inventory months earlier" are too "speculative" to establish "that the decline in revenue in FY11 was the result of channel stuffing").

Second, Plaintiff calculates a "dissipation rate"—the purported speed at which customers worked through accumulated inventory—from disclosures made *after* Q3 2019, and *works backwards*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

to postulate that excess inventory at the end of Q1 2019 was between $2.9 million and $4.8 million. (¶ 240.)   Plaintiff's "dissipation rate," however, is an unreliable metric for calculating Q1 2019 inventory.  Working tenuously from Hilleman's remark during the Q3 2019 earnings call that Intersect "cleared in the range of $1.5 to $2 million of customer inventory accumulation" over the previous quarter, Plaintiff conjures a self-serving mathematical formula that purportedly allows him to speculate about how much inventory *may* have built up in the channel several quarters earlier.  (¶¶ 154, 234, 240.)  But the SAC alleges no facts to support the assumption that inventory did in fact dissipate at this rate across the year.  In fact, it is implausible that inventory would have dissipated steadily from quarter to quarter because, as Intersect repeatedly warned, PROPEL use fluctuates widely throughout the year as patients' need for sinus treatment varies with seasonal allergies and cold and flu season.[5]  (*E.g.*, Ex. A at 20-21; Ex. H at 24-25.)

Third, based on a comparison of actual quarterly revenues for SINUVA and PROPEL (¶ 241), and Plaintiff's *estimate* that Q1 2019 excess inventory was between $2.9 million and $4.8 million (¶ 240), Plaintiff concludes that between 59% and 98% of PROPEL revenues for the nine-month period consisting of Q3 2018 through Q1 2019 were attributable to channel stuffing (¶¶ 242-44).  On this basis, Plaintiff further posits that but for this channel stuffing, Intersect would have posted declining PROPEL revenues during the latter two quarters.  (¶ 243.)  But the revenue data on which Plaintiff bases this allegation (¶ 241) are "equally susceptible of many different interpretations."  *In re Splash.*, 160 F. Supp. 2d at 1076.  Indeed, Plaintiff acknowledges that his allegation is not evident from the chart itself, which shows PROPEL revenues *rising* through the Class Period, with the first decline in Q2 2019.  (¶ 236.)  Plaintiff describes the chart as showing that "Intersect reported modest growth in PROPEL revenues, ranging from 5% to 7%" in Q3 2018, Q4, 2018, and Q1 2019, positing that this "modest" growth suggests that PROPEL sales were in fact naturally falling.  (¶ 243.)  But the trend in modest growth actually began in Q2 2018, representing a sharp drop from the previous quarter.  (¶

---

[5] Notably, even under Plaintiff's speculative estimate, inventory in the channel in Q1 2019 amounted to, at most, 4.4% percent of 2018 revenue (¶ 232), which is still below the 5% threshold of materiality. *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1015 (S.D. Cal. 2011); *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

241.) This drop aligned precisely with the SINUVA launch in March 2018, and immediately followed Intersect's warning that its "'conservative' financial guidance was due to potential 'sales force distraction' caused by SINUVA's launch." (¶ 3.) PROPEL's modest growth, therefore, most plausibly represents demand that was naturally increasing at a slower pace than before because of SINUVA distraction, as Defendants repeatedly warned investors to expect.

### B. Plaintiff Fails to Plead Scienter.

Viewed holistically, Plaintiff's theory of fraud "does not make a whole lot of sense." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). It "strains credulity" that Defendants would "artificially inflat[e] revenues to increase stock price," while simultaneously providing "persistently gloomy" forecasts "while the company was focused on the SINUVA launch." Order at 15-16.

### 1. The Confidential Witnesses Allegations Are Not Reliable.

The SAC fails to plead "sufficient particularity to establish [any CW's] reliability and personal knowledge" of the facts alleged. *Zucco*, 552 F.3d at 995-98. Despite additional allegations about the CWs identified in the CAC (¶¶ 33-36) and the introduction of two new CWs (¶¶ 37-38), it remains that "[n]one of the confidential witnesses knew the individual defendants . . . or communicated any information to them about bulk pricing and its effect on demand" during the Class Period. Order at 15; *see also Costabile*, 2018 WL 7134363, at *5 n.5 (no scienter where "there are no allegations that three of the four confidential witnesses had any direct contact with Defendants"); *Scheller v. Nutanix, Inc.*, 2020 WL 3409394, at *10-11 (N.D. Cal. Mar. 9, 2020) (no scienter where channel stuffing allegations were attributed to CW with limited personal knowledge and contact with the defendants).

