COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
SHANNON M. EAGAN (212830) (seagan@cooley.com)
JEFFREY D. LOMBARD (285371) (jlombard@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:   (650) 849-7400

Attorneys for Defendants
INTERSECT ENT, INC., LISA D. EARNHARDT,
JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN and ROBERT H. BINNEY, JR.,<br><br>Defendants. | Case No.  4:19-cv-02647-JSW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        January 8, 2021<br>Time:        9:00 a.m.<br>Judge:       Hon. Jeffrey S. White<br>Courtroom:   5 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ....................................................................................................... V

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Plaintiff's New Theories of Materiality and "Precision Stuffing" Are Speculative ................................................................................................................. 2

    B. Plaintiff Has Not Alleged Scienter ......................................................................... 4

        1. The SAC's CW Allegations Do Not Support Scienter ................................... 4

        2. Plaintiff's Implausible "Precision Stuffing" Allegations Do Not Support Scienter ......................................................................................... 6

        3. Plaintiff's Core Operations Theory Fails ...................................................... 7

        4. New Management's "Discovery" of Bulk Sales Does Not Support Scienter ......................................................................................... 8

        5. The Challenged Statements Themselves Do Not Support Scienter ................ 9

    C. Plaintiff Has Not Pled Falsity ............................................................................... 11

        1. The SAC Does Not Allege Illegitimate Channel Stuffing ........................... 11

        2. The Challenged Statements Were Not False or Misleading ......................... 12

            a. Financial Results Were Not Misleading .......................................... 12

            b. Representations of PROPEL Growth and Statements Attributing Weakening PROPEL Growth to SINUVA Distraction Were Not Misleading ........................................... 13

                (1) Statements from Before Q3 2018 ........................................ 13

                (2) Representations of PROPEL Growth.................................. 14

                (3) Statements Attributing Weakening PROPEL Growth to SINUVA Distraction.............................................. 15

III. CONCLUSION.................................................................................................................. 17

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) ...................................................................................7

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) .................................................................................................3

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ..........................................................................12

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................................8

*Bolling v. Dendreon Corp.*,
2014 WL 2533323 (W.D. Wash. June 5, 2014) .................................................................10

*Brennan v. Zafgen, Inc.*,
853 F.3d 606 (1st Cir. 2017) ..................................................................................................9

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .................................................................................................v

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ........................................................................................7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..............................................................................................v, 6

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ............................................................4, 9, 12

*In re Commtouch Software Ltd. Sec. Litig.*,
2002 WL 31417998 (N.D. Cal. July 24, 2002) ....................................................................8

*Costabile v. Natus Med. Inc.*,
2018 WL 7134363 (N.D. Cal. Dec. 18, 2018) ......................................................................4

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................................6

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................................................10

*Cunha v. Hansen Nat. Corp.*,
2011 WL 8993148 (C.D. Cal. May 12, 2011) ....................................................................13

*Curry v. Hansen Med., Inc.*,
2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) ......................................................................8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Foundry Networks, Inc. Sec. Litig.*,
  2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) ...............................................................14

*Institutional Invs.' Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)...............................................................................................11

*Hong v. Extreme Networks, Inc.*,
  2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ...................................................................14

*IBEW Local Union No. 58 Pension Tr. Fund v. Royal Bank of Scotland Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015)..................................................................................................2

*In re ICN Pharms., Inc., Sec. Litig.*,
  299 F. Supp. 2d 1055 (C.D. Cal. 2004) .............................................................................17

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
  2020 WL 1244936 (N.D. Cal. Mar. 16, 2020).....................................................................9

*Karinski v. Stamps.com, Inc.*,
  2020 WL 281716 (C.D. Cal. Jan. 17, 2020),
  *order clarified*, 2020 WL 5083883 (C.D. Cal. July 14, 2020) ........................................5

*Lewitton v. ITA Software, Inc.*,
  585 F.3d 377 (7th Cir. 2009) ................................................................................................3

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*,
  2011 WL 2444675 (D. Del. June 14, 2011)........................................................................10

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ..............................................................................................16

*Maresca v. Soufun Holdings Ltd.*,
  2016 WL 6102318 (C.D. Cal. Oct. 18, 2016)......................................................................2

*Maverick Fund, L.D.C. v. First Solar, Inc.*,
  2018 WL 6181241 (D. Ariz. Nov. 27, 2018)........................................................................4

*In re Metawave Commc'ns Corp. Sec. Litig.*,
  629 F. Supp. 2d 1207 (W.D. Wash. 2009)..........................................................................14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...................................................................................v, 6, 7

*Murphy v. Precision Castparts Corp.*,
  2017 WL 3084274 (D. Or. June 27, 2017) ...........................................................................6

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ..................................................................................... *passim*

*In re Novatel Wireless Sec. Litig.*,
  830 F. Supp. 2d 996 (S.D. Cal. 2011)..............................................................................v, 11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ..................................................................................8

*Paciga v. Invuity Inc.*,
2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) .....................................................5, 12

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ..................................................................................5

*S. Ferry LP # 2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009).........................................................5, 8, 11

*Scheller v. Nutanix, Inc.*,
2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) .......................................................16

*Scheller v. Nutanix, Inc.*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) ...............................................................5, 14

*Stanley v. Safeskin Corp.*,
2000 WL 33115908 (S.D. Cal. Sept. 15, 2000) ........................................................7

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ............................................................................iii, 7

*Stocke v. Shuffle Master, Inc.*,
615 F. Supp. 2d 1180 (D. Nev. 2009).......................................................................7

*In re Tibco Software, Inc.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006)........................................................13

*Tricontinental Indus. Ltd. v. Anixter*,
215 F. Supp. 2d 942 (N.D. Ill. 2002) ....................................................................14

*Vitalone v. Logitech Int'l SA*,
2012 WL 13041992 (N.D. Cal. July 13, 2012)..........................................................2

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........................................................................ *passim*

**Statutes**

15 U.S.C. § 78u-4(b)..........................................................................................1, 2, 3

**Other Authorities**

Federal Rule Civil Procedure 9(b) ..............................................................................3

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999)...............................2

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

## SUMMARY OF ARGUMENT

The Opposition makes clear that Plaintiff's Consolidated Second Amended Class Action Complaint ("SAC") has not cured the deficiencies this Court identified in dismissing the initial complaint ("CAC"). The SAC should be dismissed with prejudice.

