**HOLZER & HOLZER, LLC**
Corey D. Holzer (admitted *pro hac vice*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron
and the Settlement Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN, and ROBERT H. BINNEY, JR.,<br><br>Defendants. | Case No.: 4:19-cv-02647-JSW<br><br>**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: June 25, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 5<br>Judge: Hon. Jeffrey S. White |

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT .................................................................................... 1

II.  SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ......................................... 2

    A.   Nature of the Action .................................................................................... 2

    B.   Initial Complaint and Lead Appointment Process ..................................... 2

    C.   Lead Counsel's Investigation and FAC ..................................................... 2

    D.   Motion to Dismiss the FAC ....................................................................... 3

    E.   Lead Counsel's Continued Investigation and The SAC............................ 3

    F.   Motion to Dismiss the SAC, Mediation Efforts and Settlement Negotiations.......... 3

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ........................... 4

    A.   Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, And Adequate" and the Court Will "Likely" Be Able to Grant Final Approval........................................................................................... 4

IV.  ARGUMENT .......................................................................................................... 5

    A.   The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors ............................... 5

        1.   Plaintiff and Lead Counsel Adequately Represented the Settlement Class .. 5

        2.   The Settlement is the Result of Arms'-Length Negotiations ....................... 6

        3.   The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ............... 7

        4.   Rule 23(e)(2)(C)(iii)-(iv) ........................................................................ 9

        5.   The Settlement Treats All Class Members Equitably Relative To Each Other ............................................................................................... 11

        6.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ............................................................................ 11

V.   CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES ............. 14

    A.   The Settlement Class Is Sufficiently Numerous .................................... 15

B.      Common Questions of Law Or Fact Exist ............................................... 16

C.      Plaintiff's Claims Are Typical of Those of the Settlement Class ........................... 16

D.      Plaintiff and Lead Counsel Adequately Represent the Settlement Class ................ 17

E.      The Predominance and Superiority Requirements Are Satisfied ........................... 17

VI.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .......................................... 18

VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA ............ 19

A.      Retention of A.B. Data Ltd. ................................................................... 19

B.      The Method of Notice is Adequate ......................................................... 20

C.      The Content of Notice is Adequate ........................................................ 21

D.      Claims Processing ............................................................................ 22

E.      Estimated Notice and Administrative Costs............................................... 22

VIII. ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S          EXPENSES
23

IX.  PROPOSED SCHEDULE OF EVENTS ................................................................ 24

X.   CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488 (N.D. Cal. 2010) .................................... 16

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ........................................................................ 15

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).............................. 24

*Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................... 13

*Christine Asia Co. v. Yun Ma*, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................. 11

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004) ................................................. 5

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974) .................................................. 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................................ 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................. 5

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964).................................. 16

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018).............. 11, 24

*Hefler v. Wells Fargo & Company*, Case No. 3:16-cv05479-JST (N.D. Cal.) (Tigar, J) .............. 19

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)................................................... 23

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014)........................ 21

*In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865 (C.D. Cal. July 28, 2014)................. 7

*In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015).................. 17

*In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754 (C.D. Cal. May 16, 2013)....................... 6

*In re Diamond Foods, Inc.*, 295 F.R.D. 240 (N.D. Cal. 2013) ...................................................... 17

*In re Geron Corp. Securities Litigation*, Case No. 3:14-CV01224-CRB (N.D. Cal.) ................... 19

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................. 8

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................................. 10

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......................................................................................................................................... 24

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035 (N.D. Cal. 2008) ........................................... 9

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................................................... 24

*In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................ 9

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) 8, 13

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426

    (N.D. Cal. Oct. 25, 2016) ............................................................................... 13

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ....................................... 7

*Mild v. PPG Indus., Inc.*, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ..................................... 5, 6

*Morris v. Lifescan*, Inc., 54 Fed. App. 663 (9th Cir. 2003) ....................................... 23

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ..................................... 23

*Persky v. Turley*, 1991 WL 329564 (D. Ariz. Dec. 20, 1991)....................................... 18

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ....................................... 23

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ....................................... 24

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................... 6

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)............... 24

*Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................... 12

*Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712 (D. Ariz. March 30, 2001)............... 16

*Stewart v. Applied Materials, Inc.*, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)...................... 14

*Vikram v. First Student Management, LLC*, 2019 WL 1084169 (N.D. Cal. March 7, 2019)......... 12

*Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293 (C.D. Cal. May 6, 2014)................... 11

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................... 15

*Wong v. Arlo Techs., Inc.*, 2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ....................................... 5

*Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 (N.D. Cal. June 19, 2020) ................................... 7

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... 21

15 U.S.C. §78u-4(a)(4)................................................................................................ 25


**Other Authorities**

NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007) ................................................ 24

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 16

Fed. R. Civ. P. 23(e)(2) ........................................................................................ passim

Fed. R. Civ. P. 23(e)(5) ................................................................................................ 22

N.D. Cal. Guid............................................................................................... 19, 22, 25

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the proposed $1,900,000 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2.   Whether the Settlement Class should be certified for purposes of the Settlement.

