**HOLZER & HOLZER, LLC**
Corey D. Holzer (admitted *pro hac vice*)
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron
and the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated, | Case No.: 4:19-cv-02647-JSW |
| Plaintiff, | **CLASS ACTION** |
| v. | **DECLARATION OF COREY D. HOLZER IN SUPPORT OF LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN, and ROBERT H. BINNEY, JR., | |
| Defendants. | |

I, Corey D. Holzer, declare based on personal knowledge as follows:

1. I am an attorney duly licensed to practice law before all of the courts of the State of Georgia and I am admitted *pro hac vice* in the above captioned action (the "Action"). I am a member of the law firm of Holzer & Holzer, LLC, Court-appointed co-Lead Counsel in this Action. I make this declaration, together with the attached exhibits, in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the matters stated herein, and if called upon, I could and would testify competently thereto.

## I. HISTORY AND BACKGROUND OF THE LITIGATION

2. On May 15, 2019, Lead Plaintiff Avi Yaron ("Plaintiff") filed a class action complaint in the United States District Court for the Northern District of California styled *Yaron v. Intersect ENT, Inc., et al.*, No: 19-cv-02647-JSW. ECF No. 1. The complaint alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants Intersect ENT, Inc. ("Intersect" or the "Company"), Lisa D. Earnhardt ("Earnhardt"), and Jeryl L. Hilleman ("Hilleman").

3. On July 15, 2019, Plaintiff filed a motion pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to be appointed lead plaintiff in the Action. ECF No. 18. Plaintiff's motion was unopposed. ECF No. 20.

4. On September 24, 2019, the Court appointed Lead Plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP ("GPM")[1] and Holzer & Holzer, LLC ("Holzer")[2] to serve as Lead Counsel. ECF No. 21.

5. Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Intersect's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Intersect, (c) Intersect's investor call transcripts, and (d) court filings and other publicly available material related to Intersect; and (2) retaining and working with

---

[1] Attached hereto as Exhibit 3 is a true and correct copy of the firm resume of GPM.

[2] Attached hereto as Exhibit 4 is a true and correct copy of the firm resume of Holzer.

a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with damages and loss causation experts.

6.      On December 2, 2019, Plaintiff filed and served his Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws (the "FAC").  ECF No. 24.  The FAC asserted claims against Defendants Intersect; and Defendants Earnhardt, Hilleman, and Robert H. Binney, Jr. (collectively, the "Individual Defendants" and together with Intersect, the "Defendants") based on, *inter alia*, allegations that Defendants engaged in channel stuffing practices that materially inflated the growth rate of PROPEL revenue during the putative class period.  Plaintiff alleged that Defendants' material misstatements and omissions violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  The FAC further alleged that the prices of Intersect's publiclytraded securities were artificially inflated as a result of the Defendants' allegedly false and misleading statements and that the price of Intersect's common stock declined when the truth was revealed.  Plaintiff asserted these allegations on behalf of himself and a class of Intersect shareholders who purchased or otherwise acquired the publicly traded Intersect common stock between February 27, 2018 and August 1, 2019, inclusive.  ECF No. 24.

7.      Defendants moved to dismiss the FAC on January 31, 2020.  ECF No. 27.  Plaintiff filed his opposition to the motion to dismiss on March 16, 2020.  ECF No. 30.  Defendants filed a brief in reply in support of the motion to dismiss the FAC on April 24, 2020.  ECF No. 31.

8.      The Court granted Defendants' motion to dismiss without prejudice on June 19, 2020.  ECF No. 33.

9.      Following the Court's dismissal of the FAC, Lead Counsel continued their investigation into Defendants and their alleged channel stuffing practice.  This continued investigation included additional interviews with many former employees as well as detailed analysis into quantifying the impact Defendants' alleged channel stuffing practices had on Intersect's financial results.

10.     On July 29, 2020, Plaintiff filed a Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC") asserting claims under the

Exchange Act against Defendants with additional factual allegations based on Lead Counsel's continued investigation and analysis quantifying the financial impact of Intersect's alleged channel stuffing practices.  ECF No. 38.

11.     On September 18, 2020, Defendants filed a motion to dismiss the SAC.  ECF No. 39.  On October 23, 2020, Plaintiff filed his opposition to Defendants' motion to dismiss.  ECF No. 47.  On November 20, 2020, Defendants filed a reply in support of the motion to dismiss the SAC.  ECF No. 48.

