GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Jason L. Krajcer (#234235)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: lglancy@glancylaw.com
        rprongay@glancylaw.com
        jkrajcer@glancylaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron
and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI YARON, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>INTERSECT ENT, INC., LISA D. EARNHARDT, JERYL L. HILLEMAN, and ROBERT H. BINNEY, JR.,<br><br>                              Defendants. | Case No.: 4:19-cv-02647-JSW<br><br>**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: November 5, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 5<br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     THE LITIGATION AND SETTLEMENT ............................................................... 3

    A.   The Litigation .............................................................................................. 3

    B.   Lead Counsel's Investigation And FAC ...................................................... 3

    C.   Motion To Dismiss The FAC ....................................................................... 4

    D.   Lead Counsel's Continued Investigation And The SAC ............................. 4

    E.   Motion To Dismiss The SAC, Mediation Efforts And Settlement Negotiations ..... 4

III.    STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON* ........... 5

IV.     ARGUMENT ........................................................................................................... 7

    A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors ........................... 7

        1.   Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class ........................................................................ 7

        2.   The Settlement Is The Result Of Arm's-Length Negotiations ..................... 8

        3.   The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ... 9

            a)   The Strength Of Lead Plaintiff's Case And Risk Of ContinuedLitigation ........................................................... 10

            b)   Risks Of Maintaining Class Action Status ...................................... 13

        4.   The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval .................. 13

        5.   The Settlement Treats All Settlement Class Members Equitably Relative To Each Other ........................................................................... 15

        6.   The Positive Reaction Of The Settlement Class Supports Settlement Approval ...................................................................... 15

        7.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval .................................................................... 16

    B.   The Plan Of Allocation Is Fair And Reasonable .................................... 20

    C.   The Settlement Class Should Be Finally Certified .................................. 22

D.      The Notice Program Satisfies Rule 23 And Due Process ........................................ 23

V.      CONCLUSION ...................................................................................................... 23

1

# **TABLE OF AUTHORITIES**

2

3

<u>CASES</u>

4

5

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ................................................ 18

6

7

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) ................................................ 8

8

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................ 11, 14

9

10

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2nd Cir. 1974) ................................................................ 16

11

12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................ 9

13

14

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................ 18

15

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ................................ 11

16

17

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................ 10

18

19

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................ 5

20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 1, 7, 10

21

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. 2018) ................................................................ 6, 16, 22

22

23

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 13

24

25

*In re Alloy, Inc. Sec. Litig.*,
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................................ 12

26

27

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................................ 9, 13

28

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................ 9, 12, 20

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................ 9

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ............................................ 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................ 15

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................................ 9

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................ 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................ 12

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................ 19, 22

*In re Illumina, Inc. Sec. Litig.*,
   2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ............................................ 22

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................ 11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d (9th Cir. 2000) ............................................ 14, 16, 18, 19

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................ 8

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................ 5, 13, 16, 20

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ............................................ 7

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................ 20

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)....................................................................... 15, 18

*In re Scientific Atl., Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ......................................................................................... 18

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)........................................................................................................ 5

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................................... 12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*,
   2019 WL 2077847 (N.D. Cal. May 10, 2019) ........................................................................... 22

*In re Xcel Energy, Inc., Sec., Deriv. & "ER*ISA*" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................................... 11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .......................................................................... 19

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................................... 10

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................................... 20

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................................... 7, 8

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................... 20

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016).............................................................................................. 14

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................................................. 7

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997)................................................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)......................................................................................................... 8

*Schueneman v. Arena Pharmaceuticals, Inc.*,
   2020 WL 3129566 (S.D. Cal. June 12, 2020) ...................................................................... 21, 22

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................... 16

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......................................................... 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .................................................................................... 5

*Vikram v. First Student Management, LLC*,
   2019 WL 1084169 (N.D. Cal. March 7, 2019) ...................................................... 16

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................... 15

*Wong v. Arlo Technologies, Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ................................................ 6, 7, 10

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................................................ 15

*Yaron v. Intersect ENT, Inc.*,
   2020 WL 6750568 (N.D. Cal. June 19, 2020) ...................................... 4, 10, 11, 17

<u>STATUTES</u>

15 U.S.C. § 78u-4 ........................................................................................................ 1

<u>RULES</u>

Fed. R. Civ. P. 23 ................................................................................................. *passim*

