1  GLANCY PRONGAY & MURRAY LLP
   Lionel Z. Glancy (#134180)
2  Robert V. Prongay (#270796)
   Jason L. Krajcer (#234235)
3  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
4  Telephone: (310) 201-9150
   Email: lglancy@glancylaw.com
5          rprongay@glancylaw.com
           jkrajcer@glancylaw.com
6

7  *Lead Counsel for Lead Plaintiff Avi Yaron*
   *and the Settlement Class*
8

9                    **UNITED STATES DISTRICT COURT**
10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | AVI YARON, Individually and On Behalf | Case No.: 4:19-cv-02647-JSW
   | of All Others Similarly Situated, |

13 |                   Plaintiff, | **LEAD COUNSEL'S: (1) NOTICE OF**
   |                              | **MOTION FOR AN AWARD OF**
14 |        v. | **ATTORNEYS' FEES AND**
   |           | **REIMBURSEMENT OF LITIGATION**
15 |           | **EXPENSES; AND (2) MEMORANDUM**
   | INTERSECT ENT, INC., LISA D. | **OF LAW IN SUPPORT THEREOF**
16 | EARNHARDT, JERYL L. HILLEMAN, |
   | and ROBERT H. BINNEY, JR., | Hearing Date: November 5, 2021
17 |                              | Time: 9:00 a.m.
   |                   Defendants. | Location: Courtroom 5
18 |                              | Judge: Hon. Jeffrey S. White

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........................... 3

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................... 3

        A.      Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The
                Common Fund ........................................................................................... 3

        B.      The Court Should Calculate The Requested Fee As A Percentage Of The
                Common Fund ........................................................................................... 4

        C.      The Requested Fee's Approval Is Supported By The Factors Considered By
                Courts In The Ninth Circuit ....................................................................... 5

                1.      The Quality Of The Results Achieved Supports The Fee Request ............ 6

                2.      The Substantial Risks Of The Litigation Support The Fee Request .......... 8

                3.      The Skill Required And The Quality Of The Work ................................ 12

                4.      The Contingent Nature Of The Fee And The Financial Burden
                        Carried By Counsel Support The Fee Request .......................................... 13

                5.      A 33⅓% Fee Award Is Consistent With Fee Awards In Similar,
                        Complex, Contingent Litigation ............................................................... 16

                6.      The Reaction Of The Settlement Class Supports The Requested Fee ...... 18

        D.      A Lodestar Cross-Check Supports The Requested Fee .......................... 19

IV.     PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
        BE APPROVED ............................................................................................... 21

V.      LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS
        AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) ......................................... 23

VI.     CONCLUSION ................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................................................ 6

*Antonopulos v. N. Am. Thoroughbreds. Inc.*,
  1991 WL 427893, (S.D. Cal. May 6, 1991) ........................................................ 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ............................................................................................ 17

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ........................................................ 3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .............................................................................................. 3

*Boyd v. Bank of America Corp.*,
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .................................................... 18

*Buccellato v. AT & T Operations, Inc.*,
  2011 WL 3348055 (N.D. Cal. June 30, 2011) .................................................... 20

*Cabiness v. Educ. Fin. Sols., LLC*,
  2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) .................................................... 20

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................... 13, 17

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................................... 11

*Chun–Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................ 20

*Craft v. Cty, of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................... 17

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ...................................................................... 9

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................................. 7, 14, 19

*Ellison v. Steven Madden, Ltd.*,
  2013 WL 12124432 (C.D. Cal. May 7, 2013)................................................................ 4

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)...................................................................................... 8

*Fernandez v. Victoria Secret Stores, LLC*,
  2008 WL 8150856 (C.D. Cal. July 21, 2008) ...................................................... 18, 19

*Franco v. Ruiz Food Prods., Inc.*,
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................................................ 23

*Glass v. UBS Fin. Servs., Inc.*,
  331 Fed. Appx. 452 (9th Cir. 2009) ............................................................................. 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...................................................................................... 15

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................ 9

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013)..................................................................................... 19

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002)................................................................................. 1

*Gross v. GFI Group, Inc.*,
  310 F.Supp.3d 384 (S.D.N.Y., 2018) ......................................................................... 15

*Gross v. GFI Group, Inc.*,
  784 Fed.Appx. 27 (2d Cir. Sept. 13, 2019) ................................................................ 11

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)..................................................................................... 21, 23

*Hefler v. Wells Fargo & Company*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................................... 8, 21

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................... 6

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................................ 23

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013)................................................................ 20

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................... 5, 16

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
   2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ............................................................. 13

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010) ........................................................................ 15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ............................................................ 23, 24

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................... 19

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................... 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................. 15