**CW1 and CW2:** Allegations attributed to CW1 and CW2 remain unreliable, notwithstanding new allegations about their duties as Territory Managers, or sales representatives. (¶¶ 33-34.) <u>First</u>, their allegations are relevant, if at all, only for the portion of the Class Period when they were employed. (¶ 33 (CW1 left in July 2019); ¶ 34 (CW2 joined in April 2018)); *Zucco*, 552 F.3d at 996 (allegations unreliable where CW "not employed by [the defendant] during the time period"). <u>Second</u>, allegations unrelated to their duties in limited territories are unreliable. (*See, e.g.*, ¶¶ 71-72, 84, 114 (CW1's allegations about orders outside territory of Iowa and Intersect's revenue guidance); ¶¶ 83, 85, 97-99, 134 (CW2's allegations about guidance and sales practices outside territory of Spokane

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

and, "later," parts of three Mountain States)); *Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *16 (N.D. Cal. Apr. 27, 2017) (CW allegations unrelated to duties not reliable); *In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1215 (W.D. Wash. 2009) (plaintiffs must explain "each CW's basis for knowledge of the facts" alleged). Third, unsupported allegations based on hearsay cannot be credited. (*See, e.g.*, ¶ 86 (CW1's allegations about supervisor's reports of Binney's statements)); *Zucco*, 552 F.3d at 997 (discounting CW claims based on hearsay); *Bao v. Solarcity Corp.*, 2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (same).

**CW3 and CW4:** Plaintiff now alleges that despite being multiple rungs below Binney in the "chain of command," CW3 "communicated directly with Defendant Binney while CW3 worked at Intersect." (¶ 35.) But Plaintiff does not allege *when* or *how frequently* they communicated, or *what* they communicated about. *Tellabs*, 551 U.S. at 326 ("[O]missions and ambiguities count against inferring scienter."); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1117-18 (N.D. Cal. 2009) (no scienter even though CW had "substantial contact" with a defendant because the CW "does not allege any specific facts that would implicate [any] Defendant in accounting fraud"). In any event, CW3 left Intersect before the Class Period; thus, the new allegations attributed to CW3 are unreliable. (¶¶ 77, 85, 89, 95, 101, 113, 116, 127, 136); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012) (CW's "direct communication" with single defendant not relevant where the CW only worked at the company when no actionable statements were made). The SAC also fails to allege details about CW4's duties as a Senior Sales Consultant or when CW4 "transitioned" from that role to Territory Manager. (¶ 36.) Allegations about subjects unrelated to CW4's apparent responsibilities within CW4's sales territory "in New Jersey," for example, allegations as to the Company's intentions with respect to nationwide sales practices, cannot be credited. (¶¶ 36, 132); *Metawave*, 629 F. Supp. 2d at 1215.

**CW5 and CW6:** Plaintiff now introduces CW5, a Territory Manager in four Texas cities (¶ 37), and CW6, a Regional Sales Manager who oversaw sales reps "in seven Northwestern states" (¶ 38). Allegations attributed to these new CWs suffer from the same deficiencies plaguing the original CWs. First, CW5's allegations are irrelevant as to the last two months of the Class Period, when CW5 was no longer at Intersect. (¶ 37); *Zucco*, 552 F.3d at 996. Second, allegations about subjects unrelated

Cooley LLP
Attorneys At Law
Palo Alto

9.

Defendants' Notice of Motion and MTD
Plaintiff's Second Cons. Amended Class Action
Complaint – Case No. 4:19-cv-02647-JSW

to the CWs' duties within their respective regions cannot be credited. (*See, e.g.*, ¶¶ 100, 115, 118, 122, 133, 135 (CW5's allegations about Company-wide sales, quotas, guidance, and inventory; data accessible to Binney; and the "Company mentality")); ¶¶ 75, 124, 133, 136 (CW6's allegations about Company-wide sales, guidance, and inventory; and data accessible to Binney)); *Metawave*, 629 F. Supp. 2d at 1215. Third, unsupported allegations based on hearsay are not reliable. (*See, e.g.*, ¶¶ 115, 117 (CW5's allegations of supervisor's communications with Area VP "[Dan] Madara *or* Binney" and of other sales reps' "belief" about sales practices); ¶¶ 123, 133 (CW6's allegations of supervisor's statements about Binney's purported knowledge of sales practices, and of what "other sales reps believed" about inventory)); *Zucco*, 552 F.3d at 997.