**First,** Plaintiff's new materiality and "precision stuffing"—which is just another name for channel stuffing—allegations rely on speculative and self-serving math and, are unsupported by particularized factual allegations. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008). The Opposition demonstrates that these allegations are, at best, mere "speculation made in hindsight." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

**Second,** Plaintiff has not pled a strong inference of scienter. The Opposition ignores that the SAC's new confidential witness ("CWs") allegations are unreliable, insufficiently detailed, and fail to demonstrate any Defendant's *contemporaneous* knowledge of facts suggesting that the challenged statements were false or misleading *when made*. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-98 (9th Cir. 2009); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017). The Opposition's attempt to marshal inapposite inferences from Defendants' statements challenged in the SAC similarly fail, as do its arguments about new management's "discovery" of bulk sales and core operations.

**Third,** Plaintiff has not pled any material misrepresentation or omission. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Nothing in the Opposition suggests that Plaintiff's new allegations cure the prior failures to plead any false or misleading statement. The Opposition makes clear that the SAC fails to allege that Defendants engaged in "illegitimate" channel stuffing. *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1014 (S.D. Cal. 2011). It also underscores the SAC's failure to plead that bulk selling had a material impact on revenues or that any "undisclosed" factor—rather than SINUVA-related sales distraction—caused weakening PROPEL revenue growth.

Cooley LLP
Attorneys At Law
Palo Alto

v.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

## I.   INTRODUCTION

The Opposition makes clear that the SAC suffers from the same deficiencies that led the Court to dismiss the CAC on multiple grounds. (*See* ECF No. 33 ("Order").) It lays bare that Plaintiff's new materiality and "precision stuffing" allegations are based on speculative math, unsupported by any particularized factual allegations, and reliant on events which occurred *after* Defendants made the allegedly false or misleading statements. Such allegations are insufficient to plead a claim for securities fraud under the PSLRA, and on that basis alone the SAC should be dismissed.

But even if the Court were to credit those allegations, they do not establish the requisite strong inference of scienter that the Court found lacking in the CAC. Indeed, aside from the new CW allegations, Plaintiff merely recycles, without adding any new support, allegations that the Court previously rejected—allegations about Defendants' statements in response to analyst questions; executive resignations; new management's findings regarding bulk sales; and PROPEL being Intersect's "bread and butter." Accordingly, these allegations remain deficient for the reasons stated in the Order. The CW allegations also remain inadequate to plead scienter for two reasons, which the Opposition does not credibly contest. First, the CWs are unreliable given their relatively low-level responsibilities, location in discrete territories, and vague descriptions about Intersect's sales practices. Second, and more importantly, it remains true that "[n]one of the [CWs] knew the individual defendants" or "communicated any information to them about bulk pricing and its effect on demand." (Order at 15.) Thus, "*[a]t most*, the [CW] allegations show that bulk pricing took place—not that the individual defendants knew about the practice or about its effect on inventory." (*Id.*) Absent such facts, Plaintiff does not and cannot plead scienter.

While the Court need not reach this issue, Plaintiff also fails to plead falsity. He still has not alleged any contemporaneous and *particularized* facts indicating that precision stuffing (i) "covered up hidden declining demand—as opposed to known declining demand related to the SINUVA launch, of which investors were extensively warned," or (ii) "negatively impacted PROPEL sales or growth prospects during the Class Period." (Order at 14.) His new theory also assumes that natural demand first started to decline *in Q3 2018*, making it implausible that Defendants could have misled investors by not representing that natural demand was declining *before* Q3 2018. Nor can Plaintiff save his

Cooley LLP
Attorneys At Law
Palo Alto

1.

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

claims simply by recasting the alleged channel stuffing, which the Court found was the "legitimate kind," as "illegitimate" precision stuffing, without adding any allegations suggesting that "customers had not requested or wanted the products." (Order at 9.)

The SAC should be dismissed with prejudice for these and other reasons.

## II.    ARGUMENT

### A.    Plaintiff's New Theories of Materiality and "Precision Stuffing" Are Speculative

Nothing in the Opposition provides any basis to disturb this Court's conclusion that Plaintiff has not adequately alleged falsity or scienter. (*Id.* at 14, 16.) Plaintiff has manufactured a theory of "precision stuffing"—which is just a different name for channel stuffing—without pleading any particularized factual allegations to support it. Plaintiff claims that Q1 2019 "accumulated excess inventory" was between $2.9 million and $4.8 million, because Hilleman said on the Q3 2019 earnings call that Intersect had "cleared in the range of $1.5 to $2 million of customer inventory accumulation" in the quarter prior. (¶¶ 234, 239-40; *see also* Opp. at 6.) Plaintiff works backwards from Q3 2019 to Q1 2019, using a "dissipation rate" of his own invention, which Plaintiff concedes merely provides "a reasonable estimate" or "approximat[ion]" of total inventory purportedly in the channel in Q1 2019 as a result of the alleged channel-stuffing scheme.[1] (Opp. at 9.) Thus, the Opposition tacitly concedes that the SAC does not contain any specific, contemporaneous factual allegations indicating how much inventory was available in Q1 2019, let alone facts showing that "between 59% to 98% of all growth in PROPEL revenue [from Q3 2018 to Q1 2019] was attributable to channel stuffing practices."[2] (Opp. at 6); *see Zucco*, 552 F.3d at 990-91; *Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *5 (N.D. Cal. July 13, 2012).

The Opposition's reliance on the August 1, 2019 statement by Intersect's interim CEO Kieran

---

[1] "[S]peculation, devoid of factual substance, cannot satisfy the pleading standards of the PSLRA." *Maresca v. Soufun Holdings Ltd.*, 2016 WL 6102318, at *7 (C.D. Cal. Oct. 18, 2016).