3.   Whether Lead Plaintiff Avi Yaron should be certified as Class Representative of the Settlement Class for purposes of the Settlement.

4.   Whether Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5.   Whether the proposed Settlement Notice and Proof of Claim and Release Form and the manner for dissemination of the Notice and Proof of Claim to the Settlement Class should be approved.

6.   Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses

**NOTICE OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 25, 2021, at 9:00 a.m., in Courtroom 5 (2nd Floor), or as soon thereafter as the matter may be heard, Lead Plaintiff Avi Yaron ("Plaintiff") will and hereby moves the Honorable Jeffrey S. White, United States District Judge, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice[1] submitted herewith.

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Settlement Class. Accordingly, Plaintiff requests that the Court: (i) grant preliminary approval of the proposed Settlement of this Action on the terms set forth in the Stipulation of Settlement and exhibits thereto; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iii) preliminarily certify the Settlement Class, and appoint Lead Counsel as class counsel for the Settlement Class; and (iv) set a hearing date to finally determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.

The motion is based on the following memorandum, the Holzer Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation. A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Corey D. Holzer in Support of Motion for Preliminary Approval of Class Action Settlement (the "Holzer Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Holzer Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for a cash payment of $1.9 million.  Plaintiff submits that the Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation, including risks associated with Defendants' anticipated motion to dismiss (if Plaintiff had filed a third amended complaint), as well as future motions for summary judgment, trial and appeals.

The Settlement was reached after more than two years of hotly contested litigation, which included: (i) Lead Counsel's comprehensive investigation into the alleged claims asserted against Defendants, which was assisted by an investigator who conducted interviews with former Intersect employees; (ii) drafting the extensive Amended Class Action Complaint ("FAC"); (iii) fully briefing Defendants' motion to dismiss the FAC; (iv) continuing investigation into alleged claims against Defendants and preparing the Second Amended Class Action Complaint ("SAC") based thereon; (v) fully briefing Defendants' motion to dismiss the SAC; (v) arms'-length negotiations between the Parties, which included an all-day October 2020 mediation session with Jed D. Melnick, Esq. of JAMS, an experienced and highly respected mediator of complex class actions; and (vi) further investigation following the Parties' October mediation session that included more interviews with former Intersect employees.  While the Parties did not reach a settlement during their full-day October mediation session, the Parties continued to explore the possibility of a settlement. Ultimately, Mr. Melnick presented a double-blind mediator's proposal that the Parties accepted on March 4, 2021.  The Parties thereafter negotiated and executed the Stipulation.

Thus, the $1.9 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of an experienced mediator, and with sufficient information to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of continued litigation.  As set forth herein, the Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

## II.     SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.     Nature of the Action

Plaintiff asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Intersect ENT, Inc. ("Intersect" or the "Company"), Lisa D. Earnhardt, Jeryl L. Hilleman, and Robert H. Binney, Jr (collectively, the "Individual Defendants" and together with Intersect, the "Defendants"). Plaintiff alleges Defendants misled investors between February 27, 2018 and August 1, 2019 (the "Settlement Class Period"), by failing to disclose the Company's use of heavily discounted end-of-quarter bulk sales (referred to as "channel stuffing") for Intersect's main product, PROPEL, thereby creating an alleged false appearance of organic revenue growth.

### B.     Initial Complaint and Lead Appointment Process

On May 15, 2019, Plaintiff filed an initial class action complaint in the United States District Court for the Northern District of California styled *Yaron v. Intersect ENT, Inc.*, *et al.*, No: 19-cv-02647-JSW.  ECF No. 1.  On September 24, 2019, the Court appointed Lead Plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP ("GPM") and Holzer & Holzer, LLC ("Holzer") to serve as Lead Counsel.  ECF No. 21.  ¶¶2-4.

### C.     Lead Counsel's Investigation and FAC

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Intersect's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Intersect, (c) Intersect's investor call transcripts, and (d) court filings and other publicly available material related to Intersect; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with damages and loss causation experts.  ¶5.  On December 2, 2019, Plaintiff filed and served his FAC based on this investigation.  ECF No. 24.  ¶6.

**D.      Motion to Dismiss the FAC**

Defendants moved to dismiss the FAC on January 31, 2020.  ECF No. 27.  Plaintiff filed his opposition to the motion to dismiss on March 16, 2020.  ECF No. 30.  Defendants filed their reply in support of the motion to dismiss the FAC on April 24, 2020.  ECF No. 31.  The Court granted Defendants' motion to dismiss without prejudice on June 19, 2020 ("FAC MTD Order").  ECF No. 33.  ¶¶7-8.

**E.      Lead Counsel's Continued Investigation and The SAC**

Following the Court's FAC MTD Order, Lead Counsel continued their investigation into Defendants and their alleged channel stuffing practices. This continued investigation included additional interviews with many former employees as well as detailed analysis into quantifying the impact Defendants' alleged channel stuffing practices had on Intersect's financial results.  ¶9.  On July 29, 2020, Plaintiff filed the detailed SAC based on this investigation and analysis.  ECF No. 38.