12.     On October 29, 2020, the Parties engaged in private mediation with Jed D. Melnick, Esq. of JAMS.  In advance of that session, the Parties provided Mr. Melnick with the Court's Order granting Defendants' motion to dismiss the FAC without prejudice, the SAC, the motion to dismiss the SAC and opposition thereto.  After a full day of negotiation, the Parties were unable to reach a settlement.

13.     On January 22, 2021, the Court granted Defendants' motion to dismiss the SAC without prejudice.  ECF No. 54.  Following the January 22 order, Lead Counsel continued to investigate the allegations against Defendants and worked with their investigator to locate and interview additional former Intersect employees.

14.     During this time, the Parties re-engaged Mr. Melnick regarding the possibility of resolving the Action through settlement.

15.     On February 5, 2021, the Court entered an order approving the Parties' stipulation to continue Plaintiff's deadline to file an amended complaint, or otherwise indicate that no such amended complaint will be filed, from February 11, 2021 to March 4, 2021.  ECF No. 56.

16.     On March 4, 2021, the Parties accepted a double-blind mediator's proposal to resolve the Action for $1.9 million on a class-wide basis.

17.     On May 13, 2021, the Parties executed the Stipulation and Agreement of Settlement ("Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1.  Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
| --- | --- |
| A | Preliminary Approval Order |

3

| A-1 | Notice |
|-----|--------|
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| A-4 | Postcard Notice |
| B   | Final Judgment and Order |

## II.    INFORMATION ABOUT THE SETTLEMENT

### A.    Settlement Class Definition

18.    Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: "all persons and entities who or which purchased or otherwise acquired publicly traded Intersect common stock between February 27, 2018 and August 1, 2019, inclusive, and were damaged thereby."  Stipulation, ¶1(tt).

19.    Excluded from the Settlement Class are: (1) persons who suffered no compensable losses; and (2) (a) Defendants; (b) the legal representatives, heirs, successors, assigns, and members of the Immediate Families of the Individual Defendants; (c) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Intersect; (d) any persons who served as officers and/or directors of Intersect during the Settlement Class Period; (e) any entity in which any of the foregoing (a)-(d) excluded persons have or had a majority ownership interest during the Settlement Class Period; (f) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (g) Defendants' liability insurance carriers.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

20.    The only difference between the class initially proposed in the SAC and the proposed Settlement Class is that the Stipulation clarifies and specifies that the Intersect securities subject to the Settlement includes only publicly traded common stock traded on the NASDAQ under the symbol "XENT."

4

21.     In the SAC, Intersect securities was not specifically defined. *See* ECF No. 38 at ¶ 202. Clarifying and specifying that the only Intersect securities subject to the Settlement are shares of Intersect common stock publicly traded on the NASDAQ is appropriate as it makes clear that non-publicly traded Intersect securities are not part of the Settlement. The limitation to common stock (as opposed to other, infrequently traded types of securities, such as options (which were not widely traded during the Settlement Class Period)) will also aid in the orderly administration of the Settlement.

**B.     The Releases**

22.     Under the terms of the proposed Settlement, the Parties have agreed that Plaintiff and each of the other Settlement Class Members shall waive and release each and every Released Plaintiff's Claim against the Defendants and the other Defendants' Releasees in exchange for a payment by or on behalf of Defendants of $1,900,000 in cash, as set forth in greater detail in paragraphs 4-8 of the Stipulation.

23.     The Released Plaintiff's Claims are defined in the Stipulation (*see* Stipulation, ¶1(nn)) as all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiff or any other Settlement Class Member, and their Related Parties: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of, relate to, or are based upon the allegations, facts, matters, transactions, acts, occurrences, statements, representations, misrepresentations and/or omissions alleged or referred to in the Action and that arise out of or relate to the purchase, acquisition, and/or holding of Intersect common stock during the Settlement Class Period. Released Plaintiff's Claims do not include any Excluded Claims. Notwithstanding the foregoing, nothing herein shall be construed as limiting, modifying, or otherwise affecting any insurance coverage or policies that may be available to any of the Defendants or Defendants' Releasees.