## NOTICE OF MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court's Order Preliminarily Approving Settlement and Providing For Notice ("Preliminary Approval Order," ECF No. 67), and the Clerk's Notice Continuing Fairness Hearing (ECF No. 68), on November 5, 2021, at 9:00 a.m., in Courtroom 5 (2nd Floor) of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or as soon thereafter as the matter may be heard, Lead Plaintiff Avi Yaron ("Lead Plaintiff") will, and hereby does, move the Honorable Jeffrey S. White, United States District Judge, for entry of the [Proposed] Judgment Approving Class Action Settlement and the [Proposed] Order Approving the Plan of Allocation, both of which are submitted herewith.[1]

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the terms of the proposed Settlement are fair, reasonable, and adequate, notice of the proposed Settlement has been disseminated in accordance with the Preliminary Approval Order, and there have been no objections to the Settlement to date. Accordingly, Lead Plaintiff requests the Court grant final approval of the proposed Settlement of this Action and the proposed Plan of Allocation.

The motion is based on the following memorandum, the Joint Declaration and exhibits thereto, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

Defendants do not oppose this motion.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 13, 2021 (ECF No. 64-1, the "Stipulation"), or the concurrently filed Joint Declaration of Jason L. Krajcer and Corey D. Holzer in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.   Whether the Court should approve the proposed $1,900,000 million all cash, non-reversionary settlement as fair, reasonable, and adequate under Rule 23(e).

2.   Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.   Whether the Court should finally certify the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes only.

**MEMORANDUM OF LAW**

**I.     PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this memorandum in support of his motion for final approval of the Settlement of the above-captioned action (the "Action") for $1,900,000 in cash (the "Settlement Amount"), and for approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation (ECF No. 64-1), which was preliminarily approved by the Court on June 22, 2021.  ECF No. 67.

The $1.9 million Settlement is procedurally fair, as it is the product of arm's-length negotiations overseen by an experienced and highly respected mediator, and was only achieved after two years of hard-fought litigation against skilled defense counsel.  The Settlement is also substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action, and meaningfully assessed the risks of establishing liability and damages, including the risk of surviving a third motion to dismiss, or prevailing on appeal, under the heightened pleading standard and automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4, (the "PSLRA")).  ¶¶10-12, 40-54.  Indeed, as described in greater detail in the Joint Declaration, before agreeing to the Settlement, Plaintiff's Counsel, among other things: (i) conducted a comprehensive investigation into the claims asserted against Defendants, which was assisted by an investigator who conducted interviews with former Intersect employees, as well as experts in the fields of financial analysis, loss causation and damages; (ii) drafted the highly detailed 73-page Amended Class Action Complaint ("FAC"); (iii) fully briefed Defendants' motion to dismiss the FAC; (iv) continued the investigation into alleged claims against Defendants and prepared the 93-page Second Amended Class Action Complaint ("SAC") based thereon; (v) fully briefed Defendants' motion to dismiss the SAC; (vi) engaged in arm's-length negotiations with counsel for Defendants, which included an unsuccessful all-day mediation

session in October 2020 with Jed D. Melnick, Esq. of JAMS, an experienced and highly respected mediator of complex class actions; and (vii) conducted further investigation following the Parties' October mediation session that included more interviews with former Intersect employees.  After failing to reach agreement at the mediation, the Parties continued negotiations, which culminated in Mr. Melnick making a double-blind mediator's proposal that the Parties accepted on March 4, 2021.   The Parties then negotiated and executed the Stipulation.   ¶¶17-36.   Based on this substantial work and Lead Counsel's experience, Lead Plaintiff and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and instead provides a fair and immediate cash recovery—is in the best interests of the Settlement Class.  ¶12; *see also* Ex. 1 ("Yaron Decl."), at ¶¶4-7.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval.  Over 16,000 copies of the Postcard Notice have been sent to potential Settlement Class Members and their nominees, and, to date, no objections or requests for exclusion have been received or entered on the docket.  ¶¶5, 64 & Ex. 2 ("Nogalski Decl.").

Finally, the Plan of Allocation was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.  ¶66. The Plan of Allocation ties each participating Settlement Class Member's recovery to when the securities were acquired and sold, and is a fair and reasonable method for distributing the Net Settlement Fund.  ¶70.  The Plan of Allocation thus warrants approval.

For these reasons, as well as those set forth below and in the Joint Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.    THE LITIGATION AND SETTLEMENT[2]

### A.    The Litigation

Lead Plaintiff filed an initial class action complaint on May 15, 2019, which alleges that Defendants Intersect ENT, Inc. ("Intersect" or the "Company"), Lisa D. Earnhardt ("Earnhardt"), and Jeryl L. Hilleman ("Hilleman") violated federal securities laws.  ECF No. 1.  Specifically, Lead Plaintiff alleged that between February 27, 2018 and August 1, 2019 (the "Settlement Class Period"), Defendants Intersect, Earnhardt, and Hilleman misled investors by failing to disclose the Company's use of heavily discounted end-of-quarter bulk sales (referred to as "channel stuffing") for Intersect's main product, PROPEL, thereby creating the false appearance of strong organic revenue growth.