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................... 4, 6, 20

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ....................................................................... 11

*In re Cendant Corp. Litig*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................... 12

*In re Centurylink Sales Practices and Sec. Litig.*,
   2021 WL 3080960 (D. Minn. July 21, 2021) ............................................................. 10

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .............................................................. 5

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................................... 13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .............................................................. 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   2018 WL 6168013 (S.D.N.Y. Nov. 26, 2018) .............................................................. 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................ 20

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18,2007) ........................................................... 11

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................................. 12, 13, 18

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 1

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................. 22, 24

*In re Initial Pub. Offering Sec. Litig.*,
  2011 WL 2732563 (S.D.N.Y. July 8, 2011) ............................................................. 20

*In re K12 Inc. Sec. Litig.*,
  2019 WL 3766420 (N.D. Cal. July 10, 2019) .......................................... 13, 17, 18, 24

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................... 17

*In re Myford Touch Consumer Litig.*,
  2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) .......................................................... 20

*In re NASDAQ Market-Makers Antrust. Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 9, 16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal 2008) ............................................................. *passim*

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009) .......................................................... 15

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................... 12, 18

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................... 2

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................................... 5

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) ................................................................ 10

*In re Scientific Atl., Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...................................................................... 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................ 21

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................... 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................... 3, 14

*In re Waste Management, Inc. Sec Litig.*,
  2002 WL 35644013 (S.D. Tex. May 10, 2002) .......................................................... 9

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................... 10, 15, 24

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011) .................................................................................................. 15

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................................................. 18

*Marshall v. Northrop Grumman Corp.*,
  2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ........................................................ 16

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................... 9

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) .................................................................................................. 15

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
  2009 WL 9100391 (C.D. Cal. June 24, 2009) .......................................................... 16

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................................. 16, 19

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................................ 15

*Rodman v. Safeway*,
  2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ........................................................... 6

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ............................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 5

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................................................. 17

*Ross v. Trex Company, Inc.*,
    2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) ................................................ 2

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ................................................................... 2, 9, 10

*Singer v. Becton Dickinson & Co.*,
    2010 WL 2196104 (S.D. Cal. June 1, 2010) .................................................... 18

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ............................................................................. 17

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ............................................................................. 4

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 17

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .................................................. 24

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................... 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ............................................................................... 5

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ............................................................................... 3

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................................................... 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2012) ............................................................... 5, 6, 8, 19

*Yaron v. Intersect ENT, Inc.*,
   2020 WL 6750568 (N.D. Cal. June 19, 2020) ................................................................ 1, 10, 11

<u>STATUTES</u>

15 U.S.C. §78u-4(a)(4)23 ................................................................................................................ 23

15 U.S.C. § 78u-1(a)(6) ................................................................................................................... 5

15 U.S.C. § 78u-4 ............................................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(A) ............................................................................................................. 9

<u>RULES</u>

Fed. R. Civ. P. ................................................................................................................................ iii

### NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
### AND REIMBURSEMENT OF LITIGATION EXPENSES

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 67), and the Clerk's Notice Continuing Fairness Hearing, on November 5, 2021, at 9:00 a.m., or as soon thereafter as counsel may be heard, at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 5 – 1301 Clay Street, Oakland, CA 94612, before the Honorable Jeffrey S. White, Lead Counsel Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), on behalf of itself and additional plaintiff's counsel Holzer & Holzer LLC ("H&H and together with GPM, "Plaintiff's Counsel"), will and hereby does move the Court for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Law, the Joint Declaration, the Declaration of Patty Nogalski Regarding Notice Administration ("Nogalski Decl."), the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 13, 2021 (ECF No. 64-1), or the concurrently filed Joint Declaration of Jason L. Krajcer and Corey D. Holzer in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

[2] Defendants take no position with respect to this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.   Whether the Court should approve as fair and reasonable Lead Counsel's application, on behalf of Plaintiff's Counsel, for an attorneys' fee award in the amount of 33⅓% of the Settlement Fund (*i.e.*, the Settlement Amount, plus interest earned thereon).

2.   Whether the Court should approve the request for reimbursement of $88,929.16 in litigation expenses incurred by Plaintiff's Counsel in this Action.

3.   Whether the Court should approve the request for reimbursement of $5,000 to Lead Plaintiff Avi Yaron ("Lead Plaintiff") for his costs, including lost wages, directly related to his representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(4), (the "PSLRA")).

## MEMORANDUM OF LAW

Court-appointed Lead Counsel, on behalf of itself and H&H, respectfully requests the Court grant the motion for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund, or $633,333, plus interest earned at the same rate as the Settlement Fund.[3]  Lead Counsel also seeks reimbursement of: (i) $88,929.16 in litigation expenses that Plaintiff's Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $5,000 in costs incurred by the Court-appointed Lead Plaintiff Avi Yaron, directly related to his representation of the Settlement Class, as authorized by the PSLRA.