### 2. Confidential Witness Allegations Do Not Plead Scienter.

Even if the Court considers them, the CW allegations still fail to demonstrate that Defendants knew of or recklessly disregarded the purported channel stuffing and its effect on revenue and inventory.[6] (¶¶ 70-136.) Other than CW3's vague allegation about communicating with Binney regarding an unidentified subject at some unidentified point during CW3's employment, which concluded before the Class Period, the SAC fails to allege that any CW interacted with any Defendant. (¶ 35); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019) (no scienter where CWs lacked personal knowledge of the defendants or information communicated to them). Nor do the new CW allegations undercut the Court's prior holding, which is equally applicable to the SAC, that Plaintiff at most alleges "legitimate" channel stuffing because "plaintiff claims that defendants offered bulk discounts to increase end-of-quarter sales, but does not allege that customers had not requested or wanted the products." Order at 9.

**Data Tracking:** The Court previously held that allegations regarding sales information purportedly stored in a salesforce.com database were insufficient to plead a strong inference of scienter because "mere access to internal data and reports does not establish knowledge by the executives." Order at 15. The SAC adds a handful of CW allegations about the database (¶¶ 87-91), but still fails

---

[6] To act with scienter, a defendant must have "made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*, 552 F.3d at 991. Deliberate recklessness means conduct that "reflects some degree of intentional or conscious misconduct." *S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

to allege whether or how Defendants used the database or what specific information it contained. These vague and generalized allegations about internal reports that Defendants may or may not have consulted are wholly inadequate. *See Nguyen*, 962 F.3d at 416-17 (scienter not alleged on basis of internal reports about which "the complaint does not plead any details"); *Intuitive Surgical*, 759 F.3d at 1063 ("Mere access to reports containing undisclosed sales data" insufficient to establish scienter).

**Recognition of Sales Reps' Performance:** The Court previously held that allegations Earnhardt knew of alleged bulk sales "because she sent congratulatory messages about end of quarter deals" were "far too speculative and attenuated to raise an inference of scienter." Order at 15 n.4. The SAC's new allegations about Intersect's recognition and ranking of sales reps' performance (particularly, emails sent by Regional Managers and Area VPs) and President's Club awards are no less speculative. (¶¶ 97-100, 108-09, 124-28.)  Moreover, CW2's claim that "many of the named customers in these emails were large facilities" undermines the theory that bulk orders came from customers without a need for larger quantities. (¶¶ 92, 108, 128.)

**Discount Approvals:** The Court likewise held that Binney's purported approval of discounted deals was "too speculative and attenuated to raise an inference of scienter." Order at 15 n.4. The new CW allegations not only fail to cure this deficiency, but also put approval duties squarely in the hands of lower-level employees. (¶ 80 (CW5 alleges discounts above 20% were approved by *Madara*); ¶ 78 (CW2 alleges that "deeper" discounts were approved by *Regional Managers*).)  In fact, Plaintiff does not plead a single example of a discount requiring Defendants' approval.  Plaintiff instead relies on CW3's allegation that PROPEL units cost $800 and large orders were typically discounted by $100 (12.5%) or $150 (18.75%) (¶ 77), *i.e.*, *below* the 20% threshold for *manager* discounts (¶ 80).[7]

**Sales Practices:** The SAC still fails to suggest that Intersect's sales practices were not "the legitimate kind" of channel stuffing. Order at 9. <u>First</u>, Plaintiff adds allegations about CWs and their direct supervisors identifying customers that might make bulk purchases, but pleads no facts suggesting that these customers lacked the need for any quantities actually purchased. (¶¶ 92-96, 118-

---

[7] CW2 alleges that bulk purchases could be discounted to $695 "and those deals needed approval." (¶ 78.)  But this contradicts CW5's allegations (¶ 80), and in any event, such purchases allegedly had to be approved by *Regional Managers*, not Defendants (¶ 78).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW**

19.)  In fact, one of the few deals alleged in detail was made *before the Class Period* in Q4 2017 and involved a purchase of only 5 units above the customer's three-month average usage of 45.  (¶ 119; *see also* ¶¶ 120-21.)  Plaintiff alleges no facts demonstrating this customer did not believe it could use the additional 5 units during the quarter.  Similarly, allegations that CW5 replaced three expired units for a hospital at an unidentified time in CW5's tenure, which began *nine months before the Class Period*, fail to show that the customer did not believe it could use the amount of inventory purchased. (¶¶ 104-06.)  Second, Plaintiff fails to plead that any potential opportunities for bulk sales were ever discussed with Defendants.  (¶¶ 92-96, 118-19.)  For example, in describing one purported bulk sale, Plaintiff alleges the customer paid $40,000 for 50 units (¶ 119), which equates to the standard unit price of $800 (¶ 77), and thus, was not discounted and would not have required Defendants' approval. Third, allegations that CWs felt pressure to make large sales to meet quotas do not suggest scienter, as quotas were allegedly set by Regional Managers and Area Directors, not Defendants.  (¶¶ 102, 108, 110-12, 115, 118); *In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *12-13 (N.D. Cal. Aug. 29, 2003) (sales reps' requests to reduce quotas insufficient to plead scienter).