[2] Even taking Plaintiff at his word, the alleged channel-stuffing scheme's impact on revenue did not exceed the 5% threshold of materiality. (Opp. at 7-8 n.10; Mot. at 7 n.5); SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151-52 (1999). The critical inquiry is the impact of a misstatement on *overall revenues*—according to the SAC's speculative estimate, at most 4.4% of 2018 revenue—not the proportion of "all growth in PROPEL revenue." (Opp. at 8 n.10); *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390-91 (2d Cir. 2015).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Gallahue demonstrates that Plaintiff's "mathematical" estimation of revenue from channel stuffing is speculative and unreliable. (Opp. at 9, 21.) Plaintiff plainly mischaracterizes Gallahue's statement, arguing that "the bulk discounting practices were *discontinued* at the end of Q2 2019" (*id.* at 9, 13, 20 n.25, 21), when, in fact, he said the Company decided to "*scale back* on the higher volume orders" at the end of Q2 2019 (*id.* at 2; ¶ 67). But to "scale back" clearly indicates the *continuation* of such practices at a reduced scale, not *termination*. *See, e.g.*, *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 381 (7th Cir. 2009) (observing that the defendant's "repeated description of [a] program as having been 'scaled back'" was inconsistent with the conclusion that the project was terminated). Without this distortion, Plaintiff cannot work backwards, from Q3 2019 to Q3 2018, to calculate the purported revenue growth attributable to channel stuffing. Because Plaintiff has not plausibly alleged that the purported channel-stuffing practices stopped, he has no basis upon which to calculate the additional revenue that channel stuffing purportedly brought to Intersect.

Furthermore, as the Opposition makes clear, Plaintiff's allegation of what he calls the "dissipation rate" is an unreliable formula. (Opp. at 9.) Plaintiff calculates the "dissipation rate" on the basis of vague statements estimating the pace at which Intersect's customers cleared excess PROPEL inventory after Q2 2019 (¶¶ 235-40), and uses it to work backward, to postulate an "estimation of the impact of those bulk sales on the growth rate for PROPEL sales during the last three quarters covered by the Class Period." (Opp. at 2-3 & n.5.) But the Opposition does not address an inherent flaw in Plaintiff's formula: Defendants' repeated warnings that PROPEL use fluctuates widely throughout the year as patients' need for sinus treatment varies with seasonal allergies and viruses, which undermines the notion the PROPEL inventory dissipated by a steady rate quarter over quarter. (Mot. at 6-7; *see, e.g.*, Ex. A at 20-21; Ex. H at 24-25.)

Finally, the Opposition argues that the SAC adequately alleges materiality because Defendants "provide no competing estimate" of the value of built-up inventory from Q3 2018 through Q1 2019. (Opp. at 9-10.) Defendants have no such burden. Under Federal Rule of Civil Procedure 9(b) and the PSLRA, Plaintiff—not Defendants—must "state with particularity the circumstances constituting fraud." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 794 (9th Cir. 2017); (Order at 4 (burden on Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face")).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

**B.      Plaintiff Has Not Alleged Scienter**

The Opposition ignores that the SAC's new CW allegations are unreliable, insufficiently detailed, and unable to demonstrate any Defendant's contemporaneous knowledge of facts suggesting that the challenged statements were false or misleading when made. *Zucco*, 552 F.3d at 995-98. Its arguments about "precision stuffing," core operations, and the timing of new management's "discovery" of bulk sales similarly fail to raise a strong inference of scienter, as do its attempts to marshal inapposite inferences from Defendants' statements challenged in the SAC. In short, nothing in the Opposition casts doubt on the Court's prior determination that Plaintiff's theory of scienter "strains credulity." (Order at 15-16); *Nguyen*, 962 F.3d at 415, 419 (interpreting allegations in favor of "more plausible inference" where alternative inference "does not resonate in common experience").

**1.      The SAC's CW Allegations Do Not Support Scienter**

The Opposition does not even try to argue that the SAC contains new factual allegations overcoming the Court's finding that the CAC's CW allegations failed to raise a strong inference of scienter. (Order at 15 (holding that "[n]one of the confidential witnesses knew the individual defendants, interacted with them, or communicated any information to them about bulk pricing and its effect on demand"); *see also* Mot. at 8-10.) Instead, the Opposition claims that the Court applied the wrong legal standard and cobbles together for a "holistic scienter inquiry" more of the same allegations that the Court previously rejected. (Opp. at 22.) These arguments are meritless.

First, the Court, of course, did not apply the wrong legal standard in finding Plaintiff's CW allegations failed to plead scienter. *See, e.g.*, *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *18-19 (N.D. Cal. Dec. 17, 2019) (finding scienter not adequately pled because allegations indicated CWs lacked knowledge of the defendants or information communicated to them); *Costabile v. Natus Med. Inc.*, 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018). The Opposition misinterprets cases which, in fact, found that (1) plaintiffs *had* adequately alleged that the CWs knew of specific information communicated to the defendants; or (2) plaintiffs had not plausibly pled such knowledge, and therefore the CW allegations were insufficient standing alone and only relevant to a holistic analysis.[3] (Opp. at 22.)

---

[3] *Maverick Fund, L.D.C. v. First Solar, Inc.*, 2018 WL 6181241, at *10-12 (D. Ariz. Nov. 27, 2018)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Second, the Opposition's attempt to hide behind a "holistic scienter inquiry" does not excuse Plaintiff's failure to plead *any* particularized allegations from which the Court could infer scienter on the part of any Defendant. (*Id.*)  As Defendants' Motion established, Plaintiff's CW allegations are unreliable;[4] multiple CWs' job duties and titles remain insufficiently detailed;[5] and, even if credited, the CW allegations do not warrant any inferences substantively relevant to the scienter analysis. (Mot. at 9-12.)  The Motion also identifies numerous deficiencies regarding Plaintiff's attempt to plead scienter through allegations relating to Intersect's purported data tracking, performance recognition, discount approvals, or sales practices. (*Id.*)  Tellingly, the Opposition is silent on all of these failures.