**F.      Motion to Dismiss the SAC, Mediation Efforts and Settlement Negotiations**

On September 18, 2020, Defendants filed a motion to dismiss the SAC.  ECF No. 39.  On October 23, 2020, Plaintiff filed his opposition to Defendants' motion to dismiss.  ECF No. 47.  On November 20, 2020, Defendants filed their reply in support of the motion to dismiss the SAC.  ECF No. 48.

On October 29, 2020, the Parties engaged in private mediation with Jed D. Melnick, Esq. of JAMS.  In advance of that session, the Parties provided Mr. Melnick with the Court's FAC MTD Order, the SAC, the motion to dismiss the SAC and opposition thereto.  After a full day of negotiation, the Parties were unable to reach a settlement.  ¶12.

On January 22, 2021, the Court granted Defendants' motion to dismiss the SAC without prejudice ("SAC MTD Order").  ECF No. 54.  Following the SAC MTD Order, Lead Counsel continued to investigate allegations against Defendants and worked with their investigator to locate and interview additional former Intersect employees.  ¶13.  On February 5, 2021, the Court entered an order approving the Parties' stipulation to continue Plaintiff's deadline to file an amended complaint, or otherwise indicate that no such amended complaint will be filed to March 4, 2021.  ECF No. 56.

During this time, the Parties re-engaged Mr. Melnick regarding the possibility of resolving the Action through settlement.  On March 4, 2021, the Parties accepted a double-blind mediator's proposal to resolve the Action for $1.9 million on a class-wide basis.  The Parties subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation.  ¶¶16-17.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.    Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, And Adequate" and the Court Will "Likely" Be Able to Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously adopted by the courts.  The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

(1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government

participant; and (8) reaction of class members to the proposed settlement.[2]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain Hanlon factors.").[3]   As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.   ARGUMENT

### A.   The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors

#### 1.   Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").  Additionally, Plaintiff was involved throughout the litigation and worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.  ¶61.

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class.  There is no government participant.

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

1    Plaintiff also retained counsel who are highly experienced in securities litigation, and who

2    have a long and successful track record of representing investors in such cases.  Lead Counsel, GPM

3    and Holzer, have successfully prosecuted securities class actions and complex litigation in federal

4    and state courts throughout the country. *See* Ex. 3 (GPM firm resume); Ex. 4 (Holzer firm resume).

5    Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by

6    conducting an extensive investigation through a detailed review of all publicly available documents

7    as well as numerous interviews with former Intersect employees, drafting two detailed complaints,

8    and obtaining a $1.9 million Settlement for the benefit of the Settlement Class following two

9    dismissal orders.  ¶¶5-6, 9-10, 12, 16.  *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting

10   that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously

11   prosecuted the Settlement Class's claims[.]").

12          **2.       The Settlement is the Result of Arms'-Length Negotiations**

13          Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's

14   length."  FED. R. CIV. P. 23(e)(2)(B).[4]  The Ninth Circuit, as well as courts in this District, "put a

15   good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in

16   approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

17   2009). Here, as detailed above, the Parties agreed to mediate with Mr. Melnick in October 2020,

18   and continued negotiating following the Court's dismissal of the SAC.  The mediation negotiations

19   were extensive and continued until Parties accepted the mediator's proposal.  The arm's-length

20   nature of the extensive settlement negotiations and the involvement of a mediator with substantial

21   experience in securities class actions support the conclusion that the Settlement is fair and was

22   achieved free of collusion.  *See In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *7 (C.D.

23   Cal. May 16, 2013) (finding that the settlement, which was reached through mediation with mediator

24   Mr. Melnick, weighed in favor of preliminary approval); *In re Am. Apparel, Inc. S'holder Litig.*,

25   2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the

26

27   _____

     [4] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-
28   collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings."
     *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

assistance of mediator, Mr. Melnick, following an in-person mediation at which the parties were initially unable to come to agreement).

**3.     The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.   FED. R. CIV. P. 23(e)(2)(C).[5]   As discussed below, each of these factors supports the Settlement's approval.

**(a)     The Strength of Plaintiff's Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The risks of continued litigation here were considerable, perhaps insurmountable.  The most immediate risk is that Plaintiffs would not have been able to overcome the pleading deficiencies identified by the Court in its two orders dismissing the Action, which both rejected Plaintiffs' theory of falsity with respect to: (1) financial results and earnings guidance; (2) Defendants' statements that PROPEL sales were strong and; (3) Defendants' statements attributing weak PROPEL growth to SINUVA-related sales force distraction.  *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *8-9 (N.D. Cal. June 19, 2020); ECF No. 54 at 7-13.