24.     The Defendants' Releasees means Defendants and their Related Parties (*see* Stipulation, ¶1(l)), and Related Parties, when used in reference to a Person, means and includes (i) the Person; (ii) for natural persons, each of that Person's respective Immediate Family, any trust of which the Person is settlor or which is for the benefit of any such Person and/or member of his

5

family, and that Person's agents, attorneys, accountants, insurers, reinsurers, advisors (including financial or investment advisors), and heirs, all in their capacities as such, and, (iii) for non-natural persons, each of their past and present parents, subsidiaries, wholly-owned affiliates, employees, members, partners, principals, officers, directors, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, general or limited partners or partnerships, limited liability companies, insurers, and reinsurers, all in their capacities as such.  Stipulation, ¶1(kk).

25.    The scope of this release is reasonable as it is limited to claims (a) that relate to the purchase of Intersect common stock during the Settlement Class Period; and (b) that relate to the same factual allegations that were set forth in the complaints filed in this Action.  While this release includes claims not in the SAC, the release of these additional claims, including unknown claims and other claims that "could have [been] asserted" in this Action, the release of such claims is appropriate because all released claims are based on the "identical factual predicate" of the claims asserted in this Action.  The proposed Settlement does not release any claims to enforce the Settlement, or claims of any Person that excludes himself, herself, or itself from the proposed Settlement Class.

### C.    The Anticipated Recovery Under the Settlement

26.    The $1.9 million cash Settlement Amount amounts to an estimated average recovery of approximately $0.098 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation

27.    The costs of the notice and claims administration (*see* ¶¶44-45, *infra*), is estimated to be approximately $0.005 per damaged share.  If Lead Counsel requests attorneys' fees of 33⅓% of the Settlement Fund and reimbursement of the maximum amount of Litigation Expenses listed in the Notice ($130,000) (*see* Sec. VII, *infra*), and the Court approves such request, the cost is estimated to be $0.039 per damaged share.  After deduction of these fees, costs, and expenses, the estimated average recovery is approximately $0.054 per damaged share, pursuant to the proposed Plan of Allocation.

6

28.     If Plaintiff had fully prevailed in his claims at the motion to dismiss stage even though the Court dismissed the Action twice, overcome summary judgment and completed a successful a jury trial, and if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiff's damages theory, including proof of loss causation as to each of the three stock price drop dates alleged in this case—*i.e.*, Plaintiff's best-case scenario, estimated total maximum damages is approximately $161 million. Thus, the $1.9 million Settlement Amount represents approximately 1.17% of the total maximum damages potentially available in this Action.

29.     The factors bearing on the amount of the compromise include, among other things, the following facts and risks:

a.     Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action, which helped to evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of these claims, including:

i.     In drafting of the SAC and during the PSLRA automatic discovery stay, Lead Counsel conducted an extensive factual investigation, which included: (a) a detailed review of (i) Intersect's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Intersect; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private investigator, conducting numerous fact interviews of former employees and other third parties; (c) a review and analysis of other publicly available material and data; and (d) consulting with experts in the fields of loss causation, and damages;

ii.     In drafting the complaints, opposing Defendants' two motions to dismiss, Lead Counsel further engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in this Action; and

b.     The Court's dismissal without prejudice of the FAC, which included a finding that none of the statements Plaintiff challenged were materially false or misleading. Specifically, the

Court agreed with Defendants' arguments that Plaintiff failed to allege falsity with respect to: (1) financial results and earnings guidance; (2) Defendants' statements that PROPEL sales were strong and; (3) Defendants' statements attributing weak PROPEL growth to SINUVA-related sales force distraction. The Court also found that the allegations failed to allege Defendants made false or misleading statements intentionally or with deliberate recklessness as required to sufficiently allege scienter. Finally, the Court found the Plaintiff failed to plead loss causation for the August 1, 2018 disclosure based on Plaintiff's failure to allege that channel stuffing had a material negative impact on Intersect's financial performance during the Class Period.

c.     The Court's dismissal without prejudice of the SAC, which including a finding the allegations failed to cure the deficiencies previously identified. Specifically, the Court agreed with Defendants' arguments that Plaintiff failed to allege falsity with respect to: (1) financial results and earnings guidance; (2) Defendants' statements that PROPEL sales were strong and; (3) Defendants' statements attributing weak PROPEL growth to SINUVA-related sales force distraction. The Court also held that the SAC failed to allege that the Individual Defendants (1) knew of declining PROPEL demand; (2) knew declining demand was caused by factors other than SINUVA-related distraction and; (3) deliberately used bulk discounts to hide declining demand from investors.

d.     The significant time and expense necessary to continue to prosecute Plaintiff's claims against Defendants through a third amendment to the complaint, a third round of motion to briefing, the completion of fact and expert discovery, summary judgment, trial, and any subsequent appeals.