On September 24, 2019, the Court appointed Mr. Yaron as Lead Plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP ("GPM") to serve as Lead Counsel. ECF No. 21; *see also* ¶19.[3]

### B.    Lead Counsel's Investigation And FAC

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Intersect's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, and research reports prepared by securities and financial analysts, as well as news articles concerning Intersect, (c) Intersect's investor call transcripts, and (d) other publicly available material related to Intersect; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also

---

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a more fulsome description of, *inter alia*, the factual and procedural history of the Action (¶¶17-31); the nature of the claims asserted (¶¶15-16); the negotiations leading to the Settlement (¶¶32-36); and the terms of the Plan of Allocation (¶¶65-72).

[3] In previous filings, counsel mistakenly represented that GPM and H&H were appointed co-lead counsel in the Action.  While the firms have worked cooperatively throughout the Action, GPM is the sole court-appointed Lead Counsel in the Action.  *See* ECF No. 21.

consulted with experts in the fields of financial analysis, damages and loss causation.  ¶20.  On December 2, 2019, Lead Plaintiff filed and served the 73-page FAC[4] based on this investigation.  ¶21.

### C.   Motion To Dismiss The FAC

Defendants moved to dismiss the FAC on January 31, 2020.  ¶23.  Lead Plaintiff filed his opposition to the motion to dismiss on March 16, 2020.  ¶24.  Defendants filed their reply in support of the motion to dismiss the FAC on April 24, 2020.  ¶25.  On June 19, 2020, "the Court GRANT[ED] defendants' motions to dismiss with leave to amend."  *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *11 (N.D. Cal. June 19, 2020) (emphasis in the original)[5] ("FAC MTD Order"); *see also* ¶26.

### D.   Lead Counsel's Continued Investigation And The SAC

Following the Court's FAC MTD Order, Lead Counsel continued their investigation into Defendants and their alleged channel stuffing practices.  This continued investigation included additional interviews with former employees, as well as working with an expert to attempt to quantify the impact Defendants' alleged channel stuffing practices had on Intersect's financial results.  ¶27.  On July 29, 2020, Lead Plaintiff filed the 93-page SAC based on this investigation and analysis.  ¶28.

### E.   Motion To Dismiss The SAC, Mediation Efforts And Settlement Negotiations

On September 18, 2020, Defendants moved to dismiss the SAC.  ¶29.  On October 23, 2020, Lead Plaintiff filed his opposition to Defendants' motion.  ¶30.  On November 20, 2020, Defendants filed their reply in support of the motion to dismiss the SAC.  ¶31.

On October 29, 2020, the Parties engaged in private mediation with Jed D. Melnick, Esq. of JAMS.  In advance of that session, the Parties provided Mr. Melnick with the Court's FAC MTD Order, the SAC, the motion to dismiss the SAC and opposition thereto.  After a full day of

---

[4] Lead Plaintiff added Robert H. Binney, Jr. ("Binney") as an additional individual defendant. ECF No. 26.  "Defendants" are collectively referred to herein as Intersect, Earnhardt, Hilleman, and Binney.

[5] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

1   negotiation, the Parties were unable to reach a settlement.  ¶32.

2       On January 22, 2021, the Court granted Defendants' motion to dismiss the SAC without

3   prejudice ("SAC MTD Order").  ECF No. 54.  Following the SAC MTD Order, Lead Counsel

4   continued to investigate the allegations against Defendants and worked with their investigator to

5   locate and interview additional former Intersect employees.  ¶34.  On February 5, 2021, the Court

6   entered an order approving the Parties' stipulation to continue until March 4, 2021 the deadline for

7   Lead Plaintiff to file an amended complaint or otherwise indicate that no such amended complaint

8   would be filed.  ¶35.

9       During this time, the Parties re-engaged Mr. Melnick regarding the possibility of resolving

10  the Action through settlement.  On March 4, 2021, the Parties accepted a double-blind mediator's

11  proposal to resolve the Action for $1.9 million on a class-wide basis.  ¶36.  The Parties

12  subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation.