## I.   PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $1.9 million in cash in exchange for the resolution of the Action, represents a very favorable result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiff would have needed to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this litigation, Plaintiff's Counsel faced numerous challenges to establishing liability, loss causation and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that they would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4; *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").[4]  Indeed, by the time the Settlement was reached, the Court had ***twice*** granted Defendants' motions to dismiss, and there is no guarantee this case would have ever progressed past the pleading stage.  *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *8-9 (N.D. Cal. June 19, 2020) and ECF No. 54.  There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.  *See Great Neck*

---

[3] In previous filings, counsel mistakenly represented that GPM and H&H were appointed co-lead counsel in the Action.  While the firms have worked cooperatively throughout the Action, GPM is the sole court-appointed Lead Counsel in the Action.  *See* ECF No. 21.

[4] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

*Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."). Despite these risks, Plaintiff's Counsel collectively worked over 1,500 hours on behalf of the Settlement Class, and advanced $88,929.16 in costs and expenses, all on a fully contingent basis.

As compensation for Plaintiff's Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 33⅓% of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement Fund or in relation to Plaintiff's Counsel's lodestar. In fact, the requested fee represents a "negative" or fractional multiplier of 0.57 on Plaintiff's Counsel's lodestar, which is a strong indication of its reasonableness. *See Ross v. Trex Company, Inc.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) (J. White) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Lead Counsel also seek reimbursement of $88,929.16 in out-of-pocket litigation expenses incurred by Plaintiff's Counsel in prosecuting this Action. *See* ¶¶90-98. This amount is below the $130,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included a PSLRA award to Lead Plaintiff—and it equates to less than 5% of the Settlement Fund. The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Lead Plaintiff Ari Yaron respectfully requests a PSLRA award in the amount of $5,000 to compensate him for the time and effort he expended on behalf of the Settlement Class. Ex. 1. Lead Plaintiff Yaron, *inter alia*, researched the facts of the case, reviewed filings, conferred with Plaintiff's Counsel about litigation and settlement strategies, and authorized his attorneys to

settle the case.  But for his "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible."  *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Joint Declaration, Lead Counsel respectfully request that the Court award attorneys' fees equal to 33⅓% of the Settlement Fund, approve reimbursement of $88,929.16 in litigation expenses incurred by Plaintiff's Counsel, and grant a PSLRA award of $5,000 to Lead Plaintiff Yaron.

## II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Joint Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶17-31); the nature of the claims asserted (¶¶15-16); the negotiations leading to the Settlement (¶¶32-36); the risks and uncertainties of continued litigation (¶¶40-51) and the services Plaintiff's Counsel provided for the benefit of the Settlement Class (¶¶ 77-79; Exs. 3 & 4).  Additionally, in accordance with this District's Procedural Guidance for Class Action Settlements, the Court is referred to the concurrently filed final approval motion for the history and facts of the case.

## III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.     Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").  Indeed, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have  a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir.

1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

### B. The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund

District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).  Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used.  *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis.  *See **Error! Bookmark not defined.***Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378

(N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons, among others, Lead Counsel respectfully request that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure ...."); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C. The Requested Fee's Approval Is Supported By The Factors Considered By Courts In The Ninth Circuit

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-51 (9th Cir. 2012)); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances.

*Vizcaino*, 290 F.3d at 1048-50.   As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

### 1.     The Quality Of The Results Achieved Supports The Fee Request

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046.  Lead Counsel submit that the $1.9 million proposed Settlement is an excellent result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Here, Plaintiff's damages expert estimates that if Lead Plaintiff had prevailed on appeal of the ***twice dismissed*** case, and if the Court and jury subsequently accepted all of Plaintiff's liability and damages theories, including allegations of materially false statements over ***six*** quarters and proof of loss causation as to each of the ***three*** alleged stock price drop dates—*i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $161 million.  Under such a scenario, the $1.9 million recovery represents approximately 1.18% of the estimated maximum damages potentially available in this Action.