### 3.    "Precision Stuffing" Allegations Do Not Support Scienter.

Plaintiff's "precision stuffing" allegations (¶¶ 261-65), do not support a strong inference of scienter for at least three reasons.  First, these allegations are premised solely on speculation and conjecture.  (*See* Section III.A); *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1228 (S.D. Cal. 2001) (dismissing securities fraud complaint in light of the plaintiffs' "unsupported speculation and conjecture").  Second, there are no allegations that Defendants knew about the so-called "precision stuffing" when they made the challenged statements.  Order at 15; *Vitalone*, 2012 WL 13041992, at *5 ("[T]he [complaint] must present facts showing statements were false when made, not that defendants learned of the falsity months later.").  Third, to the extent Plaintiff suggests that scienter can be inferred simply from allegations that channel stuffing covered up declining demand, he is wrong.  (¶¶ 261-65.)  When analyzing claims of channel stuffing, courts do not apply different standards where demand is naturally declining as opposed to steady or rising.  *See, e.g.*, *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1107, 1115-16 (N.D. Cal. 2003) (scienter inadequately pled because the plaintiffs failed to allege what the defendants knew about purported channel stuffing

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

to conceal that demand was declining); *In re Splash*, 160 F. Supp. 2d at 1064-65, 1081 (similar). The allegations of "precision stuffing" therefore fail to cure the CAC's deficiencies with respect to scienter; Plaintiff's allegations remain "speculation made in hindsight." *Steckman*, 143 F.3d at 1298.

### 4. Core Operations Allegations Do Not Support Scienter.

The SAC adds nothing that would allow Plaintiff to rely on a core operations inference. *See* Order at 15. The new materiality allegations, which imply that Intersect customers held, at most, $4.8 million of inventory (or 4.4% of annual revenue) in Q1 2019 (¶¶ 240, 232), do not undermine the Court's prior holding that "it is plausible and not 'absurd' that Intersect's executives would not have been aware of built-up inventory."[8] Order at 15; *S. Ferry*, 542 F.3d at 785-86 & n.3 (describing as "exceedingly rare" a case where core operations applied because company's largest customers issued stop-work orders, causing a "devastating effect on" revenue).[9]

### C. The SAC Fails to Plead Falsity.

In dismissing the CAC for failure to plead falsity, the Court grouped the challenged statements into three categories: (1) general "announcements of financial results and earnings guidance"; (2) "statements that PROPEL sales were strong"; and (3) "statements that weakening PROPEL growth was due to SINUVA-related sales force distraction." Order at 11; Appendix 1. The SAC introduces no new challenged statements, and its attempts to salvage a handful of these statements are unavailing.

### 1. Financial Results and Statements Attributing Weakening PROPEL Growth to SINUVA Distraction Were Not Misleading.

The SAC remains defective as to the statements in Category 1 and Category 3 for the same reasons the Court found them inactionable in the CAC.

**Category 1:** The Court previously found that because the statements in Category 1 "did not implicate any causes for the revenue or sales, the positive reports alone are not misleading." Order at 12. Nothing pled in the SAC disturbs that holding. Indeed, Plaintiff makes no attempt to salvage 14 of the 20 statements in Category 1. (*See* Appendix 1.) With respect to the remaining 6 statements,

---

[8] Plaintiff's allegations about PROPEL being the Company's "bread and butter" (¶¶ 2, 246-49) are insufficient to rely on a core operations theory. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (core operations inapplicable where problem concerned "flagship product").

[9] Plaintiff adds no facts to support his allegations relating to Earnhardt and Hilleman's resignations. (¶¶ 256-60.) These departures for "unrelated reasons" do not suggest scienter. Order at 15.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

the SAC adds a single allegation that the statements were misleading because "PROPEL sales were not driven by adoption but rather benefited significantly from the undisclosed end-of-quarter bulk sales." (¶¶ 159-60, 165-66, 181-82, 191-92, 207-08, 219-20.)  This allegation, which appears to be an attempt to bring the "precision stuffing" allegations into the analysis of these statements, fails because, as the Court previously observed, these statements "did not represent that the revenue was 'organic,' sustainable, or corresponded to quarterly demand for individual PROPEL products.   Instead, defendants simply reported revenue and accurately attributed the revenue to PROPEL sales."  Order at 11-12.  Thus, Plaintiff's "precision stuffing" allegations do not affect this analysis.