Moreover, the Opposition argues, incorrectly, that scienter can be inferred because "[t]he Court appeared to acknowledge that the CAC's CW allegations were sufficient to support an inference that the relevant 'sales data were stored in a salesforce database' and that the Individual Defendants had access to this database." (Opp. at 23 (quoting Order at 15).)  But the Court found these same allegations insufficient to plead scienter in the CAC, and the SAC adds no new facts alleging that Defendants actually accessed the database, or indicating what specific contradictory data was contained therein. (Order at 15.)  In the Ninth Circuit, Plaintiff must allege particularized facts showing Defendants *actually did know* contradictory information contained in internal reports when they made the challenged statements, not simply that they *could have accessed* the reports. *See, e.g.*, *Nguyen*, 962 F.3d at 417 (finding no scienter where CW referenced internal reports but "the complaint does not plead any details about these reports that would demonstrate a strong inference of scienter");

(crediting CW allegations where one CW presented data at issue to executives, another knew executives received reports about problems in department the CW oversaw, and a third received whistleblower complaint reporting executive's order to manipulate data); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (crediting CW allegations where one CW participated in conference call in which a defendant acknowledged the market for company's product was saturated and another CW arranged for sales reports to be delivered to a defendant); *S. Ferry LP # 2 v. Killinger*, 687 F. Supp. 2d 1248, 1257, 1260 & n.6 (W.D. Wash. 2009) (considering CW allegations only as part of holistic scienter analysis as to a single defendant whose statements alone were sufficient for strong inference scienter, where no CW allegation "implicates Defendants' direct knowledge of the system problems"); *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *16 (C.D. Cal. Jan. 17, 2020), *order clarified*, 2020 WL 5083883 (C.D. Cal. July 14, 2020) (finding CW allegations unreliable for scienter analysis where the plaintiffs did not allege the CW had contact with any defendant, and crediting them only as part of a broad holistic analysis).

[4] *See Zucco*, 552 F.3d at 996; *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020).
[5] *See Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 n.1 (N.D. Cal. Aug. 12, 2019).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

*Align*, 856 F.3d at 620 (concluding no scienter absent allegation defendants "personally accessed" contradictory data).  Likewise, the Opposition claims that scienter can be inferred because "[t]he Court also appeared to acknowledge that the CAC's CW allegations were sufficient to support an inference that 'bulk pricing took place.'"  (Opp. at 23 (quoting Order at 15).)  But that is insufficient to show that the SAC has adequately alleged scienter.  The SAC fails to plead any connection upon which the Court could infer that Defendants had contemporaneous knowledge of the SAC's new speculative allegations about "the scope and the nature of Intersect's channel stuffing practices."[6]  (Opp. at 23-24.)  As such, Plaintiff's new allegations fail to adequately allege scienter, even when considered "[t]ogether with the totality of the SAC's other allegations."  (*Id.*)

### 2.   Plaintiff's Implausible "Precision Stuffing" Allegations Do Not Support Scienter

The Opposition cannot save the SAC with the conclusory argument that "[t]he precision nature of the bulk sales support a strong inference of scienter."  (*Id.* at 21.)

First, the Opposition implausibly argues that Intersect's Q2 2018 revised guidance "suggests that most of the bulk sales during the Class Period were concentrated in the quarters before Q2 2018 and the quarters after Q2 2018, but not within Q2 2018 itself."  (*Id.* at 4 n.5.)  Plaintiff provides no explanation to suggest why such an inference is warranted.  *Metzler*, 540 F.3d at 1064-65 (concluding court "is not required to indulge unwarranted inferences in order to save a complaint from dismissal").  Indeed, Plaintiff's central theory makes this inference implausible: If Intersect engaged in channel stuffing to meet or exceed guidance over a period of years (¶ 4), why would it cease the practice for a solitary quarter, resulting in missed guidance?

---

[6] Plaintiff relies on inapposite cases when arguing that the CW allegations are indicative of a strong inference of scienter.  (Opp. at 24 & n.32); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *2, *14, *16 (D. Or. June 27, 2017) (crediting CW statements supported by "particularized allegations regarding the [CWs'] reliability and personal knowledge" and alleging that one defendant "directed" the sales practice at issue and pressured employees to adopt it); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1059-60, 1064 (C.D. Cal. 2008) (crediting CW allegations, because allegations indicated that CWs reported the practices at issue to executives; that defendants sat on board committees that monitored the practices; and that issues involved "red flags of such prominence that [the defendants] must necessarily have examined and considered them").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Second, the data on which the Opposition relies to "quantify[] the impact of Defendants' channel stuffing scheme on Intersect's financial results" negates scienter. (Opp. at 2 (citing ¶¶ 230-44).) This includes sales data showing that, beginning in Q2 2018, PROPEL growth dropped to more modest levels (¶ 241), because of the SINUVA launch which occurred at the exact same time. This drop in growth is entirely consistent with Intersect's constant cautioning that the Company's "conservative financial guidance was due to potential 'sales force distraction.'" (¶ 3); *Nguyen*, 962 F.3d at 415, 419; *Metzler*, 540 F.3d at 1064-65.

Moreover, the Opposition relies heavily on cases which show that the SAC lacks the particularized facts necessary to plead scienter. In *Stanley v. Safeskin Corporation*, the plaintiffs adequately pled scienter through particularized allegations that *the defendants themselves* strategically "calculated exactly how much additional product needed to be shipped" to customers to meet guidance, while publicly denying allegations of channel stuffing. 2000 WL 33115908, at *2-3 (S.D. Cal. Sept. 15, 2000). Similarly, in *In re Campbell Soup Company Securities Litigation*, the plaintiffs pled detailed allegations that the defendants calculated the amount of revenue needed to meet guidance and required corresponding sales targets, even when that meant renting warehouses to store excess "bought" product that customers could not hold. 145 F. Supp. 2d 574, 596-98 (D.N.J. 2001).[7] The SAC, in contrast, offers no facts suggesting that any Defendant knew of the alleged channel stuffing, let alone strategically calculated how much channel stuffing was necessary to meet guidance. *Steckman*, 143 F.3d at 1298.