Beyond falsity, the Court also found that Plaintiff failed to plead scienter and underscored "that an innocent inference [was] far more plausible in this case than the inference of scienter." *Intersect*, 2020 WL 6750568 at *9; *see also*, ECF No. 54 at 13 (finding Plaintiff did not meaningfully amend his scienter allegations).  Finally, the Court agreed with Defendants' loss causation challenge

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

of the August 1, 2018 disclosure revising the 2018 guidance, concluding the disclosure was not tied to the alleged fraudulent channel stuffing scheme. *Intersect*, 2020 WL 6750568 at *10.

There is no better indication of the future risks Plaintiff faced in continuing litigation than that of the Court's two dismissals. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig*., 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved.").   Importantly, the risks discussed above were just risks Plaintiff faced at the *pleading* stage.   On top of those risks, should Plaintiff's case advance past the motion to dismiss, a further escalation of risks would follow.

For example, to defeat a summary judgment motion and prevail at trial, Plaintiffs would have to prove by a preponderance of the evidence, among other things, that: (i) Defendants made false and/or misleading statements about the Company's financial results and earnings guidance and the growth of PROPEL sales; (ii) the Individual Defendants had the requisite scienter in connection with such statements and omissions; and (iii) the alleged putative class suffered damages as a result of such false statements.   Although Plaintiff and Lead Counsel believe that the case has merit, they recognize establishing liability beyond the pleading stage is uncertain. *See In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

On top of the uncertainty in proving liability, likewise, the determination of causation and damages, is itself a complicated and uncertain process involving conflicting expert testimony.   The Court had already dismissed Plaintiff's loss causation allegations regarding the August 1, 2018 disclosure.   Indeed, as to the August 1, 2018 disclosure, as well as the other two alleged corrective disclosures (on May 7, 2019 and August 2, 2019), Plaintiff anticipates Defendants would have engaged a highly respected loss causation expert to help them make arguments that the reasons for the stock-price declines on those dates were unrelated to the alleged fraud. *See In re Tyco Int'l, Ltd*., 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Attendant to the above-discussed legal risks, continued litigation would be long, complex, and costly. Depositions would have to be taken, experts would need to be designated and expert discovery completed, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain. Moreover, any judgment favorable to the Settlement Class likely would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. Any recovery that shareholders may ultimately see is diluted by the escalating costs accumulated in the process.

In sum, continued litigation would be risky and uncertain, and assuming the litigation were even able to proceed past the pleading stage, complex, costly, and lengthy. By contrast, the $1.9 million Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk of continued litigation.

### (b)   Risks of Maintaining Class Action Status

While Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* Sec. V, *infra*) the Class has not yet been certified, and Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if Plaintiff had reached that stage.

### 4.   Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**<u>Rule 23 (e)(2)(C)(ii):</u>** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, A.B. Data, Ltd., ("AB Data"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process

claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6]

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Postcard Notice, Summary Notice, and Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class.  As discussed in detail below (*see* Sec. VIII, *infra*), a proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶34.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

---

[6] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted.  *See* Stipulation ¶13.

### 5.      The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

### 6.      The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[7]  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *9 (N.D. Cal. Dec. 18, 2018).  "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the

---

[7]  Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

1    possible recovery in the best of all possible worlds, but rather in light of the strengths and

2    weaknesses of plaintiffs' case"). Indeed, "[t]here is no reason, at least in theory, why a satisfactory

3    settlement could not amount to a hundredth or even a thousandth part of a single percent of the

4    potential recovery." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2nd Cir. 1974).

5        Here, Plaintiff's damages expert estimates that if Plaintiff had prevailed on appeal of the

6    ***twice dismissed*** case, and if the Court and jury subsequently accepted all of Plaintiff's liability and

7    damages theories, including allegations of materially false statements over ***six*** quarters and proof of

8    loss causation as to each of the ***three*** alleged stock price drop dates—*i.e.*, Plaintiff's ***best case***

9    ***scenario***—the total ***maximum*** damages would be approximately $161 million.  Under such a

10   scenario, the $1.9 million recovery represents approximately 1.17% of the estimated maximum

11   damages potentially available in this Action.

12       However, this Court held that Plaintiff failed to plead the existence of a single false or

13   misleading statement, failed to plead scienter on the part of any Defendant, and expressed serious

14   doubt that Plaintiff could cure the pleading issues related to scienter.  ECF No. 33; ECF No. 54 at

15   14.  The Court also dismissed the August 1, 2018 price drop on loss causation grounds.  ECF No.