30.     In the light of these risks, Lead Counsel believes that the percentage of recovery is reasonable under the circumstances.

**D.     The Proposed Plan of Allocation of the Settlement Fund**

31.     The Plan of Allocation is detailed in the long-form Notice. *See* Notice, pp. 12-18. The full Notice will be posted online at www.IntersectSecuritiesLitigation.com, is downloadable, and will be mailed to Settlement Class Members upon request.

32.     Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*, the $1.9

8

million Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court. Specifically, an Authorized Claimant's pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

33.    The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action. More specifically, the Plan of Allocation reflects, and is based on, Plaintiff's allegation that the price of Intersect common stock was artificially inflated during the period between February 27, 2018 an August 1, 2019, due to Defendants' alleged materially false and misleading statements and omissions.  The Plan of Allocation is based on the premise that the decrease in the price of Intersect common stock following the alleged corrective disclosures that occurred August 1, 2018, May 6, 2019, August 1, 2019 may be used to measure the alleged artificial inflation in the price of Intersect common stock prior to these disclosures.

34.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the Exchange Act as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of law, and takes into consideration when each Claimant purchased and/or sold shares of Intersect common stock.

35.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Intersect common stock the Claimant purchased, acquired, or sold during the Settlement Class Period and when that Claimant bought, acquired, or sold the shares. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Intersect stock during the Settlement Class Period, or if the Claimant purchased shares during the Settlement Class Period but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have

been caused by the revelation of the alleged fraud. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members who submit valid claims.

### E.    Estimate of Claims Rate

36.    As explained more fully in the Declaration of Eric Schachter in Support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement attached hereto as Exhibit 2 ("Schachter Decl."). A.B. Data Ltd. ("A.B. Data" or the "Claims Administrator") estimates that, based on Intersect's trading history during the Settlement Class Period, as many as 20,000 copies of the Postcard Notice will be mailed to potential Settlement Class Members. *See* Schachter Decl., ¶13.

37.    Based on A.B. Data's significant experience in notification and claims administrating in private securities litigation matters (*see id.*, ¶3), the claims rate on average is 20% of the number of mailings in similar settlements, amounting to about 4,000 Claims received and processed by A.B. Data. *Id.*, ¶14.

### F.    There Are No Reversions to the Defendants

38.    Under the terms of the Stipulation, no portion of the Settlement Amount will revert to any Defendant. *See* Stipulation, ¶13.

## III.    SETTLEMENT ADMINISTRATION SELECTION PROCESS

39.    Lead Counsel retained the Claims Administrator, A.B. Data, in order to provide (i) notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) the administration of the claims process.

40.    Prior to retaining A.B. Data, Lead Counsel solicited requests for proposals for notice and administration of the Settlement from three experienced and respected settlement administrators. Lead Counsel carefully compared the submitted proposals, taking into consideration each administrator's estimated cost to administer the entire Settlement, the cost of the notice program, and the cost of each processed Claim. Lead Counsel also considered certain fixed costs associated with the administration of the settlement, such as the construction and maintenance of the settlement website.

41.    Pursuant to Lead Counsel's request, the potential settlement administrators proposed notifying the Settlement Class by Postcard Notice with the Notice sent upon request.  Each potential settlement administrator proposed utilizing paper checks to distribute valid settlement claims.

42.    In the past two years, A.B. Data administered the settlement in *Jiangchen v. Rentech, Inc. et al.,* Case No. 2:17-cv-01490-GW-FFM (C.D. Cal), in which Holzer and GPM were co-lead counsel, and administered the settlement in *In re Flowers Foods, Inc. Sec. Litig.*, Case No. 7:16-CV-00222 (WLS) (M.D. Ga.), in which GPM was lead counsel in the matter.

43.    A.B. Data's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Claims Form, publishing Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone line).

44.    At this time, A.B. Data estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs administering the notice, processing Claims, and distributing the Net Settlement Fund, among others, will generate professional services fees and expenses of approximately $100,000.  *See* Schachter Decl., ¶15.