13  *Id.*

14  **III.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON***

15      Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

16  settlement of class action claims and states that a class action settlement should be approved if the

17  court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In the Ninth Circuit and

18  throughout the country, "there is a strong judicial policy that favors settlements particularly where

19  complex class action litigation is concerned."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th

20  Cir. 2008).[6]  Class actions readily lend themselves to compromise because of the difficulties of

21  proof, the uncertainties of the outcome, and the typical length of litigation.  The settlement of

22  complex cases also contributes to the conservation of scarce judicial resources.  *See, e.g., Garner*

23  *v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010)

24  ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all

25  _____

26  [6] *See also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an
    overriding public interest in settling and quieting litigation," and this is "particularly true in class
27  action suits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he
    court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class
28  action law suits.").

1    Parties and the Court.").

2         Rule 23(e)(2)–which governs final approval—requires courts to consider several factors in

3    determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

4         (A)    the class representatives and class counsel have adequately represented the
                 class;

5

6         (B)    the proposal was negotiated at arm's length;

7         (C)    the relief provided for the class is adequate, taking into account:

8                (i)     the costs, risks, and delay of trial and appeal;

9                (ii)    the effectiveness of any proposed method of distributing relief to
                         the class, including the method of processing class-member claims;

10               (iii)   the terms of any proposed award of attorneys' fees, including
                         timing of payment; and

11

12               (iv)    any agreement required to be identified under Rule 23(e)(3); and

13        (D)    the proposal treats class members equitably relative to each other.

14   Fed. R. Civ. P. 23(e)(2).

15        These factors do not "displace" any previously adopted factors, but "focus the court and

16   the lawyers on the core concerns of procedure and substance that should guide the decision

17   whether to approve the proposal."   Fed. R. Civ. P. 23(e) advisory committee notes to 2018

18   amendment, 324 F.R.D. 904, 918.   "Accordingly, the Court [should] appl[y] the framework set

19   forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant

20   precedent."  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. 2018).

21        "In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze

22   whether a given settlement is fair, adequate and reasonable."  *Wong v. Arlo Technologies, Inc.*,

23   2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021).   "That test includes the following factors:

24        [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely
          duration of further litigation; [3] the risk of maintaining class action status
25        throughout the trial; [4] the amount offered in settlement; [5] the extent of
          discovery completed, and the stage of the proceedings; [6] the experience and
26        views of counsel; [7] the presence of a governmental participant; and [8] the
          reaction of the class members to the proposed settlement."

27   *Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019

28   WL 3290770, at *6 (N.D. Cal. July 22, 2019) (evaluating settlement based on factors set forth in

Fed. R. Civ. P. 23(e)(2) and *Hanlon*); *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (same).

As explained below and in the Joint Declaration, application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants Court approval.

## IV.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.   Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").  Additionally, Lead Plaintiff was involved in the litigation and worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.  *See* Yaron Decl., ¶5.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel, GPM, have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Ex. 3-D (GPM firm resume). Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, among other things, conducting an extensive investigation of the claims through a detailed review of all publicly available documents as well as numerous interviews with former Intersect employees, drafting two detailed complaints, litigating two hotly-contested motions to dismiss, engaging in hard-fought arm's-length mediation, and obtaining a $1.9 million Settlement for the benefit of the Settlement Class following two dismissal orders. ¶¶17-36. *See PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class' claims[.]"); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 6001562, at *2 (C.D. Cal. Nov. 8, 2019) (granting final approval of class action settlement and finding that GPM and Holzer & Holzer, LLC ("H&H") "conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Lead Plaintiff as Class Representative and GPM as Class Counsel, Lead Plaintiff and Class Counsel have adequately represented the Settlement Class. *See* Preliminary Approval Order at ¶¶1-8. This factor supports final approval of the Settlement.

### 2. The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness; that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced

counsel"). Courts also recognize that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).

Here, the Parties agreed to mediate with Mr. Melnick in October 2020, could not reach an agreement, and continued negotiating following the Court's dismissal of the SAC. ¶32. The mediation negotiations were extensive, hard-fought, and continued until the Parties accepted the mediator's proposal. ¶36; *see In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick, following an in-person mediation at which the parties were initially unsuccessful); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

It is also important to note that the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). Accordingly, this factor militates in favor of final approval.

### 3. The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[7] As discussed below, each of these factors supports the Settlement's approval.