This case was not, however, risk free and there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case.  ¶¶40-51; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").  For example, the Court had already twice held that Lead Plaintiff failed to plead the existence of a single false or misleading statement, failed to plead scienter on the part of any Defendant, and expressed serious doubt that Plaintiff could cure the pleading issues related to scienter.  ECF No. 33; ECF No. 54 at 14.  The Court also dismissed the August 1, 2018 price drop on loss causation grounds.  ECF No. 33 at 16-17.  Thus, assuming the

case did proceed and Lead Plaintiff prevailed in some respects, damages would depend on which of the alleged misrepresentations and loss causation dates were proven.  Damages could range from a low of $23 million (if falsity was proven only for statements relating to Q1 2019 and loss causation was proven only in relation to the August 2, 2019 stock drop); to $54 million (if falsity was proven only for statements relating to Q4 2018 and Q1 2019, and loss causation was proven in relation to the May 7, 2019 and August 2, 2019 stock drops); to the aforementioned high of $161 million.[5]

Under these scenarios, the $1.9 million recovery equates to 8.26% of $23 million in damages; to 3.52% of $54 million in damages; to 1.18% of the aforementioned high of $161 million.  ¶53.  Moreover, the estimated damages for each of these scenarios assumes that Plaintiffs are given full credit for each of the respective drops and does not take into account any disaggregation arguments that Defendants may have raised.  *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).  In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated

---

[5] Given that this was a channel stuffing case, under Plaintiff's theory of the case, inventory levels rose as time went on.  Plaintiff's ability to allege the precise amount of channel stuffing on a quarter-by-quarter basis, however, was severely hampered by the limited nature of Intersect's public disclosures concerning bulk sales.  *See, e.g.*, ECF No. 47 at 16 (acknowledging that Plaintiff was unable to allege with precision the amount of channel stuffing prior to Q3 2018). Based on the amount of excess inventory in the channel at the end of the Settlement Class Period (and the trend of slowing PROPEL revenue growth), Plaintiff believes that he was able to sufficiently allege that Intersect would have been required to report negative growth in at least Q1 2019 and also likely in Q4 2018 without the channel stuffing practices (ECF No. 47 at 1-4, 6-11), but the Court held that "Plaintiff does not adequately allege that bulk discounting concealed negative PROPEL growth in ***any*** quarter."  ECF No. 54 at 10.  Given the limited data that Defendants publicly disclosed concerning Intersect's bulk sales practices, Plaintiff was not able to allege with precision the amount of channel stuffing prior to Q3 2018.  Thus, there was arguably a better chance of proving the allegations relating to Defendants' conduct later in the Settlement Class Period.

damages.  *See* Ex. 5 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)) ("NERA Report").

Given the range of possible results in this litigation, including a strong possibility of no recovery whatsoever, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### 2. The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues."  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees).  While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness.  This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.").[6]  This Action was no exception.

While Lead Counsel believe that the claims of Lead Plaintiff and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial

---

[6] *See also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain."); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

risks in the litigation and that Lead Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re NASDAQ Market-Makers Antrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise)."); *In re Waste Management, Inc. Sec Litig.*, 2002 WL 35644013, at *28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end."). Nevertheless, Lead Counsel accepted the challenge.

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *Dairy Farmers*, 80 F. Supp. 3d at 848. "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, there were no proceedings initiated by the SEC or DOJ and no journalistic investigation into the allegations at issue. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).[7]

Another indicia of the riskiness of this case is the fact that there were no other cases filed, and no other lead plaintiff movants. The PSLRA requires the plaintiff or plaintiffs who file the first class action complaint to "publish[], in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A). Lead Plaintiff published notice in this case, and yet there were no other movants. *See*

---

[7] *See also Silverman*, 2012 WL 1597388, at *3 (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense.").

1    ECF No. 20.  This "[l]ack of competition not only implies a higher fee, but also suggests that most

2    members of the securities bar saw this litigation as too risky for their practices."  *Silverman*, 739

3    F.3d at 958.

4          Moreover, this was not a restatement case.  When companies restate their financials, they

5    are admitting a material misstatement of their financial reporting.  A case predicated on a

6    restatement is, therefore, less risky because the misstatement and materiality elements of a

7    securities fraud claim are already met.  *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013

8    WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis

9    of cases where liability is virtually certain due to a financial restatement).  In short, "[t]his case

10   lacked several strong facts that often support liability (and large settlement valuations) and provide

11   a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a

12   companion SEC or DOJ investigation."  *In re Centurylink Sales Practices and Sec. Litig.*, 2021

13   WL 3080960, at *9 (D. Minn. July 21, 2021).

14         While the focus of the inquiry is on assessing risk at the beginning of the case, it is also

15   important to note that the litigation risks did not end with the filing of the complaint.  Indeed, the

16   risks inherent in this case are highlighted by the Court's two previous dismissals of the Action.

17   *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn.

18   2005) ("The court needs to look no further than its own order dismissing the shareholder …

19   litigation to assess the risks involved."); *see also Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568

20   at *8-9 (N.D. Cal. June 19, 2020) and ECF No. 54.