**Category 3:** The CAC likewise failed to plead that the Category 3 statements were materially misleading, because Plaintiff's allegations did not support its theory that "channel stuffing represented a *separate* risk impacting PROPEL sales over and above SINUVA-related distraction."  Order at 13.  Instead, the Court found that "[t]he risk from channel stuffing is [] *expressly connected* to the risk from the SINUVA distraction."  *Id.*  Again, nothing pled in the SAC disturbs that holding, and Plaintiff only attempts to salvage a single statement in Category 3.  (*See* Appendix 1.)  As to that statement, Plaintiff offers the same conclusory allegation added to the six statements in Category 1.  (¶¶ 183-84.)  However, this statement was made *before* Q3 2018, and thus the added allegation that it purportedly was not "driven by adoption" but instead attributable to "end-of-quarter bulk sales" cannot be reconciled with Plaintiff's "precision stuffing" allegations that "natural" demand first began to decline only *in* Q3 2018.  (¶ 261.)

Additionally, the Court previously identified both the "sheer length of time that bulk discounting took place" and the lack of allegations "suggest[ing] that defendants faced [built-up inventory] when they made the challenged statements" as "undermin[ing] the argument that" channel stuffing "presented a separate risk affecting demand."  Order at 13; *In re ICN Pharms., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1062 (C.D. Cal. 2004) ("[F]or channel stuffing to be improper logically it must be a short-lived scheme . . . If channel stuffing occurs over time, the pattern . . . could not form the basis for an allegation of fraud.").  The SAC bolsters the Court's earlier conclusion—which was founded on the CAC's allegation that channel stuffing occurred over six quarters—by alleging the "scheme" occurred for more than *twice* as long.  (*See, e.g.*, ¶¶ 36, 74 (CW4, who joined Intersect in

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

September or October of 2015, recalled that "sales reps engaged in discounted bulk deals throughout CW4's tenure at the Company")); *Waterford Twp. Police and Fire Ret. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1141, 1148 (C.D. Cal. 2018) (no improper channel stuffing where defendant engaged in the practice "for years, meaning that the possibility Mattel extend[ed] concessions to deal with excess retail inventory during Q1 2017 would have been a risk known by reasonable investors").

### 2. Representations of PROPEL Growth Were Not Misleading.

The Order also found that statements in Category 2 were not materially false or misleading. Order at 12; *see* Appendix 1. This holding was based, in part, on the fact that Plaintiff did not allege that growth was declining. *Id.* Plaintiff attempts to cure this deficiency through his "precision stuffing" theory by alleging that natural growth began to decline *in Q3 2018*. (¶ 261.) Thus, as an initial matter, all of the statements made *before* Q3 2018 (¶¶ 167, 175, 177, 187) remain inactionable.

The new "precision stuffing" allegations also fail to establish falsity as to the statements made in and after Q3 2018, for two reasons. First, they are premised solely on speculative math rooted in unfounded assumptions. (*See* Section III.A.) Second, the four statements in Category 2 made in or after Q3 2018 do not carry the implication that PROPEL sales were naturally growing. (¶¶ 195, 197, 205, 217.) In each of these remarks, Hilleman and Earnhardt acknowledge the negative impact of the SINUVA launch on PROPEL growth and describe efforts Intersect was undertaking in the hope of reaching a marginally higher growth rate for PROPEL. (*Id.*) Plaintiff does not allege that, in making these statements, Defendants failed to acknowledge that PROPEL growth was constrained or that it was expected to increase without considerable efforts to counteract the effects of SINUVA distraction. In other words, Plaintiff still fails to allege "that channel stuffing covered up hidden declining demand—as opposed to known declining demand related to the SINUVA launch, of which investors were extensively warned." Order at 14.[10]

## IV.   CONCLUSION

For the reasons set forth above, the SAC fails and should be dismissed with prejudice.

---

[10] The Section 20(a) claims fail again because Plaintiff "fail[s] to plead a predicate violation of Section 10(b)." Order at 17; *Webb*, 884 F.3d at 858.

Cooley LLP
Attorneys At Law
Palo Alto

15.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW

Dated:          September 18, 2020          COOLEY LLP


/s/ Patrick E. Gibbs
Patrick E. Gibbs (183174)

Attorneys for Defendants
INTERSECT ENT, INC., LISA D.
EARNHARDT, JERYL L. HILLEMAN and
ROBERT H. BINNEY, JR.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

DEFENDANTS' NOTICE OF MOTION AND MTD
PLAINTIFF'S SECOND CONS. AMENDED CLASS ACTION
COMPLAINT – CASE NO. 4:19-CV-02647-JSW