### 3.   Plaintiff's Core Operations Theory Fails

Nothing in the Opposition addresses this Court's holding that "[P]laintiff's core operation

---

[7] Plaintiff also relies on distinguishable cases involving allegations that the defendants were personally and substantially involved in accounting violations to support his argument that "courts have held that accounting errors that make the difference between a company hitting or missing analyst estimates support a strong inference of scienter." (Opp. at 21 n.27 (citing *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1189-91 (D. Nev. 2009) (the defendants committed accounting errors—acknowledged in a restated 10-K—and falsely indicated in SEC filings that the company would rectify deficient internal controls via a "Remediation Plan" that was never implemented); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 819-20 (N.D. Ill. 2017) (the defendants designed deficient internal controls over financial reporting, dismissed auditing firms that uncovered the deficiencies, and falsely represented that financial reports complied with GAAP)).) Here, there are no allegations that Defendants committed any accounting errors, much less that Defendants designed deficient internal controls to cover up such errors.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

allegations are insufficient." (Order at 15.) A core operations inference requires (1) "particularized allegations that are sufficiently detailed to establish actual knowledge of the disputed information"; or (2) allegations relating to "rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Killinger*, 687 F. Supp. 2d at 1255. The Opposition has not even attempted to argue that the SAC alleges particularized allegations indicating actual knowledge. Instead, the Opposition argues that it would be "absurd" for Defendants to have been unaware of the alleged channel-stuffing scheme, because PROPEL was Intersect's "bread and butter" product "throughout the Class Period." (Opp. at 24.) This argument fails. The "relevant fact" here is Plaintiff's highest speculative estimate attributing 4.4% of 2018 revenue to the channel-stuffing scheme—not whether PROPEL is the Company's bread and butter. (Mot. at 13); *see Killinger*, 687 F. Supp. 2d at 1255; *compare In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (denying core operations inference regarding allegations that "the problem concerned NVIDIA's flagship product and was cause for concern to NVIDIA's two largest customers"), *with Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 & n.5 (9th Cir. 2008) (finding core operations inference, because subject of fraud was "tens of millions of dollars" in halted stop-work orders, including largest contract with prominent customer, which resulted in massive reallocation of personnel and an SEC disclosure just two weeks after the allegedly false statement was made). Intersect's size does not make this inference any stronger, given the volume of transactions and accounts and the small aggregate value of high-volume sales. (Opp. at 24 n.33; *see, e.g.*, Ex. H at 3 (approximately 2,900 accounts have stocked PROPEL); Ex. R at 5 (Intersect does PROPEL business with 2,500 surgeons)); *cf. Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) (company size relevant where quarterly sales derived from only 3-14 units of the company's single product and senior management discussed each sale); *In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, at *9 (N.D. Cal. July 24, 2002) (individual transactions in excess of $500,000 would likely be scrutinized by top management in a company of "modest size").

### 4. New Management's "Discovery" of Bulk Sales Does Not Support Scienter

The Opposition quibbles over the number of days it took new management to "discover" the discounted volume sales. (Opp. at 21 & n.28 (critiquing the Court's holding that "new management

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

did not apparently discover the built-up inventory until after a two-month investigation into 'PROPEL demand and customer ordering dynamics'" (quoting Order at 14-15), claiming that "it took new management at most 25 days to discover the practices and decide to end them").)  First, this argument is based on a plain mischaracterization of Gallahue's statements on August 1, 2019. *See supra* Section II.A.  Second, regardless of whether it was 25 days or two months, new management's *after-the-fact* discovery still says nothing about what any Defendant knew *at the time* of the challenged statements, nor does it suggest that Defendants knew or should have known that any failure to disclose the alleged channel-stuffing practices "*risked misleading investors*." *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 614 (1st Cir. 2017); *see also Oracle*, 2019 WL 6877195, at *22 (to establish scienter for alleged omissions relating to sales practices and associated revenue growth, "it is not enough to allege that [the defendants] were aware that the Sales Practices were taking place.  Plaintiff must also allege with particularity that [they] knew that a material portion of . . . revenue was tied to those practices.").  Indeed, the Opposition fails to identify any allegations in the SAC about Earnhardt's or Hilleman's state of mind at the time of any challenged statement.  Instead, again, the Opposition asks the Court to infer scienter merely from their resignations—which the Court already rejected. (Opp. at 21; *see* Mot. at 13 n.9; Order at 15.)

### 5.       The Challenged Statements Themselves Do Not Support Scienter

The Opposition argues that the challenged statements *themselves* are sufficient to allege scienter, because Defendants allegedly said they were "monitoring" PROPEL performance. (Opp. at 17-20.)  But Plaintiff challenges the same statements in the SAC as he did in the CAC, and thus the Court's holding is equally applicable here: "[D]efendants' statements that they tracked sales and monitored performance do not suggest knowledge that channel stuffing hurt those sales.  Because bulk pricing is a common and legitimate sales technique, defendants may know that most sales occur at the end of quarter without suspecting that the practice had any negative impact." (Order at 14); *see also Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 2020 WL 1244936, at *11 (N.D. Cal. Mar. 16, 2020) (statements did not demonstrate scienter "[w]ithout particularized allegations indicating [the defendants'] detailed involvement with this level of secondary data, as opposed to higher-level information").  The Opposition emphasizes Defendants' "monitoring" of PROPEL sales to invoke a

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

core operations inference—because all Plaintiff has been able to conjure up from his CWs are vague assertions that Defendants purportedly had access to certain unspecified information in a salesforce database. (Order at 15; Opp. at 17-20, 24). As detailed *supra* Section II.B.3, Plaintiff's core operations theory fails.[8]

In any event, the Opposition confirms that none of the allegedly false or misleading statements challenged in the SAC have anything to do with Intersect's alleged practice of offering end-of-quarter discounts or customers' ordering patterns or inventory levels.[9] (*See* Opp. at 17-19.) In short, Plaintiff alleges no facts analogous to those courts have found sufficient to plead a strong inference of scienter. *Cf. Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, 2011 WL 2444675, at *12 (D. Del. June 14, 2011) (statements that the defendants closely monitored declining advertising and sales of their phone books supported scienter, because plaintiffs alleged the company misled investors specifically about the phone books' commercial viability); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1192-93 (C.D. Cal. 2008) (CEO's statements contributed to finding of scienter, because the statements "demonstrate[d] that he knew others of his statements were false when made").