16   33 at 16-17.  Thus, assuming the case did proceed and Plaintiff prevailed in some respects, damages

17   would depend on which of the alleged misrepresentations and loss causation dates were proven and

18   could range from a low of $23 million (if falsity was proven only for statements relating to Q1 2019

19   and loss causation was proven only in relation to the August 2, 2019 stock drop); to $54 million (if

20   falsity was proven only for statements relating to Q4 2018 and Q1 2019, and loss causation was

21   proven in relation to the May 7, 2019 and August 2, 2019 stock drops); to the aforementioned high

22   of $161 million.[8]   Moreover, the estimated damages for each of these scenarios assumes that

23

_____

24   [8] Given that this was a channel stuffing case, under Plaintiff's theory of the case, inventory levels rose as time went on.  Plaintiff's ability to allege the precise amount of channel stuffing on a quarter-

25   by-quarter basis, however, was severely hampered by the limited nature of Intersect's public disclosures concerning bulk sales. *See, e.g.*, ECF No. 47 at 16 (acknowledging that Plaintiff was

26   unable to allege with precision the amount of channel stuffing prior to Q3 2018). Based on the amount of excess inventory in the channel at the end of the Class Period (and the trend of slowing

27   PROPEL revenue growth), Plaintiff believes that he was able to sufficiently allege that Intersect

28   would have been required to report negative growth in at least Q1 2019 and also likely in Q4 2018

1  Plaintiffs are given full credit for each of the respective drops and does not take into account any

2  disaggregation arguments that Defendants may have raised.

3      Of course, Defendants would have continued to challenge all aspects of the case, and the

4  prospect that Plaintiff would have obtained **any** recovery was far from guaranteed.  *See In re Xcel*

5  *Energy, Inc., Sec., Derivative & "ERISA" Litig*., 364 F.  Supp.  2d 980, 1003 (D. Minn.  2005)

6  ("The court needs to look no further than its own order dismissing the shareholder derivative

7  litigation to assess the risks involved."); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at

8  *6 (C.D. Cal. Oct. 10, 2019) ("In this case, continued litigation involved substantial risk for

9  Plaintiffs.  This Court has already granted three motions to dismiss, and a fourth is pending.").

10 Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs

11 strongly in favor of preliminary approval.

12     **The Extent of Discovery Completed and the Stage of the Proceeding:** In considering a

13 class action settlement, courts look for indications that the parties carefully investigated the claims

14 before reaching a resolution.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, &*

15 *Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a

16 necessary ticket to the bargaining table where the parties have sufficient information to make an

17 informed decision about settlement").

18     Here, Lead Counsel conducted an extensive investigation of the claims asserted in this

19 Action (*see* Sec II.C, *supra*, detailing Lead Counsel's investigation), including consultation with

20 experts in the fields of loss causation and damages.  ¶¶5, 9.  Additionally, in drafting the complaints

21 and opposing Defendants' two motions to dismiss, Lead Counsel further engaged in extensive legal

22 research, which helped to further evaluate and sharpen the understanding of the strengths and

23 weaknesses of the claims asserted in this Action.  ¶29(a)(ii).

24

25 ───────────────

26 without the channel stuffing practices (ECF No. 47 at 1-4, 6-11), but the Court held that "Plaintiff
   does not adequately allege that bulk discounting concealed negative PROPEL growth in **any**
27 quarter."  ECF No. 54 at 10 (emphasis added).  Given the limited data that Defendants publicly
   disclosed concerning Intersect's bulk sales practices, Plaintiff was not able to allege with precision
28 the amount of channel stuffing prior to Q3 2018.  Thus, there was arguably a better chance of proving
   the allegations relating to Defendants' conduct later in the Class Period.

1     This significant amount of information helped enable Lead Counsel to make an informed
2  assessment of the strengths and weaknesses of this Action to make a determination on behalf of the
3  Settlement Class about whether to settle.  The Parties' settlement negotiations, as explained above,
4  further informed Lead Counsel about the strengths and weaknesses of the potential class's claims in
5  this Action and Defendants' defenses to those claims.  As a result, the Parties and their counsel have
6  sufficient basis to make informed decisions about the relative merits and weakness of this Action
7  and the fairness of the Settlement.

8     **The Experience and Views of Counsel:**  Courts also give weight to the opinion of
9  experienced and informed counsel supporting the settlement.  *See, e.g.*, *Stewart v. Applied*
10 *Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017).  Here, Lead Counsel has
11 extensive experience in securities litigation and has obtained a thorough understanding of the merits
12 and risks of the Action.  Lead Counsel's belief in the fairness and reasonableness of this Settlement
13 supports preliminary approval.  Defendants have been vigorously represented by Cooley LLP
14 throughout the Action and settlement negotiations.  Defense Counsel is equally well-informed
15 regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's
16 representation of the Settlement Class.  Because the Settlement is the product of serious, informed,
17 and non-collusive negotiations among experienced counsel and a highly qualified mediator,
18 preliminary approval is warranted.