45.    These costs are necessary to effectuate the Settlement, and at approximately 5.2% of the total Settlement Amount, or $0.005 per damaged share, are reasonable in relation to the value of the Settlement.  *Id.*  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  Stipulation, ¶14.

## IV.    THE NOTICE PROGRAM

### A.    The Notice Distribution Plan

46.    In accordance with the terms of the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to mail, by first-class mail, individual copies of the Postcard Notice to all Settlement Class who can be identified through reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  As explained above, in consultation with the Claims Administrator, Lead Counsel estimates that the Postcard mailing will be sent to approximately 20,000 Settlement Class Members.  *See* Sec. II.E *supra*; Schachter Decl. at ¶13.

47.    Contemporaneously with the mailing of the Postcard Notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form online at www.IntersectSecuritiesLitigation.com. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

48.    Additionally, no more than ten (10) business days after the Postcard Notice is mailed, the Summary Notice will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

49.    Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.  Significantly, with an estimated mailing to 20,000 shareholders, a full printed Notice and Claim Form (*i.e.*, a Notice Packet) sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Lead Counsel respectfully submits that the combination of the mailed Postcard Notice, published Summary Notice, and availability online of the Notice provides the best notice that is practicable under the circumstances.

50.    Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at \*10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer action); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at \*6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a longform notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

**B.    The Contents Of The Notice Are Adequate**

51.    As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class

Action Settlement, the notice program satisfies the requirements of Rule 23(c)(2) and the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), and does so in easily understandable language.

52.	In addition, the notice program includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"): (i) the contact information for Lead Counsel to answer questions (*see* Notice, ¶¶6, 79, 88; Summary Notice, p. 2); (ii) the settlement website address (*see* Notice, pp. 1, 5, 8, 11, 18, 21, 22); Summary Notice, pp. 1-3; Postcard Notice), which will be maintained by A.B. Data and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; (iii) instructions on how to access the case docket via PACER or in person using the language suggested in item 3 of the preliminary approval Class Settlement Guidelines (*see* Notice, pp. 1-2).

53.	All blanks in the Notice, Claim Form, Summary Notice, and Postcard Notice will be filled in once the Court sets those dates and these documents are finalized prior to mailing and publication.

## V.	OPT-OUTS

54.	The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out. *See* Notice, pp. 18-19, Summary Notice, p. 2, Postcard Notice.

55.	These instructions set forth the information needed to be properly identified and to opt out of the Settlement. *Id.* The identification the Intersect common shares that each potential Settlement Class Member requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, is required to identify if such person or entity would otherwise be a Settlement Class Member.

## VI.	OBJECTIONS

56.	The notice program instructs potential Settlement Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of

13

attorneys' fees and reimbursement of Litigation Expenses. *See* Notice, pp. 19-21, Summary Notice, p. 2, Postcard Notice. The instructions in the Notice largely follow the Class Settlement Guidelines suggested language. *Id.*

## VII.   ATTORNEYS' FEES AND LITIGATION EXPENSES

57.   For their efforts on behalf of the Settlement Class, Lead Counsel will be applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class. Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the $1.9 million dollar Settlement Fund (or up to $633,333.33, plus interest earned at the same rate as the Settlement Fund).

58.   Lead Counsel's total current lodestar is $1,017,813.75 consisting of $995,142.50 for 1,286.70 hours of attorney time and $22,671.25 for 77.25 hours of professional support staff time. Lead Counsel's total lodestar amount includes the amount of time Lead Counsel attorneys and professional support staff billed from inception of the Action through and including May 11, 2021, and the lodestar calculation for those individuals based on Lead Counsel's current billing rates. The anticipated requested fee results in a fractional multiplier of 0.62 to Lead Counsel's current total lodestar of $1,017,813.75. Lead Counsel's current total lodestar also does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, or work related to drafting the preliminary approval, final approval, and distribution motions.

59.   Lead Counsel will also apply for reimbursement of Litigation Expenses from the Settlement Fund an amount not to exceed $130,000. These Litigation Expenses were paid or incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants. This amount will likely include an application for reimbursement of the reasonable costs and expenses (including lost wages) incurred by Plaintiff directly related to his representation of the Settlement Class pursuant to the PSLRA. *See* Sec. VIII, *infra*.