---

[7] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further

a)      **The Strength Of Lead Plaintiff's Case And Risk Of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The risks of continued litigation here were considerable, perhaps insurmountable. The most immediate risk is that Lead Plaintiff would not have been able to overcome the pleading deficiencies identified by the Court in its two orders dismissing the Action, both of which rejected Lead Plaintiff's theory of falsity with respect to: (1) Intersect's financial results and earnings guidance; (2) Defendants' statements that PROPEL sales were strong; and (3) Defendants' statements attributing weak PROPEL growth to SINUVA-related sales force distraction. *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *8-9 (N.D. Cal. June 19, 2020); ECF No. 54 at 7-13; *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Beyond falsity, the Court also found that Lead Plaintiff failed to plead scienter and held "that an innocent inference [was] far more plausible in this case than the inference of scienter." *Intersect*, 2020 WL 6750568 at *9; *see also*, ECF No. 54 at 13 (finding Lead Plaintiff did not meaningfully amend his scienter allegations). The PSLRA holds plaintiffs to a high pleading standard with respect to scienter, and there was there was no guarantee that Plaintiff would have been able to cure this deficiency or prevail on the current pleading before the Ninth Circuit. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."). Finally, the Court agreed with Defendants' loss causation challenge of the August 1, 2018

litigation (second factor), and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 4:19-cv-02647-JSW                                                                              10

1    disclosure revising the 2018 guidance, concluding the disclosure was not tied to the alleged

2    fraudulent channel stuffing scheme. *Intersect*, 2020 WL 6750568 at *10.

3        There is no better indication of the future risks Lead Plaintiff faced in continuing litigation

4    than that of the Court's two dismissals. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA"*

5    *Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its

6    own order dismissing the shareholder … litigation to assess the risks involved."). Importantly, the

7    risks discussed above were just risks Lead Plaintiff faced at the *pleading* stage. On top of those

8    risks, if Lead Plaintiff's case had advanced past the motion to dismiss stage, a further escalation of

9    risks would have followed.

10        For example, to defeat a summary judgment motion and prevail at trial, Lead Plaintiff

11    would have to prove by a preponderance of the evidence, among other things, that: (i) Defendants

12    made false and/or misleading statements about the Company's financial results and earnings

13    guidance and the growth of PROPEL sales; (ii) the Individual Defendants had the requisite

14    scienter in connection with such statements and omissions; and (iii) the alleged putative class

15    suffered damages as a result of such false statements. Although Lead Plaintiff and Lead Counsel

16    believe that the case has merit, they recognize establishing liability beyond the pleading stage is

17    uncertain. ¶¶40-42; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D.

18    Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of

19    scienter and causation are complex and difficult to establish at trial."); *Christine Asia Co., Ltd. v.*

20    *Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("As with falsity, although Plaintiffs

21    uncovered significant evidence that they believe supported a finding of Defendants' scienter,

22    Defendants would have marshalled substantial evidence in opposition.").

23        Lead Plaintiff also would have faced considerable challenges in proving loss causation and

24    damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46, 125 S. Ct. 1627, 161 L. Ed. 2d

25    577 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused

26    the loss for which the plaintiff seeks to recover'"). The Court already dismissed Lead Plaintiff's

27    loss causation allegations regarding the August 1, 2018 disclosure. ¶43. And, as to the August 1,

28    2018 disclosure, as well as the other two alleged corrective disclosures (on May 7, 2019 and

August 2, 2019), Lead Plaintiff anticipates Defendants would have engaged a highly respected loss causation expert to help them make arguments that the reasons for the stock-price declines on those dates were unrelated to the alleged fraud.  ¶46; *see also Amgen*, 2016 WL 10571773, at *3 ("Courts have recognized that, in a 'battle of experts,' the outcome cannot be guaranteed."); *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult.  Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Attendant to the above-discussed legal risks, continued litigation would be long, complex, and costly.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("[s]ecurities class actions are generally complex and expensive to prosecute.").  Depositions would have to be taken, experts would need to be designated and expert discovery completed, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain.  Any recovery that shareholders might ultimately see would be diluted by the escalating costs accumulated in the process.  *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) ("[C]omplex security fraud issues were likely to be litigated aggressively, at substantial expense to all parties.").

Moreover, any judgment favorable to the Settlement Class likely would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain.  *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

In sum, continued litigation would be risky and uncertain, and assuming the litigation were even able to proceed past the pleading stage, complex, costly, and lengthy.  By contrast, the $1.9 million Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk of continued litigation.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("[t]he present value of a certain recovery at this time, compared to the slim

1  chance for a greater one down the road, supports approval of a settlement that eliminates the

2  expense and delay of continued litigation, as well as the significant risk that the Class could

3  receive no recovery").