21         Lead Plaintiff faced significant hurdles to alleging actionable misstatements, scienter, and

22   loss causation.  For instance, Defendants successfully argued in their motions to dismiss that Lead

23   Plaintiff could not state a claim with respect to: (1) Defendants' announcements of financial

24   results and earnings guidance; (2) Defendants' statements that PROPEL sales were strong; and

25   (3) Defendants' statements attributing weak PROPEL growth to SINUVA-related sales force

26   distraction.  *See Yaron*, 2020 WL 6750568 at *8-9; ECF No. 54 at 7-13.  In addition to

27   challenging Lead Plaintiff's allegations of material misstatements and omissions, Defendants

28   cogently argued, and the Court found, "that an innocent inference [was] far more plausible in this

1   case than the inference of scienter." *Intersect*, 2020 WL 6750568 at *9; *see also*, ECF No. 54 at

2   13 (finding Plaintiff did not meaningfully amend his scienter allegations).   Finally, the Court

3   agreed with Defendants' loss causation challenge to the alleged August 1, 2018 disclosure revising

4   the 2018 guidance, concluding the disclosure was not tied to the alleged fraudulent channel

5   stuffing scheme. *Intersect*, 2020 WL 6750568 at *10.

6          As demonstrated by this Court's decisions, Defendants' arguments were not illusory, and

7   there existed a very real risk that the Ninth Circuit would affirm the Court's dismissal of the

8   Action pursuant the stringent pleading standards of the PSLRA.   These risks were present from the

9   beginning of the litigation, and had the litigation continued, there is simply no guarantee that the

10   case would have ever progressed past the pleading stage. *See In re BP p.l.c. Sec. Litig.*, 852 F.

11   Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and

12   authoritative precedents have created for plaintiffs in all securities actions formidable challenges

13   to successful pleading.").

14          Even assuming Lead Plaintiff prevailed past the pleading stage, there still existed major

15   obstacles to *proving* liability and damages.   For example, to defeat a summary judgment motion

16   and prevail at trial, Plaintiffs would have to prove by a preponderance of the evidence, among

17   other things, that: (i) Defendants made materially false and/or misleading statements about the

18   Company's financial results and earnings guidance and the growth of PROPEL sales; and (ii) the

19   Individual Defendants had the requisite scienter in connection with such statements and omissions.

20   ¶¶41-42.   Each of these are subjective, fact based inquiries, and the trier of fact could easily have

21   determined that the evidence supported Defendants' version of the events, especially given the

22   lack of insider trading in the case. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at

23   *11 (E.D.N.Y. Sept. 18,2007) ("Establishing scienter is a difficult burden to meet and proving it

24   will be especially challenging in this case where, apparently, neither the individual defendants nor

25   any other Gilat executive profited from their Gilat investments."); *Gross v. GFI Group, Inc.*, 784

26   Fed.Appx. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the

27   alternative ground that Defendant's "statement did not, as a matter of law, amount to a material

28   misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding

the statement actionable); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("As with falsity, although Plaintiffs uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition.").

Additionally, Defendants would have continued to assert that Plaintiffs could not establish loss causation for any of the purported disclosures dates, and even if they could, the damages were minimal.  ¶44.  Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.  *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

In sum, the risks posed by litigation were substantial, and they were present every step of the way.  *See In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.     The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed.  To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award."  *In re Heritage Bond Litig*., 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005).  "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."  *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM and H&H are among the most experienced and skilled practitioners in the securities litigation field, and both firms have a long record of successfully prosecuting securities cases throughout the country, including within this Circuit.  *See* ¶80; *see also* Exs. 3-D and 4-D (GPM and H&H Firm Resumes); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*5 (C.D. Cal. Oct. 10, 2019) ("Lead Counsel [GPM and H&H] ha[ve] significant experience in securities class action lawsuits … and Lead Counsel vigorously pursued Plaintiff's claims, including through four rounds of motions to dismiss and amended complaints."); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at \*2 (N.D. Cal. July 10, 2019) ("Lead Counsel [GPM] has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy.").  Lead Counsel respectfully submit that the quality of Plaintiff's Counsel's efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Plaintiff's Counsel with the leverage necessary to negotiate a favorable settlement.