Similarly, the Opposition argues, incorrectly, that the challenged statements indicate scienter, simply because they were in response to analysts' questions. (Opp. at 17-20; *see also id.* at 7 n.9.) "[I]t does not demonstrate scienter to point out that analysts asked questions about a topic." *Bolling v. Dendreon Corp.*, 2014 WL 2533323, at *14 (W.D. Wash. June 5, 2014). The Opposition fails to identify a single analyst question about the Company's discounting practices regarding PROPEL, and there is no reason to expect that generic questions about Intersect's guidance would have "caused

---

[8] Plaintiff also argues that the allegedly false statements themselves give rise to a strong inference of scienter because of supposed "quantitative evidence of channel stuffing." (Opp. at 17-18.) But, as detailed *supra* Section II.B.5, these allegations are fatally speculative and attenuated.

[9] Most of the statements describe SINUVA-related distraction, not sales practices associated with PROPEL. (Opp. at 18-19.) As to the only two statements that refer to "watching" and "monitoring" Intersect's PROPEL business, it is clear from their immediate context that these statements do not refer to monitoring individual PROPEL customers' inventory levels or order volumes. (*Id.* at 18.) Curiously, neither of these two statements appear in the SAC—that is particularly troubling considering Plaintiff made the same argument in his prior Opposition brief and the Court granted leave for Plaintiff to file the SAC so he could have added such statements, but did not. (*See* ECF No. 30 at 11 & n.18 (prior Opposition); ECF No. 31 at 8-9 (prior Reply); Order at 17.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

Defendants to dig into the issue of . . . customer ordering patterns." (Opp. at 20.) The facts here are nothing like those in cases where courts have inferred scienter based on responses to analyst questions. *Cf. Institutional Invs.' Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) (noting speaker "*explicitly denied* the existence of [widespread] discounting in response to repeated questions about pricing"); *Killinger*, 687 F. Supp. 2d at 1259 (finding speaker "repeatedly reassured investors—in the face of *direct* questioning").

### C.    Plaintiff Has Not Pled Falsity

#### 1.    The SAC Does Not Allege Illegitimate Channel Stuffing

The Opposition argues that the SAC pleads illegitimate channel stuffing through claims that Intersect "encourage[d] customers to hold PROPEL inventory on their shelves even if they d[id] not need the product." (Opp. at 5.) This argument fails. The Opposition makes clear that Plaintiff still has not pled particularized facts suggesting "that customers had not requested or wanted the products" at the time they placed such orders; only that "CW1 assisted certain customers with PROPEL product near expiration by finding other customers that could use the product before it expired and facilitated a swap." (¶ 103; *see* Opp. at 5); *Novatel*, 830 F. Supp. 2d at 1014 (finding channel stuffing not illegitimate, because plaintiffs "failed to produce any evidence that Novatel shipped unneeded or unordered product"). Such a swap would be unnecessary if customers did not actually intend to use the product. Likewise, the Opposition does not identify any allegations indicating that customers did not want PROPEL and returned it; only that Intersect incentivized customers to buy in bulk by "offer[ing] the right to replace expired product with new product." (Opp. at 5 (citing ¶¶ 103-05 (noting that replacement product was "trunk stock," *i.e.*, "free samples that sales reps give physicians")).) Plaintiff has not alleged any specific facts regarding whether Intersect charged customers for this replacement product, how much revenue such replacement product generated during the alleged Class Period, or even whether Intersect included any sales of such replacement product in its revenue reporting.

Worse, to support Plaintiff's theory of "illegitimate" channel stuffing, the Opposition relies on a handful of vague allegations from CWs regarding only one identified customer, across a limited or entirely opaque time period. (Opp. at 4-5; Mot. at 8-12.) Indeed, CW5's alleged replacement of only

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

"about three units" for a single customer "at the end of 2018" (¶ 105; Opp. at 5 n.6) does not plausibly suggest an illegitimate channel stuffing scheme which supposedly generated millions in revenue and spanned a time period of at least 16 quarters. (See ¶¶ 36, 74 (CW4 recalled discounted bulk sales throughout CW4's tenure, which began in September of October 2015).) The other CW allegations are vague as to time and could have occurred at any point in the CWs' tenure at Intersect, which began well before the start of the alleged Class Period.[10] See Bao v. Solarcity Corp., 2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (concluding fraud not alleged, as CW "does not state when in his/her tenure . . . the conference calls discussing negative margins occurred; if they occurred before the relevant time period, they cannot establish" what defendants knew or should have known *at the time* of the challenged statements); (see also Mot. at 11-12).

### 2.   The Challenged Statements Were Not False or Misleading

Nothing in the Opposition identifies particularized factual allegations in the SAC overcoming the Court's conclusion that Plaintiff has failed to plead any false or misleading statement.[11]

### a.   Financial Results Were Not Misleading

The Opposition confirms that the SAC has not corrected the deficiencies underlying the Court's conclusion that the Category 1 statements are inactionable. (Opp. at 15-16; Order at 11-12.) Plaintiff relies on the exact same statements that the Court concluded were inactionable. (Opp. at 15 & n.18 (citing ¶¶ 165, 181, 191, 207, 219).) This time, Plaintiff merely asserts that Intersect misled customers by stating that "[its] revenue growth was driven by 'growth in *adoption* of the PROPEL family of products.'" (*Id.* at 15 (citing ¶ 219).) But Intersect's simple association of revenue growth with "adoption" of PROPEL does not render these bare financial reports any less neutral.[12] *Oracle*, 2019 WL 6877195, at *5, *12 (finding falsity not adequately alleged, where "accurate financial

---

[10] CW1 joined Intersect in April 2016 and "recounted" facilitating product swaps between customers at an unidentified time (¶¶ 33, 103); and CW5 joined Intersect in June 2017 and recalled discussing replacement options with customers at an unidentified time (¶¶ 37, 104-05).

[11] Plaintiff appears to urge the Court to view his falsity allegations "holistically." (Opp. at 4, 13-14.) This request improperly conflates the standard for pleading falsity with that for scienter. *See Zucco*, 552 F.3d at 990-91; *Paciga*, 2019 WL 3779694, at *5.