19 **V.     CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

20    At the Settlement Hearing, Plaintiff will request final approval to the Settlement on behalf
21 of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary approval
22 stage and solely for purpose of the Settlement, whether class certification appears to be appropriate.
23 *Hanlon*, 150 F.3d at 1019.  Rule 23(a) sets forth four prerequisites to class certification: (i)
24 numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation.  *Wolin v. Jaguar Land*
25 *Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the Court must find that at
26 least one of the three conditions of Rule 23(b) is satisfied.  *Id.*  Under subsection (b)(3), the Court
27 must find that the common questions of law or fact to the class predominate over any questions

28

affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*

The proposed Settlement Class consists of "all persons and entities who or which purchased or otherwise acquired the publicly traded Intersect common stock between February 27, 2018 and August 1, 2019, inclusive, and were damaged thereby." Stipulation, ¶1(tt).[9] Plaintiff believes this Action satisfies all the factors for certification of a class[10] and, if the Action were to proceed toward trial, class certification would be appropriate. The Ninth Circuit and numerous courts within held that class actions are generally favored in securities fraud actions. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[11]

### A.     The Settlement Class Is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is difficult or inconvenient to join all members of the Class. *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were hundreds if not thousands of purchasers of Intersect common stock during the Class Period. The threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g. Barnes*

---

[9] Excluded from the Settlement Class are: (1) persons who suffered no compensable losses; and (2) (a) Defendants; (b) the legal representatives, heirs, successors, assigns, and members of the Immediate Families of the Individual Defendants; (c) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Intersect; (d) any persons who served as officers and/or directors of Intersect during the Settlement Class Period; (e) any entity in which any of the foregoing (a)-(d) excluded persons have or had a majority ownership interest during the Settlement Class Period; (f) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (g) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id.*

[10] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement‑only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

[11] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig*., 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig*., 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'").

1    *v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("'As a general rule, classes

2    numbering greater than forty individuals satisfy the numerosity requirement.'")

3         **B.**      **Common Questions of Law Or Fact Exist**

4         In order to maintain a class action, there must be "questions of law or fact common to the

5    class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to the class

6    members. *Hanlon*, 150 F.3d at 1019.  Generally, courts have liberally construed the commonality

7    prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with

8    the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712,

9    at *14 (D. Ariz. March 30, 2001).  Not all questions of fact and law need be common to satisfy Rule

10   23(a)(2). *Hanlon*, 150 F.3d at 1019.  This factor is "construed permissively, and '[t]he existence of

11   shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

12   facts coupled with disparate legal remedies within the class.'" *Id*. at 1019.  Rule 23(a)(2) is plainly

13   satisfied here.  Plaintiff's claims that Defendants violated the federal securities laws by omitting

14   and/or misrepresenting material facts about the business, operations, and prospects of Intersect in

15   publicly disseminated statements during the Class Period unquestionably raises issues of common

16   interest to the Settlement Class.

17         **C.**      **Plaintiff's Claims Are Typical of Those of the Settlement Class**

18         Like other Settlement Class Members, Plaintiff alleges that he purchased Intersect common

19   stock during the Settlement Class Period and was subsequently damaged due to Defendants'

20   conduct.  The other members of the Settlement Class were allegedly affected in the same way.

21         Similarly, the interest of Plaintiff in obtaining a fair, reasonable, and adequate settlement of

22   the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under

23   the proposed Plan of Allocation, Plaintiff will receive the same *pro rata* share of the Settlement

24   Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met. *In re*

25   *Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here,

26   Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class

27   members.  They are, therefore, typical of the class.").

28

**D.      Plaintiff and Lead Counsel Adequately Represent the Settlement Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

Plaintiff prosecuted this Action, negotiated with Defendants through counsel, and approved the Settlement for the benefit of all Settlement Class Members.  ¶61.  Moreover, Plaintiff is represented by qualified counsel with extensive experience in the prosecution of securities class actions.  Thus, the requirements of Rule 23(a)(4) are met.

**E.      The Predominance and Superiority Requirements Are Satisfied**

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.].").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues." *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

1    **VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

2        Lead Counsel also seek preliminary approval of the proposed Plan of Allocation of the

3    settlement proceeds, which is set forth in the Notice to be mailed to Class Members.  *See* Exhibit A-

4    1 to the Stipulation ("Notice") at pp. 12-18.  The Court's review of the proposed Plan of Allocation

5    for a class action settlement under Rule 23 is governed by the same standards of review applicable

6    to the settlement itself—it must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955

7    F.2d 1268, 1284 (9th Cir. 1992).  A plan of allocation's objective is to provide an equitable basis

8    upon which to distribute the settlement fund among eligible class members.  An allocation formula

9    must be "rationally related to the relative strengths and weakness of the case."  *Rosenburg*, 2007

10   WL 128232, at *5.

11       The proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement

12   Fund among all Class Members who submit an acceptable Claim Form.  The Plan of Allocation was

13   developed by Lead Counsel, with the assistance of a damages expert, and reflects an assessment of

14   damages that Plaintiff contends could have been recovered under the theories of liability asserted in

15   the Action.  In developing the Plan of Allocation, Plaintiff's expert calculated the estimated amount

16   of artificial inflation in the per-share closing price of Intersect common stock that was allegedly

17   caused by Defendants' alleged false and misleading statements and omissions.  *See* Notice ¶55.  In

18   so doing, he considered the price changes in Intersect common stock in reaction to the public

19   disclosures that allegedly corrected the alleged misrepresentations and omissions and adjusted for

20   market and industry factors.  *Id.*

21       The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of

22   Intersect common stock during the Class Period that is listed in the Claim Form and for which

23   adequate supporting documentation is provided.  The calculation of Recognized Loss Amounts will

24   depend upon several factors, including when the stock was purchased and sold and the purchase and

25   sales price.  In general, Recognized Loss Amounts will be the lower of: (i) the difference between

26   the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the

27   date of sale, and (ii) the difference between the actual purchase price and sales price.  Notice ¶59.