## VIII.   PLAINTIFF'S REQUEST FOR REIMBURSEMENT UNDER THE PSLRA

60.   Plaintiff will likely seek reimbursement, pursuant to 15 U.S.C. §78u-4(a)(4), of his reasonable costs and expenses (including lost wages) directly incurred in connection with his representation of the Settlement Class, in an amount not to exceed $5,000. Mr. Yaron estimates that

he has devoted, at minimum, around 5 hours spent in executing his duties and responsibilities as Plaintiff in this Action. Mr. Yaron spent time on this case is time he otherwise would have devoted to his jobs, in include serving as executive chairman of two health technology companies he co-founded, acting as the top executive at an investment company he co-founded, and lecturing on health technology topics, in addition to his investment activities. Mr. Yaron also conservatively estimates that his hourly rate would be at least $800 per hour.

61.    Mr. Yaron was highly involved in each phase of the litigation and communicated frequently with Lead Counsel. Mr. Yaron always made himself freely available to perform his Plaintiff functions, including often speaking and e-mailing with Lead Counsel. Among the tasks Mr. Yaron has performed in executing his duties and responsibilities as Plaintiff in this Action include: (a) reviewing the complaints and briefing; (b) communicating with Lead Counsel via email and telephone about case developments and litigation strategy; (c) preparing for the mediation session, including discussing with counsel about mediation strategy; (d) evaluating the Settlement Amount, conferring with counsel, and ultimately approving the Settlement; and (e) communicating with counsel regarding the process of finalizing the Settlement.

## IX.    *CY PRES* AWARD

62.    Lead Counsel Lead Counsel proposes Investor Protection Trust as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

63.    Here, 100% of the Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective.

64.    Investor Protection Trust is a nonsectarian, not-for-profit organization dedicated to investor education and thus, is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with Investor Protection Trust.

15

65. However, due to the potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small amount of the funds will be directed to Investor Protection Trust.

## X.    TIMELINE

66. In connection with preliminary approval of the Settlement, Plaintiff is requesting that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation expenses must submit that objection; and (iv) a date on which the Court will hold the final Settlement Hearing.

67. The following proposed schedule was agreed to by the Parties and is set forth in the proposed Preliminary Approval Order:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | Not later than 35 calendar days prior to the Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶13) | Not later than 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to the Settlement Fairness Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

16

# XI.    PAST DISTRIBUTION

68.    The Procedural Guidance for Class Action Settlements requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements.  The following chart represents the requested information for one other class action settlement for violations of the federal securities laws in which co-Lead Counsel, GPM, served as Lead Counsel:

| Matter | *In re K12 Inc. Securities Litigation*, Case No. 4:16-cv-4069-PJH (N.D. Cal.) |
|---|---|
| Total Settlement Fund | $3,500,000.00 |
| Method of Notice | Postcard Notice and Publication |
| Total Number of Sent Notices[3] | 12,492 |
| The Number of Claims Forms Submitted | 3,833 |
| Percentage of Claim Forms Submitted | 30% |
| The Number of Acceptable (In Whole or In Part) Claim Forms Submitted | 1,410 |
| Average Recovery per Claimant (based on number of Acceptable Claims) | $552.79 |
| *Cy Pres* Recipient | Sesame Workshop |
| Amount Distributed to *Cy Pres* Recipient | This case is still in the process of initial distribution of the net settlement fund. |
| Administrative Costs | $91,688.25 |
| Attorneys' Fees | $1,160,000.00 |
| Litigation Expenses | $172,478.92 |

---

[3] In a securities class action, like *In re K12 Securities Litigation*, the "total number of class members" is typically not known precisely because the securities are widely traded and there is no definitive list of class members available to the parties.  Accordingly, notices are mailed to all potential class members who can be identified through reasonable efforts, including through requests to brokers and nominees to identify all potential class members.

17

69.     I believe that the proposed Settlement before the Court is fair, reasonable and adequate in light of the strengths and weaknesses of the asserted claims and that entering into the proposed Settlement is in the best interests of the Settlement Class.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed on May 14, 2021 in Atlanta, Georgia.

*s/ Corey D. Holzer*
Corey D. Holzer

18

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old.  On May 14, 2021, I served true and correct copies of the foregoing document, by posted the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 14, 2021, at Atlanta, Georgia.

*s/ Corey D. Holzer*
Corey D. Holzer

19