4         **b)**     **Risks Of Maintaining Class Action Status**

5       While Lead Plaintiff and Lead Counsel are confident the Class meets the requirements for

6  certification, a class had not yet been certified, and Lead Plaintiff is aware there is a risk the Court

7  could disagree.   ¶48.   Furthermore, "[e]ven if the Court were to certify a class, there is no

8  guarantee the certification would survive through trial, as Defendants might have sought

9  decertification or modification of the class." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036,

10  1041 (N.D. Cal. 2008)).  "Because there was a risk that the court would not have certified a class

11  in the first place had the parties not settled, and a further risk that, even if it did, that class might

12  later have been decertified, this factor too weighs in favor of approving the settlement." *In re*

13  *American Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

14        **4.**     **The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval**

15       Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for

16  the class is adequate in light of "the effectiveness of any proposed method of distributing relief to

17  the class, including the method of processing class-member claims," "the terms of any proposed

18  award of attorneys' fees, including timing of payment," and "any agreement required to be

19  identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support

20  the Settlement's approval or is neutral and thus do not suggest any basis for concluding the

21  Settlement is inadequate.

22       **Rule 23 (e)(2)(C)(ii):** Here, the method for processing Settlement Class Members' claims

23  and distributing the Net Settlement Fund to eligible claimants is well-established and effective.

24  A.B. Data, Ltd., ("AB Data"), the Court-approved Claims Administrator, will process claims

25  under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in

26  their claims, or request the Court to review a denial of their claims, and, lastly, mail or wire

27  Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation),

28

after Court-approval.[8]   ¶¶69-70.  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

**Rule 23(e)(2)(C)(iii)**: The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees is taken into account.  As in detail in the accompanying Fee Memorandum, a proposed attorneys' fee of 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  The proposed attorneys' fee is also consistent with awards in similar complex class action cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement).   More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Lead Plaintiff noted in his preliminary approval papers, the Parties entered into a confidential agreement that establishes certain conditions pursuant to which Defendants may terminate the Settlement if Settlement Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019)**Error! Bookmark not defined.**, *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *see also In re Carrier IQ, Inc.*,

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

*Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### 5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. ¶69. Lead Plaintiff will receive the same level of *pro rata* recovery, based on his Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members. "Moreover, the service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020). Accordingly, this factor favors final approval of the Settlement. *See Yang v. Focus Media Holding Ltd*., 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### 6. The Positive Reaction Of The Settlement Class Supports Settlement Approval

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rules 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Ex. 2 ("Nogalski Decl.") (Notice at p. 3). More than 16,000 copies of the Postcard Notice have been distributed to potential Settlement Class Members

and the Summary Notice was published both in the national edition of *Investor's Business Daily* and transmitted over the *PR Newswire*. *Id.* ¶¶10-11.  To date, no requests for exclusion have been received, and no objections have been filed with the Court.  *Id.* ¶15.[9]  The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement.  *Omnivision*, 559 F. Supp. 2d at 1043 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members.").

### 7.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

**The Amount Offered In Settlement:**  "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer."  *Wells Fargo*, 2018 WL 6619983, at *8.   "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount."  *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").  Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2nd Cir. 1974); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting

---

[9] The deadline to request exclusion from, or to object to any aspect of, the Settlement is October 1, 2021; if any exclusions or objections are received after the date of this filing, they will be addressed on reply.

1   to only a fraction of the potential recovery does not *per se* render the settlement inadequate or

2   unfair.").

3       Here, Plaintiff's damages expert estimates that if Plaintiff had prevailed on appeal of the

4   ***twice dismissed*** case, and if the Court and jury subsequently accepted all of Plaintiff's liability and

5   damages theories, including allegations of materially false statements over ***six*** quarters and proof

6   of loss causation as to each of the ***three*** alleged stock price drop dates—*i.e.*, Plaintiff's ***best case***

7   ***scenario***—the total ***maximum*** damages would be approximately $161 million.  Under such a

8   scenario, the $1.9 million recovery represents approximately 1.18% of the estimated maximum

9   damages potentially available in this Action.  ¶52.

10      However, this Court held that Plaintiff failed to plead the existence of a single false or

11  misleading statement, failed to plead scienter on the part of any Defendant, and expressed serious

12  doubt that Plaintiff could cure the pleading issues related to scienter.  *Intersect*, 2020 WL 6750568

13  at *7-10; ECF No. 54 at 14.  The Court also dismissed the August 1, 2018 price drop on loss

14  causation grounds.  *Intersect*, 2020 WL 6750568 at *10.  Thus, assuming the case did proceed and

15  Plaintiff prevailed in some respects, damages would depend on which of the alleged

16  misrepresentations and loss causation dates were proven and could range from $23 million (if

17  falsity was proven only for statements relating to Q1 2019 and loss causation was proven only in