In evaluating the quality of Plaintiff's Counsel's work, it is also important to consider the quality and vigor of opposing counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at \*20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Defendants in this Action were represented by Cooley LLP, a highly respected national law firm, whose briefs filed in support of Defendants' motions to dismiss reflected a vigorous defense.  ¶81.  Plaintiff's Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Here, Plaintiff's Counsel have to date received no compensation, have invested 1,506.15 hours of work equating to a total lodestar of $1,101,535.00, and incurred expenses of $88,929.16 in prosecuting and resolving this Action.  Additional work in implementing the Settlement and claims administration will also be required.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").  Since the inception of this case, Plaintiff's Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real.  Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed.  *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week

1   trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of

2   Korean ramen noodles).[8]

3         And Lead Counsel is not alone.  There are many other hard-fought lawsuits where, because

4   of the discovery of facts unknown when the case was commenced, changes in the law during the

5   pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent

6   professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel.

7   *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after

8   completing significant and expensive foreign discovery, 95% of plaintiffs' damages were

9   eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247

10  (2010), of unbroken circuit court precedent over 40 years).  Indeed, "[p]recedent is replete with

11  situations in which attorneys representing a class have devoted substantial resources in terms of

12  time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc.,*

13  *Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[9]  Even plaintiffs who

14  get past summary judgment and succeed at trial may find a judgment in their favor overturned on

15  appeal or on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d

16  408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of

17  litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v.*

18  *First Deriv. Traders*, 564 U.S. 135 (2011)).[10]

19        Here, because Plaintiff's Counsel's fee was entirely contingent, the only certainties were

---

20  [8] *See also Gross v. GFI Group, Inc.*, 310 F.Supp.3d 384, 399 (S.D.N.Y., 2018) (GPM served as
21  Co-Lead Counsel in case where the Court granted summary judgment for defendants following
    four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars
22  of attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13,
    2019).

23  [9] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627
24  F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation
    and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours,
25  representing lodestar of approximately $48 million).

26  [10] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict
    of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605
27  (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following
    plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)
28  (overturning jury verdict for plaintiffs after extended trial).

1    there would be no fee without a successful result and such a result would only be realized after

2    substantial amounts of time, effort, and expense were expended.   Nevertheless, Plaintiff's Counsel

3    committed significant amounts of both time and money to vigorously and successfully prosecute

4    this Action for the benefit of the Settlement Class. ¶¶77-79, 90-98.   Under such circumstances,

5    "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee."

6    *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

7            **5.      A 33⅓% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation**

8

9          In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund

10   as the "benchmark" award for attorneys' fees.  886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi*

11   *v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark).

12   However, "a reasonable fee award is the hallmark of common fund cases" and the guiding

13   principle in this Circuit is that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19

14   F.3d at 1295 n.2.[11]   As applied, this means that "in most common fund cases, the award exceeds

15   that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047; *see also Activision*, 723 F. Supp. at 1373

16   (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting,

17   "[t]his court's review of recent reported cases discloses that nearly all common fund awards range

18   around 30%[.]"); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal.

19   Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and

20   stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in

21   class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL

22   9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally,

23   the average percentage of the fund award in class actions is approximately one-third.").  This is

24   especially true in cases with "relatively small" common fund settlements.  *See* NERA Report

25   (Ex. 5 at p. 23, Fig. 19) (following passage of PSLRA the median award of attorneys' fees in class

---

26   [11] *See also Paul, Johnson*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a

27   common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so
     that he might share the wealth of those upon whom he has conferred a benefit.  The amount of

28   such a reward is that which is deemed 'reasonable' under the circumstances.").

action securities cases with a settlement value below five million dollars was 30%); *Craft v. Cty, of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in result in fees above 25%.").

In view of the result obtained, the contingent fee risk, the number of hours dedicated to this matter by Plaintiff's Counsel, the financial commitment of Plaintiff's Counsel, and the important public policy advanced by securities litigation such as this, it is respectfully submitted that an award of 33⅓% of the recovery obtained for the Settlement Class is appropriate. *See, e.g., Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases.").[12]  Such an award would also be consistent with attorneys' fee awards in similar, complex, contingent litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *Hodges v. Akeena Solar, Inc.*, No. 5:09-cv-02147-JW, Amended Order Awarding Lead Counsel Attorneys' Fees and Expenses, at 1 (N.D. Cal. Dec. 15, 2011) (awarding one-third of $4,770,000 settlement fund), ECF No. 167 (Ex. 7); *Rentech*, 2019 WL 5173771, at *9 (awarding 33⅓% of $2,050,000 settlement fund);  *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. Oct. 10, 2019) (awarding 33% of $3.5 million settlement fund); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), slip op. at 4 (C.D. Cal. June 1, 2009), ECF No. 165 (Ex. 8) (awarding 33⅓% of $5 million settlement fund); *In re 2TheMart.com, Inc. Sec. Litig.*, No. 99-cv-1127-DOC (ANx), slip op. at 2 (C.D. Cal. July 8, 2002), ECF No. 161 (Ex. 9) (awarding 33⅓% of $2.7 million settlement fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'"

---

[12] *See also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (same).

*citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).[13] Accordingly, Lead Counsel's fee request is in line with other comparable cases and should be approved.

**6.      The Reaction Of The Settlement Class Supports The Requested Fee**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048. Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, and the settlement website. Nogalski Decl. ¶¶2-9,11, 13. The Court-approved Postcard Notice was sent to 16,020 potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *Id.* at ¶¶9, 11, Exs. 2-C & 2-D. A dedicated settlement website was also created (www.IntersectSecuritiesLitigation.com), and all relevant dates and documents—including the Notice, Stipulation, Claim Form and SAC—were posted thereon.[14] ¶63; Nogalski Decl. ¶13.

---

[13] *See also Pac. Enters.*, 47 F.3d at 373 (33% award from $12 million common fund "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *Boyd v. Bank of America Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third of the $5.8 million settlement fund); *Elliot v. China Green Agriculture Inc.*, No. 3:10-cv-00648-LRH-WGC, slip op. at ¶ 16 (D. Nev. Aug. 12, 2014), ECF No. 166 (Ex. 10) (awarding 33⅓% of $2.5 million settlement fund); *In re Resonant Inc. Sec. Litig.*, No. 2:15-cv-01970 SJO (MRW) slip op. at ¶ 17 (C.D. Cal. Nov. 22, 2017), ECF No. 154 (Ex. 11) (finding an award of 33% of the $2.75 million settlement is "fair and reasonable"); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding of 33.3% of $1 million common fund); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% of $8.5 million common fund); *Antonopulos v. N. Am. Thoroughbreds. Inc.*, 1991 WL 427893, at *4, (S.D. Cal. May 6, 1991) (awarding one-third of $3,098,000 settlement fund); *Jenson v. First Trust Corp.*, No. CV 05-3124 ABC (CTx), Final Order and Judgment, at 6 (C.D. Cal. June 9, 2008) (awarding 1/3 of an $8.5 million fund), ECF No. 134 (Ex. 12).

[14] Both the Postcard Notice and the Notice informed the Settlement Class that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund. ¶87; Nogalski Decl. Exs. 2-A & 2-B.

To date, **no** objections to the requested amounts of attorneys' fees and expenses have been received.[15]   The lack of objections is strong evidence that the requested fees and expenses are reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at \*13 ("By any standard, the lack of objection of the Settlement Class Members favors approval of the Settlement."); *see also Fernandez*, 2008 WL 8150856, at \*13 (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").

### D.   A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

The lodestar method "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272.  "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013).  In so doing, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is

---

[15] The last day to file an objection is October 1, 2021.  If any objections are filed, Lead Counsel will address them in a reply brief.

used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary.").

Here, Plaintiff's Counsel's lodestar is $1,101,535.00.  ¶77.  Therefore, the requested fee of $633,333 yields a fractional or "negative" multiplier of 0.57.  ¶78.  A "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class."  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (finding requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").  Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation."  *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019).  This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'"  *Id.* (quoting *Bluetooth*, 654 F.3d at 942).[16]

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiff's Counsel's lodestar is supported by the Joint Declaration, which includes detailed exhibits showing the hours incurred by each GPM and H&H professional that worked on

---

[16] *See also In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) (noting fractional multiplier meant "every firm was . . . compensated for a small fraction of the time spent on the case").

this litigation, broken down by five substantive categories of work.  Exs. 3-A & 4-A.  In addition, for each attorney or other professional whose time is included in Plaintiff's Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided.  Exs. 3-B & 4-B.

The current hourly rates for Plaintiff's Counsel range from $745 to $975 for partners, $490 to $625 for associates, and $295  per hour for paralegals.  Exs. 3 & 4.  The blended hourly rate for all timekeepers in the application is $622.  Lead Counsel believes that these rates are within the range of reasonable fees for attorneys working on complex class-action litigation in this District.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Wells Fargo & Co.*, 2018 WL 6619983, at *14 (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).  Plaintiff's Counsel's rates for its partners, of counsel attorneys, and associates are also comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  *See* Ex. 6 (rates charged by defense counsel in complex litigation matters routinely reach as high as $1,500 per hour or higher).

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

## IV.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.  *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See, e.g.*, *Harris v. Marhoefer*,

1   24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those

2   out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*,

3   559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically

4   be billed to paying clients in non-contingency matters.").