[12] Moreover, the consistent attribution of revenue growth to new customer adoption between Q1 2018 and Q1 2019 (*i.e.*, when these statements were made) undercuts Plaintiff's central theory—that existing PROPEL customers holding excess inventory made Intersect's sales strategies unsustainable and necessarily led to declining revenue during these very same quarters. (¶¶ 4-10.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

reporting and projections" attributed revenue to "rapid adoption of the Oracle Cloud" and growth may have been based on undisclosed coercive sales practices).

The Opposition relies heavily on *Cunha v. Hansen Natural Corporation*. 2011 WL 8993148 (C.D. Cal. May 12, 2011); (Opp. at 15). But *Cunha* is inapposite. That case contains detailed factual allegations of the sort of "poor business fundamentals" that the Order associated with actionable channel stuffing—allegations simply not pled here. (Order at 10); *Cunha*, 2011 WL 8993148, at *1-2 (finding actionable the defendant's statements to analysts that "distributors don't keep inventory" and "what we sell is going through . . . to the retail stores and . . . consumers," although channel stuffing had resulted in distributors having a year's worth of excess inventory and repeatedly accepting orders exceeding their sell-through capacity, given fear of retaliation).

**b.    Representations of PROPEL Growth and Statements Attributing Weakening PROPEL Growth to SINUVA Distraction Were Not Misleading**

The Opposition demonstrates that the SAC remains deficient as to the statements in Categories 2 and 3 for the same reasons the Court found these statements inactionable in the CAC. (Order at 12-14.)

**(1)    Statements from Before Q3 2018**

None of the allegedly false statements made before Q3 2018 are actionable for at least two reasons, which the Opposition fails to adequately rebut. First, Plaintiff fatally undermines his challenge to pre-Q3 2018 statements by alleging that it was not until Q3 2018 that "natural" demand for PROPEL began to decline. (¶ 261.) The Court stated that, "[i]f growth was actually declining in this time period, defendants' statements may have been misleading." (Order at 12.) Because Plaintiff has conceded that growth pre-Q3 2018 was not declining, Intersect's pre-Q3 2018 statements— "representations of PROPEL *growth*" (¶¶ 167, 175, 177, 187) and "statements attributing weakening PROPEL growth to SINUVA distraction" (¶¶ 163, 169, 171, 179, 183, 185, 187)—cannot be false under Plaintiff's stated theory of fraud. *See, e.g.*, *In re Tibco Software, Inc.*, 2006 WL 1469654, at *23 (N.D. Cal. May 25, 2006) (concluding the plaintiffs had not adequately alleged falsity because they did not allege "contemporaneous statements or conditions that are inconsistent with the challenged statement so as to demonstrate that it was false *when made*"). The Opposition fails to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

address this deficiency.

Second, the Opposition concedes that Plaintiff is "unable to allege with precision the amount of channel stuffing prior to Q3 2018." (Opp. at 16.) Plaintiff's failure to plead the required particularized allegations is fatal. His complete reliance on the CWs' vague impressions about the reasons underlying Intersect's Q2 2018 guidance revision further demonstrates this failure. *See, e.g.*, *In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *11-12 (N.D. Cal. Aug. 29, 2003) (rejecting allegations attributed to sales personnel about belief they would not be able to meet quotas, because they were not "pled with the requisite particularity" and were "too vague to demonstrate the falsity of any statement"); *Scheller*, 450 F. Supp. 3d at 1035-36 (N.D. Cal. 2020) (finding falsity of statements about increased hiring not plausibly pleaded, given CW allegations of hiring freezes lacked particularized details).[13] The CWs are also wholly unreliable given that their relatively low-level responsibilities in discrete territories make it implausible that they would have known why Intersect revised its guidance in Q2 2018.[14] (Mot. 8-10); *Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *16 (N.D. Cal. Apr. 27, 2017) (finding CW allegations unrelated to duties not reliable); *In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1215-16 (W.D. Wash. 2009).

### (2)    Representations of PROPEL Growth

The Opposition shows that Plaintiff still has pled no particularized allegations that the Category 2 statements were false or misleading when made. (Opp. at 6-11.)

First, the Opposition casts no doubt on the Court's holding that Plaintiff failed to allege that "[D]efendants' representations of strong PROPEL growth and opportunity for growth" were

---

[13] The Opposition cites *Tricontinental Industries Ltd. v. Anixter*, but that case is distinguishable. 215 F. Supp. 2d 942 (N.D. Ill. 2002). *Anixter* does not stand for the proposition that Plaintiff can allege falsity regarding statements made *before* Q3 2018 without particularized details of declining PROPEL demand until *after* those statements were made. (Opp. at 16 n.20.) In *Anixter*, the plaintiffs supported allegations that the defendants had misleadingly failed to disclose a false billing scheme by alleging specific facts regarding a transaction representing millions in false billings. 215 F. Supp. 2d at 947. Because this "one incident was enough to make [the defendants'] statements false," the plaintiffs adequately alleged falsity despite not alleging facts regarding other transactions. *Id.* at 948. Plaintiff's post-Q3 2018 allegations do not rise to that level.

[14] These allegations are attributed to four sales reps with limited territories—CW1 in Iowa (¶ 33); CW2 in Spokane and, "later," parts of three Mountain States (¶ 34); CW3 in "parts of the Midwest" (¶ 35); CW5 in four Texas cities (¶ 37)—and one Regional Sales Manager who oversaw sales reps "in seven Northwestern states," CW6 (¶ 38). (*See* Mot. at 8-10.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW

misleading.  (Order at 12.)  As detailed *supra* Section II.A, and in the Motion (Mot. at 6-8), Plaintiff has not cured this deficiency with his materiality and precision stuffing allegations, which are based on speculative math and unsupported by particularized factual allegations.

Second, the Opposition argues incorrectly that "[w]hile the actual results posted by Intersect did show a declining rate of PROPEL revenue growth, Intersect's channel stuffing practices disguised the slope of the curve and artificially delayed the point of reckoning at which that growth turned from positive to negative."  (Opp. at 7.)  But Plaintiff pleads no factual allegations explaining why Intersect would have endeavored to "delay[] the point of reckoning," or why Intersect would have disguised current demand while simultaneously warning investors of declining demand caused by the SINUVA launch.  (*Id.*); *see Nguyen*, 962 F.3d at 415.  The SAC most plausibly alleges, as the Court already acknowledged, that bulk selling had no "substantial impact on any given period."  (Order at 12; ¶¶ 147, 149.)