28   For shares sold during or after the 90-day period following the end of the Class Period, the Plan also

limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA.  Notice ¶57.  Under the Plan of Allocation, Claimants who purchased shares during the Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud.  Notice ¶56.  The sum of a Claimant's Recognized Loss Amounts for all Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Notice ¶¶62-63.

One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. Moreover, if any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective.  Notice ¶69.  The Holzer Declaration also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed.  *See* N.D. Cal. Guid. at ¶8.  The Investor Protection Trust is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action, and courts in this District have approved it as a *cy pres* recipient in other similar actions in recent years, including *Hefler v. Wells Fargo & Company*, Case No. 3:16-cv05479-JST (N.D. Cal.) (Tigar, J); and *In re Geron Corp. Securities Litigation*, Case No. 3:14-CV01224-CRB (N.D. Cal.) (Breyer, J.).  Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.

## VII.   THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA

### A.   Retention of A.B. Data Ltd.

Plaintiff proposes that the notice and claims process be administered by A.B. Data Ltd. ("A.B. Data")**,** an independent settlement and claims administrator with extensive experience handling the administration of securities class actions.  Ex. 2 (Declaration of Eric Schachter in Support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement attached hereto as Exhibit 2 ("Schachter Decl.")) at ¶3.  A.B. Data was selected after a competitive bidding

process in which three firms submitted proposals to be selected as administrator.  Each proposal involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Class Members through brokers and nominee owners.  ¶40.  Lead Counsel has engaged A.B. Data to serve as settlement administrator in two other cases in the past two years and found A.B. Data to be a reliable administrator for these types of cases.  ¶42.

### B.     The Method of Notice is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation) to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously with the mailing of the Postcard Notice, copies of the Notice and the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will also be published in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).[12]

---

[12] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed

Significantly, with an estimated mailing size of 20,000 (Schachter Decl. at ¶13), a full printed Notice and Claim Form sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Plaintiffs respectfully submit that the combination of the mailed Postcard, published Summary Notice, and online availability of the Notice provides "the best notice that is practicable under the circumstances."

**C.    The Content of Notice is Adequate**

Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Exhibits A-1 and A-3 to the Stipulation.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1)(A), the Notice objectively and neutrally apprises all Settlement Class Members the nature of the Action, the definition of the Settlement Class, the claims and issues, that the Court will exclude from the Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).  It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id*.

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to access the case docket."  N.D. Cal. Guid. at ¶3.  The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim

_____

Settlements").

Forms, requests for exclusion from the Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and expenses.[13]  *See* Fed. R. Civ. P. 23(e)(5).

### D.     Claims Processing

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to A.B. Data.  A.B. Data will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their pro rata share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

A.B. Data estimates that a total of 20,000 copies of the Postcard Notice will be mailed and that approximately 4,000 Claims will be received (a 20% response rate is estimated).  Schachter Decl. at ¶14.  These estimates are based on the experience of A.B. Data and Lead Counsel in comparable securities class action settlements.

### E.     Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Because the costs are dependent on how many copies of the Postcard Notice are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided.  Based on the estimates of Postcard Notices to be mailed and claims received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $100,000. These costs are necessary in order to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated administrative costs represent 5.2% of the Settlement Amount).  If the Settlement is approved, the Notice and Administration Costs

---

[13] The Parties also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), et seq. ("CAFA").  *See* Stipulation ¶37; *see also* N.D. Cal. Guid. at ¶10.

1    will be paid from the Settlement Fund.  *See* Stipulation ¶14.

2    **VIII.   ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES**

3            As explained in the Postcard Notice, Summary Notice, and Notice, Lead Counsel intends to

4    seek an award of attorneys' fees of 33⅓% of the Settlement Fund (*i.e.*, one-third of the Settlement

5    Amount, or $633,333.33, plus interest earned thereon at the same rate as the Settlement Fund), and

6    payment of Litigation Expenses not to exceed $130,000.  Lead Counsel will provide detailed

7    information in support of its application in its motion for attorneys' fees and expenses, to be filed

8    with the Court 35 days before the Settlement Hearing.  However, for purposes of the Court's

9    preliminary review in connection with this motion for preliminary approval of the Settlement, Lead

10   Counsel notes that the fee that Lead Counsel will request is appropriate.

11           In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272–73 (9th Cir. 1989), the Ninth

12   Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted

13   upward or downward depending on the circumstances of the particular case.  *Accord Powers v.*

14   *Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *but see In re Activision Sec. Litig.,* 723 F. Supp.