18  relation to the August 2, 2019 stock drop); to $54 million (if falsity was proven only for

19  statements relating to Q4 2018 and Q1 2019, and loss causation was proven in relation to the May

20  7, 2019 and August 2, 2019 stock drops); to the aforementioned high of $161 million.[10]  Under

21

22  [10] Given that this was a channel stuffing case, under Plaintiff's theory of the case, inventory levels
23  rose as time went on.  Plaintiff's ability to allege the precise amount of channel stuffing on a
    quarter-by-quarter basis, however, was severely hampered by the limited nature of Intersect's
24  public disclosures concerning bulk sales. *See, e.g.*, ECF No. 47 at 16 (acknowledging that Plaintiff
    was unable to allege with precision the amount of channel stuffing prior to Q3 2018). Based on the
25  amount of excess inventory in the channel at the end of the Class Period (and the trend of slowing
    PROPEL revenue growth), Plaintiff believes that he was able to sufficiently allege that Intersect
26  would have been required to report negative growth in at least Q1 2019 and also likely in Q4 2018
    without the channel stuffing practices (ECF No. 47 at 1-4, 6-11), but the Court held that "Plaintiff
27  does not adequately allege that bulk discounting concealed negative PROPEL growth in ***any***
    quarter." ECF No. 54 at 10.  Given the limited data that Defendants publicly disclosed concerning
28  Intersect's bulk sales practices, Plaintiff was not able to allege with precision the amount of

these scenarios, the $1.9 million recovery equates to 8.26% of $23 million in damages; to 3.52% of $54 million in damages; to 1.18% of the aforementioned high of $161 million. ¶53. Moreover, the estimated damages for each of these scenarios assumes that Plaintiffs are given full credit for each of the respective drops and does not take into account any disaggregation arguments that Defendants may have raised. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).   In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Ex. 5 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement equal to 1.99% of total maximum estimated damages).

Of course, Defendants would have continued to challenge all aspects of the case, and given the current procedural posture of the case, the prospect that Plaintiff would have obtained *any* recovery was far from guaranteed. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In this case, continued litigation involved substantial risk for Plaintiffs.  This Court has already granted three motions to dismiss, and a fourth is pending."); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("The Court has already dismissed the complaint and the amended complaint may fare no better. Something is clearly better than nothing.").  Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of approval.

channel stuffing prior to Q3 2018.  Thus, there was arguably a better chance of proving the allegations relating to Defendants' conduct later in the Class Period.

1      **The Extent Of Discovery Completed And The Stage Of The Proceedings**: "In the

2   context of class action settlements, formal discovery is not a necessary ticket to the bargaining

3   table where the parties have sufficient information to make an informed decision about

4   settlement." *In re Mego Fin. Corp.*, 213 F.3d at 459 (9th Cir. 2000).  "Instead, courts look for

5   indications the parties carefully investigated the claims before reaching a resolution." *In re:*

6   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at

7   *13-14 (N.D. Cal. Oct. 25, 2016).

8      Here, Lead Counsel conducted an extensive investigation into the claims asserted in this

9   Action, which included a far-reaching review of publicly available information, significant work

10  with a private investigator, and consultation with experts in the fields of financial analysis, loss

11  causation and damages.  ¶¶20, 27, 34.  Additionally, Lead Counsel drafted the complaints,

12  opposed Defendants' two motions to dismiss, participated in a mediation process in which each

13  side put forth their best arguments, and reviewed and analyzed the Court's decisions.  ¶21, 24, 28,

14  30, 32.  As a result of these efforts, Lead Plaintiff and Lead Counsel had a thorough understanding

15  of the claims and defenses asserted in the Action, and the significant risks to establishing liability

16  and damages.  This understanding enabled Lead Plaintiff and Lead Counsel to intelligently and

17  responsibly negotiate the Settlement.  *See* **Error! Bookmark not defined.***Vaccaro v. New Source*

18  *Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action

19  did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly

20  available information, (ii) conducted interviews of numerous individuals, and (iii) consulted

21  experts on the ... industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the

22  strengths and weaknesses of their claims and the adequacy of the settlement.").

23     **The Experience And Views Of Counsel**:  "The recommendation of experienced counsel

24  carries significant weight in the court's determination of the reasonableness of the settlement."  *In*

25  *re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).  This makes sense, as

26  counsel is "most closely acquainted with the facts of the underlying litigation."  *Id*.