5       From the beginning of the case, Plaintiff's Counsel were aware that they might not recover

6   any of their expenses and would not recover anything unless and until the Action was successfully

7   resolved.  Plaintiff's Counsel also understood that, even assuming that the case was ultimately

8   successful, an award of expenses would not compensate for the lost use of the funds advanced to

9   prosecute this Action.  Thus, Plaintiff's Counsel were motivated to, and did, take significant steps

10  to minimize expenses whenever practicable without jeopardizing the vigorous and efficient

11  prosecution of the Action.  ¶94.

12      In the aggregate, Plaintiff's Counsel have incurred expenses in the amount of $88,929.16

13  while prosecuting the Action, and these expenses are set forth in the Joint Declaration, ¶¶90-98,

14  and in each firm's individual supporting declaration. Exs. 3-C & 4-C.  The largest expense was

15  for the retention of a private investigation firm, in the amount of $42,533.79, or approximately

16  48% of the total litigation expenses.  ¶95.  Other substantial costs related to: (i) Lead Counsel's

17  retention of experts in the fields of financial analysis (with respect to plaintiff's allegations of

18  channel stuffing), loss causation and damages, in the amount of $23,597.00, or approximately

19  26.7% of the total litigation expenses; and (ii) Lead Plaintiff's share of the mediation fees charged

20  by mediator Jed D. Melnick, Esq. of JAMS, in the amount of $14,659.28, which equates to 16.6%

21  of Plaintiff's Counsel's total litigation expenses.  ¶¶96-97.  Each of these expenses were critical to

22  Plaintiff's Counsel's success in achieving the Settlement and, like the other categories of expenses

23  for which counsel seek reimbursement, are the types of expenses routinely charged to clients who

24  pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See In re Immune*

25  *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (approving counsel's

26  request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage,

27  telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7)

28  class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *see also*

*Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at \*22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").[17]

## V.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

In connection with Lead Counsel's requests for reimbursement of Litigation Expenses, Lead Plaintiff seeks reimbursement of a total of $5,000 in costs (including lost wages).  ¶92.  The PSLRA permits the Lead Plaintiff in this case to recoup litigation costs (including lost wages) incurred as a result of his serving as Lead Plaintiff and ensuring that the Settlement Class was adequately represented.  15 U.S.C. § 78u-4(a)(4).  Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at \*6 (S.D.N.Y. Feb. 2, 2012).

Here, Lead Plaintiff respectfully requests reimbursement in the amount of $5,000. *See* Declaration of Avi Yaron (attached as Ex. 1 to the Joint Declaration) ("Yaron Decl."), ¶11. As set forth in his declaration, Mr. Yaron stepped forward to represent the Class and spent at least 20 hours participating in this litigation.  *Id*.  Among other things, Mr. Yaron: (i) reviewed all significant pleadings and briefs filed in the Action; (ii) regularly communicated with his attorneys via email and telephone about case developments and litigation strategy; (iii) reviewed Court orders and discussed them with his attorneys; (iv) consulted with counsel regarding the mediation

---

[17] The Notice informed Settlement Class Members that Lead Counsel intended to apply for the reimbursement for Litigation Expenses "in an amount not to exceed $130,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $5,000." Nogalski Decl. Ex. 2-B, ¶5 (Notice), Ex. 2-A (Postcard Notice).  Lead Counsel's requested reimbursement of $88,929.16 (plus $5,000 for Lead Plaintiff) is substantially less than the maximum amount of potential expenses disclosed in the Notice and, to date, there have been no objections to the request for reimbursement of Litigation Expenses.  ¶93.

and Settlement Amount, and ultimately approved the Settlement; and (vii) communicated with counsel regarding the process for finalizing the Settlement. *See Id.* at ¶¶3-5.

Lead Plaintiff and his counsel respectfully submit that reimbursement of $5,000 for the considerable time and effort Mr. Yaron expended for the benefit of the Settlement Class is both reasonable and appropriate.  It is also comparable or well below reimbursement awards in similar complex cases. *See, e.g.*, *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015), ECF No. 279 (Ex. 13) (awarding $162,900 to lead plaintiff from settlement fund as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019) (awarding $5,500 to lead plaintiff pursuant to PSLRA); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff); *In re Xcel*, 364 F.Supp.2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

Dated: September 17, 2021

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Jason L. Krajcer*
Lionel Z. Glancy
Robert V. Prongay
Jason L. Krajcer
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com
        rprongay@glancylaw.com
        jkracjer@glancylaw.com

*Lead Counsel for Lead Plaintiff Avi Yaron and the Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-and-

Corey D. Holzer (admitted *pro hac vice*)
HOLZER & HOLZER, LLC
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Additional Counsel for Lead Plaintiff Avi Yaron and the Settlement Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On September 17, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 17, 2021, at Los Angeles, California.

*s/ Jason L. Krajcer*
Jason L. Krajcer