Third, the Opposition argues that certain statements are false because they imply that PROPEL sales were naturally growing.  (Opp. at 10-11; Order at 12.)  But these statements do no such thing. (Mot. at 15.)  Rather, in each, Hilleman or Earnhardt acknowledge the negative impact of the SINUVA launch on PROPEL growth and generally describe Intersect's efforts to obtain a marginally higher growth rate for PROPEL going forward.  (*See* ¶¶ 201, 205, 217.)

**(3)     Statements Attributing Weakening PROPEL Growth to SINUVA Distraction**

The Opposition makes clear that the SAC fails to adequately allege falsity regarding the Category 3 statements.  Plaintiff still does not plausibly allege that "channel stuffing represented a separate risk impacting PROPEL sales over and above SINUVA-related distraction."  (Order at 13; Opp. at 11; Mot. at 14-15.)  The Opposition's arguments to the contrary fail.

First, the Opposition's claim that the SAC plausibly alleges materiality and "precision stuffing" is unavailing for the reasons already detailed.  (Opp. at 12-13; Mot. 6-8, 12-13); *supra* Section II.A. These allegations, even if credited, still fail to disentangle supposedly disappointing PROPEL sales from the repeatedly disclosed risks associated with the SINUVA launch, so Plaintiff has not adequately alleged any impact specifically attributable to the risk from channel stuffing.  (*See* Order at 13.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS. SECOND AMENDED CLASS ACTION COMPLAINT – CASE NO. 4:19-CV-02647-JSW**

Therefore, as the Court held, "[t]he risk from channel stuffing is . . . expressly connected to the risk from the SINUVA distraction."[15]  (*Id.*)

Second, the Opposition implausibly contends that "sales force distraction due to the SINUVA launch could not have caused 'declining demand,'" but could "at most, . . . have interfered with Intersect's ability to act upon and optimally execute sales." (Opp. at 12 (citing Order at 14).)  Plaintiff has not pled any new particularized facts to support this contention, which the Court already rejected in finding that SINUVA-related distraction caused Intersect to "stop[] investing in physician education and other market development" and "shift[] to 'cheap' sales tactics, like discount pricing[,]" both of which impacted Intersect's ability to drive PROPEL demand.  (Order at 13, 16.)

Third, Plaintiff claims that the Court erred in holding that channel stuffing "is necessarily a short-term scheme" because "the underlying weakness will necessarily reveal itself in time," arguing that "[a] more precise articulation of this principle . . . is that channel stuffing is only ***effective*** as a short-term scheme."  (Opp. at 14 (quoting Order at 10).)  This is a distinction without a difference.  The Opposition's claim that channel stuffing occurred over the more than six quarters encompassing the alleged Class Period—***and*** from as early as "September or October of 2015"—clearly demonstrates that the alleged bulk sales practices were not "short term." (*Id.*; Mot. at 14-15; ¶¶ 36, 74.)  Thus, they could not have been "illegitimate."  Plaintiff's argument that "partial corrective disclosures" occurred during the alleged Class Period is a belated attempt to resolve the irreconcilable inconsistency between his stated theory of fraud and the length of the purported scheme.[16]  (Opp. at 14.)

Moreover, the Court clearly did not apply the wrong legal principles when rejecting Plaintiff's argument.[17]  *See, e.g., Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *5 (N.D. Cal. Sept. 11, 2020)

---

[15] Likewise, Plaintiff again relies on several CWs' vague statements of disbelief to claim that channel stuffing, and not SINUVA-related distraction, was the reason for supposedly disappointing PROPEL sales figures.  (Opp. at 12-13 & n.16 (citing ¶¶ 129, 134-36).)  This reliance is misplaced.  The CWs had limited duties within their respective regions and there are no factual allegations suggesting they had any insight into Company-wide sales practices—much less revenue reporting or guidance setting. *Supra* Section II.B.1; (Mot. at 8-10).

[16] The Court held that the CAC failed to plead loss causation for the August 1, 2018 revised guidance statement, and nothing in the Opposition suggests that the SAC has cured any of the relevant deficiencies in the CAC.  (Order at 16-17; Opp. at 25; ¶ 285.)

[17] Plaintiff relies on *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, but that case is distinguishable.  513

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW**

(concluding allegation that the defendant "regularly pulled in accounts each quarter, including before the Class Period . . . undercuts [the plaintiffs'] contention that Nutanix's pull-in practice was misleading"); *In re ICN Pharms., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1062 (C.D. Cal. 2004) ("[F]or channel stuffing to be improper logically it must be a short-lived scheme.").

## III.    CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated:          November 20, 2020               COOLEY LLP

                                                /s/ *Patrick E. Gibbs*
                                                Patrick E. Gibbs (183174)

                                                Attorneys for Defendants
                                                INTERSECT ENT, INC., LISA D. EARNHARDT,
                                                JERYL L. HILLEMAN and ROBERT H.
                                                BINNEY, JR.

---

F.3d 702 (7th Cir. 2008); (Opp. at 14-15).  There, the plaintiffs adequately alleged falsity, because the defendants allegedly told investors that sales were "still going strong" and experiencing no "weakness at all," while "Tellabs had been flooding its customers with tens of millions of dollars worth of [product] that the customers had not requested, in order to create an illusion of demand."  513 F.3d at 706-07.  Here, in contrast, Plaintiff has not alleged that customers ever received unordered product, and Defendants repeatedly warned investors that declining demand resulted from SINUVA-related sales force distraction. (Mot. at 3-4; *see, e.g.*, ¶¶ 57, 137-38, 197; Ex. C at 9; Ex. M at 5-6, 15; Ex. N at 16.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

REPLY ISO DEFENDANTS' MTD PLAINTIFF'S CONS.
SECOND AMENDED CLASS ACTION COMPLAINT –
CASE NO. 4:19-CV-02647-JSW