15   1373, 1376–78 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly

16   all common fund fee awards range around 30% even after thorough application of either the lodestar

17   or twelve-factor method.").  Indeed, it is not unusual for courts to award fee in excess of 30% in

18   appropriate circumstances.  *See, e.g., Morris v. Lifescan*, Inc., 54 Fed. App. 663, 664 (9th Cir. 2003)

19   (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee

20   equal to 33% percent of a $12 million settlement fund); *Romero v. Producers Dairy Foods, Inc.*,

21   2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common

22   fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the

23   lodestar method is used, fee awards in class actions average around one-third of the recovery,'"

24   *citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).

25           As other courts have recognized, a smaller fund can justify a relatively larger percentage

26   award, because "the sheer magnitude of damages has a heavy impact on the amounts defendants are

27   willing to pay to settle their liability." *Id.* (*citing Bredbenner v. Liberty Travel, Inc.*, 2011 WL

28   1344745, at *19 (D.N.J. Apr. 8, 2011)). As the court in *Bredbenner* cogently explained:

1

2          Thus, granting counsel a similar percentage of a smaller fund may simply punish
           counsel for having litigated a smaller case. Moreover, because of fixed costs and
3          economies of scale, attorneys' fees and costs do not increase dollar-for-dollar with
           the size of the case. Thus, it takes a greater percentage of the settlement to support
4          litigation in a smaller case.

4   *Id.*

5          Thus, typically, the smaller the fund and the fewer the class members benefited, the more

6   this factor favors the requested fee. *Bredbenner*, 2011 WL 1344745, at *19; *Ripley v. Sunoco, Inc.*,

7   287 F.R.D. 300, 314 (E.D. Pa. 2012) (awarding 33% of $675,000 with 400 class members).[14]

8          Based on a review of the time records, Lead Counsel anticipate the requested fee will

9   represent a negative multiplier on counsel's lodestar.  ¶58.  Such a multiplier is below the range of

10  multipliers commonly awarded in class actions and other similar cases.[15]  *See, e.g., Hefler*, 2018

11  WL 6619983, at *14 (approving 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust*

12  *Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (approving 3.66 multiplier), *aff'd*, 2019

13  WL 1752610 (9th Cir. Apr. 17, 2019).

14         Lead Counsel also intend to seek reimbursement of Litigation Expenses not to exceed

15  $130,000, which includes costs for the investigator who assisted with Lead Counsel's fact

16  investigation and mediation fees.  As part of this request, Lead Counsel intends to seek an award for

17  Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for his time representing the Class

18  in an amount up to $5,000.  Lead Counsel believe this amount is fully supported by the work that

19  Plaintiff performed throughout the Action which will be presented to the Court in connection with

20  Plaintiff's request for reimbursement.  N.D. Cal. Proc. Guid. ¶7.

21  **IX.   PROPOSED SCHEDULE OF EVENTS**

22         In connection with preliminary approval of the Settlement, the Court must set a final

23  approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and

24

---

25  [14] Courts in other jurisdictions also routinely award fees in excess of 25% in similarly sized
    settlements. *E.g., In re Blech Sec. Litig.*, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding
26  33⅓% of $2,795,000 settlement fund); *In re StockerYale, Inc. Secs. Litig.*, 2007 WL 4589772, at *6
    (D.N.H. Dec. 18, 2007) (33% of $3.4 million settlement fund); *Smith v. Dominion Bridge Corp.*,
27  2007 WL 1101272, at *10 (E.D. Pa. Apr. 11, 2007) (33% of $750,000).

28  [15] Lead Counsel will present a more detailed statement its total lodestar in connection with its fee
    application at final approval.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                          24
Case No. 4:19-cv-02647-JSW

deadlines for submitting claims or for objecting to the Settlement. The Parties propose the following schedule, set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶13) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Plaintiff respectfully requests that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## X.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. As this motion is unopposed, Plaintiff requests that the Court consider this motion for preliminary approval on the papers at this time.

Dated: May 14, 2021

**HOLZER & HOLZER, LLC**

By: *s/ Corey D. Holzer*
Corey D. Holzer (admitted *pro hac vice*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-and-

Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  lglancy@glancylaw.com
        rprongay@glancylaw.com
        info@glancylaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron*

1

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

2       I, the undersigned, say:

3       I am not a party to the above case, and am over eighteen years old.  On May 14, 2021, I

4   served true and correct copies of the foregoing document, by posted the document electronically to

5   the ECF website of the United States District Court for the Northern District of California, for receipt

6   electronically by the parties listed on the Court's Service List.

7       I affirm under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.  Executed on May 14, 2021, at Atlanta, Georgia.

9
                                            *s/ Corey D. Holzer*
10                                              Corey D. Holzer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28