27     As discussed above, Lead Counsel has a thorough understanding of the merits and

28  weakness of the claims, as well as extensive prior experience litigating securities class action

cases.   Under such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class likewise supports the Settlement's approval.   *See In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

It is also important to note that Lead Plaintiff, who was thoroughly involved in all aspects of the litigation, supports the Settlement.   *See* Yaron Decl. ¶¶4-5.   Indeed, Lead Plaintiff's support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class."   *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress' intent to foster involvement of Lead Plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations.").

**The Presence Of A Governmental Participant** "Because no government entities are participants in this case, this factor is neutral."   *Amgen*, 2016 WL 10571773, at *4.

\*      \*      \*

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a finding that the Settlement is fair, reasonable, and adequate, or is neutral.   Final approval is, therefore, appropriate.

**B.      The Plan Of Allocation Is Fair And Reasonable**

Lead Plaintiff also requests final approval of the Plan of Allocation.   A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate."   *Omnivision*, 559 F. Supp. 2d at 1045.   The allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."   *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).   "A plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes

interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue should be approved as fair and reasonable."   *Schueneman v. Arena Pharmaceuticals, Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020).

The Plan of Allocation, as detailed in ¶¶65-73 of the Joint Declaration, and set forth in the Notice (Ex. 2-B, ¶¶53-71)), is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action.   More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of Intersect common stock was artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions.   The Plan of Allocation is based on the premise that the decreases in the price of Intersect common stock that followed the alleged corrective disclosures that occurred on August 1, 2018, on May 7, 2019, and on August 2, 2019, may be used to measure the alleged artificial inflation in the price of Intersect common stock prior to these disclosures.   ¶68; Ex. 2-B (Notice) at ¶56.   An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Intersect common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants.   ¶70; Ex. 2-B (Notice) at ¶56.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution.   Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.   Ex. 2-B (Notice) at ¶63.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective.   Ex. 2-B (Notice) at ¶69.   At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining

balance shall be contributed—subject to Court approval—to the Investor Protection Trust.  *See* N.D. Cal. Pro. Guidance for Class Action Settlements, at ¶8.  The Investor Protection Trust is a nonprofit organization devoted to investor education and is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action.  Courts in this District and elsewhere have approved it as a *cy pres* recipient in other similar actions.  *See Wells Fargo*, 2018 WL 6619983, at *2 ("the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate cy pres beneficiary."); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (Breyer, J.) ("Only if subsequent distributions to eligible claimants are not cost effective will a donation to the *cy pres* recipient, the Investor Protection Trust, be made.").[11]

Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.  *See Arena*, 2020 WL 3129566, at *7 (approving substantially similar plan of allocation).  To date, no objections to the Plan of Allocation have been filed on this Court's docket.  ¶73.  Accordingly, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

## C.    The Settlement Class Should Be Finally Certified

The Court's June 22, 2021 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 67 at ¶¶1-3.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for

---

[11] *See also In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *9 (S.D. Cal. Mar. 17, 2021) ("Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties shall distribute the remaining funds, if any, to *cy pres* recipient, Investor Protection Trust, a 501(c)(3) organization located in Washington D.C.").

the reasons stated in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (ECF No. 63 at 14-17), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D. The Notice Program Satisfies Rule 23 And Due Process

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This Court has already found that the proposed notice program is adequate and sufficient (*seeError! Bookmark not defined.* Preliminary Approval Order, ECF No. 67 at ¶¶7-8), and Lead Counsel and A.B. Data carried out the notice program as proposed. *See* Nogalski Decl., ¶¶2-13. The Settlement Class has, therefore, received "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for final approval of the Settlement and approve the proposed Plan of Allocation.

Dated: September 17, 2021

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Jason L. Krajcer*
Lionel Z. Glancy
Robert V. Prongay
Jason L. Krajcer
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com
rprongay@glancylaw.com
jkracjer@glancylaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron and the Settlement Class*

-and-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Corey D. Holzer (admitted *pro hac vice*)
**HOLZER & HOLZER, LLC**
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Additional Counsel for Lead Plaintiff Avi Yaron and the Settlement Class*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 4:19-cv-02647-JSW

1

**PROOF OF SERVICE BY ELECTRONIC POSTING**

2

I, the undersigned say:

3

I am not a party to the above case, and am over eighteen years old.  On September 17, 2021, I

4

served true and correct copies of the foregoing document, by posting the document electronically to

5

the ECF website of the United States District Court for the Northern District of California, for receipt

6

electronically by the parties listed on the Court's Service List.

7

I affirm under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.  Executed on September 17, 2021, at Los Angeles, California.

9

10

*s/ Jason L. Krajcer*
Jason L. Krajcer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28